U.S. Court District of Columbia

Sieverding et al                                              05-cv-01283 RMU

v.

American Bar Association et al.

Plaintiffs' objection to defendants' motion to delay response to plaintiffs complaint based on Rule 60b(3) provision for review in a non-rendering court until after a 9/2/05 hearing in the rendering court that they initiated.

Mr. Kernan, a defense counsel, does not acknowledge plaintiffs' strenuous objections to loss of the protection of this court as required by F.R.Civ.P rule 60 B 3. That provision allows for review by a non-rendering court when the very substance and process of justice has been denied. That is the case in this situation.

The plaintiffs believe that their very lives are in danger because, they asserted in previous motions for summary judgment against the same defendants, that the victims of crime are the intended beneficiaries of crime insurance (see attached), that bar associations have a duty to the public (see attached November 2003 Motion for partial summary judgment) and that intentional defamation on the Internet is actionable (see attached) because

"In summary, current intentional republication of defamation on the Internet is a valid tort claim because it is abatable, avoidable, insurable, causes damages, promotes potentially dangerous confrontations outside of court, obstructs established liberty interests and has no value to society." (see attached)

By silencing plaintiffs, the defense seeks to hide these important issues, which affect people all over the world and billions of dollars. A ruling that victims of crimes are the intended beneficiaries of crime insurance would decimate very profitable unregulated foreign sales of

1

crime insurance, made in bad faith to employers of criminals, as per the attached advertisement from Royal and Sun Alliance. This will encourage local government corruption, The National Organization of Attorney Generals stated in August 2005 that local government corruption is the most significant problem that attorney generals face and discussed another city accused of RICO. Crime insurance appeals to corrupt politicians and business people who want to commit crimes and get away with it. The problem with crime insurance is that there are real victims, such as the Sieverdings. Also, allowing such government corruption contributes to pervasive corruption such as in some foreign countries, and undermines the American economy, America's most important values, and the very future of our society.

These claims of rights of citizens are claims that the defense wants to bury under the guise that plaintiffs cannot claim rights without a lawyer. The reason the defense wants to bury these issues is that they represent a criminal conspiracy funded by international unregulated reinsurance company that wants to save money by denying citizens the honest services of the court to redress their grievances. Thus, their request for an extension is not for more time for a legitimate reply but more time to silence plaintiffs, however necessary, including by crime. The bar associations, internet defamers, and sellers of bad faith insurance cannot answer the accusations brought by a couple of pro se litigants and seek to hide behind the skirts of the judge, instead of answering.

The Sieverdings have reason to believe that the defense effort in Denver to put them in jail for contempt is part of a murder-for-hire plot involving Lloyds of London and KPMG to cover up an ongoing RICO bad faith insurance operation that may involve hundreds of millions of dollars annually, possibly billions, and by which many innocent people may have been hurt

2

and a bulwark established in the U.S. to aid and abet government corruption. (see KPMG letter to Colorado Intergovernmental Risk Sharing "Agency" attached).

The defendants in this case are involved with and funded by an apparent RICO organization, CIRSA, which is an agent for an unregulated Lloyds' syndicate selling "crime insurance", "newspaper defamation", and lawyers errors and omissions insurance and aggressively. These organizations appear to be systematically bribing judges in order to win cases and undermine the established Constitutional and fundamental rights of citizens. They claim, for instance, to have a right to publish accusations that citizens are criminal without having to prove that they are criminal as required by the basics of established defamation law. The defendants have claimed a privilege to publish defamation per se even though no crime was committed by plaintiffs, no guilty plea pled, no jury trial, and the criminal charges dismissed. Now, they want to deny plaintiffs this forum so as to pull them into a dangerous forum without due process or a notice of hearing where they have repeatedly requested denial of honest services and criminal conduct by a judge, his magistrate, and their clerks. The documents they filed today in The District of Colorado, 02-1950, ask plaintiffs to prove that they are not guilty of contempt of court. However, it is the defendants duty to prove that plaintiffs are guilty of contempt of court and if they have such evidence they should file it here for public view.

West Law states that violation of a prohibition, such as litigation without a lawyer, is criminal contempt, not civil contempt. Thus the burden of proof is not on plaintiffs to prove that they are not in contempt, as defendants assert, but on the defendants to prove that there is a valid injunction based on law that says that the plaintiffs cannot litigate to defend themselves from these criminals and tortfeasors.

3

Faegre and Benson appears to have used intentional defamation on the Internet to bait the Sieverdings into filing a lawsuit against them so that they could ask that the Sieverdings be held in contempt so that they could be put in jail where they can be murdered without being traced back to Lloyds, Sun Alliance, CIRSA, KPMG, Hall and Evans, and an international law firm representing insurance companies, the Alfa International "member", which represents 30 non American law firms and is not bound by American anti bribery statutes.

One of the underlying actors in this case is CIRSA, Colorado Intergovernmental Risk Sharing Agency. CIRSA billed Lloyds for David Brougham at Hall and Evans having ex parte theft of honest services from Colorado Magistrate Schlatter as shown by the attached verified bill of Anthony Lettunich, a city attorney reporting to Kevin Bennett, a former cocaine dealer and husband of Jane Bennett for whom Mr. Kernan seeks permission not to reply. CIRSA, according to KPMG and Brougham is a government entity but its own web site says:

"CIRSA, Colorado Intergovernmental Risk Sharing Agency, www.cirsa.org….are service marks, trademarks and/or trade dress of CIRSA…Permission is granted, solely to CIRSA members, to electronically copy and to print hard copy portions of this web site for the sole purpose of filing a member claim or using this web site as a member resource. Any other use of materials on this web site including reproduction…republication without the prior written permission of CIRSA is strictly prohibited….CIRSA is providing this site and its contents on an "as is" basis and makes no representations or warranties of any kind with respect to this site or its contents. CIRSA disclaims all such representations and warranties, including for example, warranties of merchantability and fitness for a particular purpose. In addition, CIRSA does not represent or warrant that the information accessible via this site is accurate, complete, or current, information on this web site is subject to change without notice. Neither CIRSA, nor its Board of Directors, nor any of its directors, employees, agents, or other representatives, will be liable for damages arising out of or in connection with the use of this web site. This is a comprehensive Limitation of Liability that applies to all damages of any kind, including (without limitation) compensatory, direct, indirect or consequential damages, loss of data, income or profit, loss of or damage to property and claims of third parties." (see attachment)

This defendant organization CIRSA fraudulently claims to be a government agency not having to pay income taxes and not having to register with the secretary of state as a corporation

4

or general or limited partnership or individual or charity. Apparently it also has not filed income tax reports as required for tax-exempt organizations.

The whole idea of government risk sharing associations is to spread risk among local governments while at the same time paying citizens legitimate claims. These could include damage by a local government vehicle or attack by a local government dog or local government criminal. Yet, page 25 of their 2002 "income and changes in surplus information" shows that for combined property and casualty (liability and crime) their payout for "other underwriting expenses incurred", $4.3 M, is more than 2/3rds of the "losses and loss adjustment expenses incurred", $6.3 M. That "loss and loss adjustment" expense is apparently claims paid plus legal expenses paid. The underwriting expense is not explained at all as to what that is or to whom that is paid.

In this case instead of a signature, someone, possibly a temporary office worker, printed the letters "KPMG LLP" on the bottom of all the documents where one would expect a signature page with multiple names and signatures. (see attached).

According to C.R.S. and a decision noting that by the Colorado Supreme Court, CIRSA is not an insurance company and is not subject to regulation by the Colorado Insurance Commissioner. However, CIRSA has filed some reports with the Colorado Insurance Commissioner.

The KPMG reports in possession of plaintiffs imply that CIRSA is regulated by the Colorado Insurance Commission. It seems that the report implies to the reader that the Colorado Insurance Commission is reviewing and regulating CIRSA's practices but, in actuality, the

5

Colorado Insurance Commission is not supplying the same degree of regulatory oversight as it would to a regulated insurance company. This creates a false sense of security in the casual reader. It could be considered to be a fraudulent misrepresentation as to the regulated status of CIRSA. Significantly, the terse report by KPMG does not acknowledge that by statute, the Colorado Insurance Commission does not regulate CIRSA.

The National Association of Insurance Commissions has a "Property and Casualty Actuarial Opinion Model Law" which says 3a "The Statement of Actuarial Opinion shall be provided with the Annual Statement in accordance with the appropriate NAC Property and Casualty Annual Statement Instructions and shall be treated as a public document." However, plaintiffs have had problems getting this so-called public document from CIRSA.

The KPMG reports mention using standards of the Government Accounting Practices Board. However, those accounting standards are only to be used by government. An organization does not just get to decide that it is a government and then use those accounting practices.

There is no statement of compensation in the CIRSA/KPMG "audit" for 20-year director Tim Greer. Every reputable annual report or audit, plaintiff has ever seen included details on executive compensation. Also, it seems that he is on the board of directors for at least one of the unregulated reinsurance companies that CIRSA does business with. That is a conflict of interest but is not disclosed as such, nor is Greer's compensation for that.

Every audit that plaintiff has known of included an audit of the business fundamentals. For instance, when plaintiffs had an audit of a small manufacturing company years ago, the auditors wanted to see the actual inventory, plant and equipment. There is no representation in

the so called independent auditor's report, however, that KPMG actually looked at the insurance policies and the files for the claims or made any attempt to take a sampling and analyze them for proper performance.

The KPMG letter seems vague and shifty. It is written in 10-point type, which never shows intent to be readable. (See attached)   It says:

"We have audited the accompanying combined statutory statements of admitted assets, liabilities, and surplus of the Colorado Intergovernmental Risk Sharing Agency (the Agency) as of ....These combined statutory financial statements are the responsibility of the Agency's management."...

They don't define "management" nor name them.

There is no formal statement of what the audit covers. KPMG says:

"Our responsibility is to express an opinion on these combined statutory financial statements based on our audits....we believe that our audits provide a reasonable basis for our opinion....the financial statements...assets, liabilities and surplus...results...cash flow. ...The reconciliation of reserves for unpaid losses and loss adjustment expenses and the ten year loss development information...are not required information...applied certain limited procedures, which consisted principally of inquiries of management regarding the methods of measurement and presentation of the supplementary information. However, we did not audit this information and express no opinion on it. This report is intended solely for the information and use of the board of directors and management of the Agency and the Division of Insurance by the State of Colorado and should not be used by anyone other than these specified parties." (See attached)

CIRSA also changed its web site on Saturday 8/13/2005 (today) so that its employees would not be listed. It also does not list its board members. Why the secrecy if it is a legitimate government organization?

If defendants have nothing criminal to hide by responding to plaintiffs action in the District of Columbia, then why don't they answer it? They have no reason not to know.

7

Other insurance and accounting practitioners that plaintiffs have seen listed in various places had letters after their names showing their various specialized credentials, licensing etc. The CIRSA listed employees didn't have letters after their names.

Operating expenses and total payroll also are not listed on the KPMG "report" on one of the underlying respondents.. They might be listed as a commission but what would be the purpose of disguising them?

The report notes on page 13 that the Agency was "required" to make a capital contribution to become a "member" of the "NLC Mutual Insurance Company Pool". Since when do government "agencies" make capital contributions to private businesses? It does not state what the agreement was. Is this supposed to be unrestricted stock that could actually be sold someplace? Considering that it seems that the reinsurance has not been used, why would taxpayer funds of over $300,000 be spent? Also, how does this relate to the strict IRS restrictions on what can be exempted under IRS code 115?

Also, other research shows that at least two Colorado municipalities sued CIRSA in relationship to their claims not being paid. But this isn't mentioned in the KPMG report.

"In the normal course of operations, the Agency is involved in litigation related principally to claims made under insurance contracts. Those actions are considered by the Agency in estimating the reserves for losses and loss adjustment expense. In the opinion of management, the resolution of these matters will not have a material effect on the Agency's financial position, results of operations, or liquidity" p.19.

What does this mean? How many lawsuits? Do they mean they won't lose the lawsuits or that the lawsuits are small? It looks to plaintiffs as if Tim Greer is saying that they won't have an expense to plaintiffs because they will murder them if necessary. There is no other explanation as to anyone else having an opinion about CIRSA's litigation. Meanwhile, several

8

Colorado cities filed actions for non payment of insurance claims against CIRSA but these actions are not mentioned in their "KPMG audit reports".

The table on page 17 shows "reserves for unpaid losses and loss adjustment expenses, net of excess insurance recoverables" of $23 M while "claims attributable to covered events of the current year" are only "2.7 M", about 12%. Why the big discrepancy?

The big page "required supplementary information" include in the "report" doesn't say who the information is required by or what is done with it.

The 2003 notes say "rate setting policies established by the board of directors in consultation with independent actuaries" but do not state who the independent actuaries are. Therefore, recent document evidence shows that CIRSA, an underlying respondent in this cation, is involved in criminal fraud and was aided and abetted by KPMG.

Kernan admitted to plaintiffs that he does not have signed letters of representation from all of the defendants including Jane Bennett. Thus, he appears to be using delay as a tactic to get Jane Bennett to sign with him so as to further cover up criminal acts under a layer of client privilege. However, client privilege isn't allowed when there are criminal acts involved including deprivation of honest services and RICO.

The whole principle of a Rule 60B (3) action is to have an evidentiary forum in a non-rendering court. Mr. Kernan specifically stated that his purpose of delay was to interpose a 9/2/05 hearing called by the same actors in front of the same judge. To interpose this action would defeat the whole purpose of having an independent evidentiary hearing by a non-rendering court and the specific intent of the law. Plaintiffs have document evidence that ex

9

parte contact was solicited by the respondents in this action from the same judge who will be presiding on 9/2/05.

One of the parties that paid for respondent Hall and Evan's services for the defense of the 02-1950 action, the Colorado Intergovernmental Risk Sharing Agency, CIRSA, which appears to be involved with RICO, has filed a report called an audit by KPMG, an organization which is under investigation for criminal fraud related to tax exempt instruments. It seems that CIRSA is somehow a similar scheme that includes bad faith insurance. An easy red flag is that the KPMG "audit" of CIRSA is not signed by any individual and just has the block initials "KPMG LLP" (see attached). CIRSA, according to KPMG, is required to use government accounting principles, yet it is not listed as a government agency or local government or government authority by the State of Colorado. By statute, the State of Colorado is required to publish the names of all governments and state agencies in Colorado but CIRSA is not listed. CIRSA is not registered with the Secretary of State or the Colorado Department of Revenue. This lends support to the idea that CIRSA is a RICO as does the attached document evidence that CIRSA paid an attorney to ex parte fix plaintiffs previous case, 02-1950, with the same court by which the defendants know threaten plaintiffs' fundamental freedoms and actual physical lives.

KPMG appears to have made up the reference to the Governmental Accounting Standards Board in order to imply that CIRSA is a government agency. The State of Colorado Attorney General has responded to plaintiff in another forum that CIRSA is not a state agency that they recognize. The State of Colorado is required to list all governments operating in Colorado, however, and has no other listing for CIRSA nor does CIRSA have the government forms of governance, required audits according to government standards, etc. Apparently

10

CIRSA has not filed statements with the IRS, which are required even for organizations claiming to be "tax exempt". The "audit" does not have most of the detail of an audit of Chesapeake Bay Property and Casualty Company, a smaller firm selling similar insurance, found by plaintiff on the Internet. That one, for instance, was signed by 7 people, whereas the KPMG has no names of individuals. Maine requires department of insurance approval to switch from one re-insurer to another but CIRSA has been using 4 or 5, had a big dispute with one of them, bought some sort of interest in another, and has their only spokesperson, Tim Greer, their 20 year director who is not shown by the Colorado Secretary of State as a registered agent, as a co-board member, with no disclosure of his compensation. The only oversight appears to be from a board somehow selected by CIRSA of part time small government city council members presumably from distant parts of the state and with unpublished names. Two different audit reports contained not a single persons signature or any record of any executive compensation and KPMG relied exclusively on statements from Tim Greer in forming various parts of their "opinion".

  This additional criminal fraud and bad faith insurance administration is potentially a national issue because there are similar organizations in other states. Some of Brougham's bills for the 02-1950 action went to Lloyd's of London. It turns out that Lloyds' syndicates are exempted from regulation in the United Kingdom on some sort of historical basis. Now these syndicates are selling liability and "crime" insurance into the American market. These unregulated international insurance companies appear to be a party at interest in this litigation. Thus there is potentially quite a lot of money at stake here that would not want to file an "answer". If they can murder plaintiffs first, their secrets will be easier to cover up. One week ago David Brougham, who appeared in 02-1950, said that they better be careful because they

were getting "certain people really pissed off". Not only did Brougham's tone suggest a death threat, but he has not contacted plaintiffs to reassure them that there was a legitimate interpretation to the threatening words. Brougham refused to tell plaintiffs whether his and KPMG's client Colorado Intergovernmental Risk Sharing Agency is a corporation a partnership or a government. CIRSA will also not release this information.

Furthermore, the D.C. Court can read the District of Colorado court docket 02-1950 for itself and see that there is no valid reason for the 9/2/05 hearing. Faegre and Benson and Hall and Evans both filed recent pleadings objecting to plaintiffs' proposal to cancel the hearing, which Faegre had initiated by asking the court to make plaintiffs prove why they weren't in contempt. In both of their filings the only reason they stated that they believed that plaintiffs shouldn't be allowed to litigate on their own behalf is that it is work to respond. An injunction cannot exist on that basis and litigation is the most fundamental right.

One of Brougham's clients in the underlying action, Kevin Bennett, is a convicted cocaine dealer who threatened to shoot a potential buyer of plaintiffs' property, while he was visiting plaintiff's property, which was marked for sale. He was president of Steamboat Springs CO city council. It is not good for Steamboat business interests for it to be public knowledge that not only was a convicted cocaine dealer on the city council for 8 years, but that the city council, city attorney, chamber of commerce, district attorneys, and local court knew that illegal activities were taking place and allowed them. So that is also another huge pot of money, related to the ski resort development that wants to avoid an evidentiary hearing on these events. There is some sort of scandal there too. Kevin Bennett is respondent Jane Bennett's husband.

The 9/2/05 hearing is obviously in bad faith as all the parties refuse to tell plaintiffs what the purpose of the meeting is and what due process will be used. If the District of Columbia court allows the defendants to delay a response until after the 9/2/05 hearing, the motivation for the defendants to have plaintiffs jailed and murdered in jail becomes even higher.

Having solicited and secured ex parte collusion to prevent the rules of evidence from being followed in the preceding case 02-1950, the defendants misrepresent the underlying record to the District of Columbia court. To begin with there is no valid injunction in the District of Colorado. That is part of what this action is about. There was no separate order labeled injunction. There was no mention of Rule 65. The essential elements of Rule 65 are all missing. There was no statement of irreparable harm to any defendant at any time for responding to any action by plaintiffs. Even their 8/15/05 filings do not state any irreparable harm to defendants. Secondly, any irreparable harm to defendants would have to be balanced against the constitutional rights to the plaintiffs. In this case, these rights include a presumption of innocence. Jane Bennett accused plaintiff of a criminal act and her accusation is repeated even today by the defendants both on the Internet and in this filing. Yet 1.) The record shows that no crime was committed by plaintiff 2.) Plaintiff pled not guilty 3.) The criminal action was dismissed by the prosecutor. 4.) Plaintiffs complaint includes quotations made by Jane Bennett under oath that show that Kay Sieverding is innocent of harassing Jane Bennett. The defendants seek to misuse the power of the court to cover up their criminal acts both towards Sieverding and in a larger RCIO framework involving a criminal and fraudulent organization, the Colorado Intergovernmental Risk Sharing Agency, which was previously protected from public scrutiny by KPMG as shown in attached letter.

Defendants seek to have res judicata and legal fees imposed by a court with whom the complaint is not filed. Defendants want to keep jurisdiction with a judge who has previously been solicited for ex parte contact (see attached letter to Judge Nottingham written to the judge by a rich and powerful private organization that claims they don't have a duty to the public asking the judge, successfully, to suspend plaintiffs rights to the summary judgment process and send messages about the case through his clerk. The 02-1950 defense solicited both Colorado Magistrate Schlatter and Judge Nottingham for the crime of theft of honest services. The Court did not report this solicitation of theft of honest services and have not denied that honest services were denied plaintiffs. The Colorado court misstated the facts in a successful effort to have the 10th Circuit believe that the underlying events concerned "zoning" only and not also criminal extortion, first amendment retaliation, malicious prosecution and defamation per se. After multiple ex parte contacts, as supported by the document evidence, (see examples attached) the Colorado Court refused to have an evidentiary hearing on the defendant's claims of immunity as required by Colorado government immunity law, refused to process any of plaintiffs summary judgment motions as specifically required by the 1948 amendment to the Federal Rules of Civil Procedure and supported in the minutes as to the intent of Congress (according to Wright and Miller).

The defense seeks again in their 8/15/05 filings attached to their motion for a time extension to confuse everyone as to the involvement of Faegre's client, The World Company AKA The Steamboat Pilot. The series of events was that the Steamboat Pilot published a series of articles using the names of the plaintiffs from 2000 to today. Some were published in paper and some on the Internet and some both ways. Most of them contain republication of

14

fraudulent statements: that Sieverding harassed and abused Jane Bennett and that the Bennetts construction complied with the Steamboat Springs CO zoning and development laws. The publisher of the Pilot Suzanne Schlicht and her superiors knew that the articles included republication of fraudulent statements and published them as truth as part of a criminal conspiracy to extort the Sieverdings property rights in their former home of Steamboat Springs CO for the benefit of convicted felon cocaine dealer city council president Kevin Bennett and to cover up government corruption. Significantly, Mr. Kernan does not state anywhere that he believes there is a valid injunction on plaintiffs or that plaintiffs have harmed any of the defendants, or that the articles published by his clients are accurate as to the truth of the information quoted as true.

Furthermore, the Colorado Court did not, and does not, have the power to suspend their local rules as to conference on motions. Most importantly, the defendants and the Colorado court, acting in collusion, have suspended the basic rule that motions must be based on law. The motion and included motions do not specify any law that plaintiffs supposedly violated or that would authorize them to deprive plaintiffs of their day in court/ reply to action.

The defendants have had copies of the action since June when plaintiffs sent them a copy of the first version. They were also served a copy of the second version by email. So they have already had it for longer than 40 days. They are familiar with the allegations and there is no legitimate reason for delay.

Plaintiffs declare under penalty of perjury that the foregoing is true and correct under penalty of perjury that the foregoing is true and correct. Executed on August 15, 2005.

S./ _____   S./ _____
David Sieverding                Kay Sieverding
641 Basswood Ave. Verona, WI 53593 Voice, 608 848 5721, Fax 608 845 3201

15

Certificate of service:  Sent by mail, and email attachment as PDF to kkernan@obmslaw.com at 11:15 EST 8/15/05 and also faxed to him at his office at 202 293 1640
Kevin A. Kernan
O'Brian, Butler, McConihe & Schaefer P.L.L.C.
888 17th St. Northwest Suite 1000
Washington Disctrict of Columbia 20006-3967
Another version and also a 7 page document analyzing KPMG's report on his apparent client "CIRSA",  An "audit" with no one's names signed simply "KPMG LLP".
To: kkernan@obmslaw.com
From: Kay Sieverding <sieverding.kay@slides.com>
Subject: revised again, more CIRSA info
Cc: sieverding.david@slides.com
X-Attachments: ::obj4.pdf: ::COobjsupp.pdf:
A few more "improvements" in the motion.
Also, more information about CIRSA and KPMG.   We filed that with the District Court of Denver and the Colorado Attorney General

Kay Sieverding

*Kay Sward* (signature)

16