EXHIBIT
1

# Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Not Reported in F.Supp.2d, 2003 WL 22400218
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Colorado.
Kay SIEVERDING, et al., Plaintiff(s),
v.
COLORADO BAR ASSOCIATION, et al.,
Defendant(s).
No. Civ.A.02-M-1950(OES).

Oct. 14, 2003.

Kay Sieverding, pr ose, Verona, WI, for Plaintiff.
David Sieverding, Verona, WI, for Plaintiff.
Ed Sieverding, Verona, WI, for Plaintiff.
Tom Sieverding, Verona, WI, for Plaintiff.
Brett Norman Huff , White & Steele, P.C. , David R. Brougham , Hall & Evans , United States District Court, Michael T. McConnell , Traci L. Van Pelt , Meghan Elizabeth Pound , McConnell, Siderius, Fleischner, Houghtaling & Craigmile , LL, Christopher Beall , Faegre & Benson , Denver, CO, Patricia Jean Larson , American Bar Association , Office of General Counsel, Chicago, IL, J. Richard Tremaine , McGill Professional Law Corporation , Randall W. Klauzer , Klauzer & Tremaine, LLC, Steamboat Springs, CO, for Defendants.
James Booth Fajardo Oliphant, pro se, Oliphant, Hammond & O'Hara, Steamboat Springs, CO, for Defendants.

RECOMMENDATION FOR DISMISSAL OF ALL CLAIMS AGAINST ALL DEFENDANTS AND RECOMMENDATION THAT PLAINTIFFS BE ORDERED TO PAY ATTORNEY FEES AND COSTS

SCHLATTER , Magistrate J.

## I. INTRODUCTION AND PROCEDURAL HISTORY

*1 The plaintiffs in this case are a family, and they are proceeding without counsel. Kay and David Sieverding are mother and father respectively, and Ed and Tom Sieverding are their minor children. The primary plaintiff is Kay Sieverding. She is the author of all of the numerous pleadings that have been filed by plaintiffs, large portions of which are written in the first person. Ms. Sieverding alone spoke for the entire family throughout such proceedings as the status conference that I conducted on January 30, 2003. As will be noted below, the events that precipitated this case are events that arose in regard to Ms. Sieverding. The remaining members of the family are involved in the underlying events only in a collateral fashion. Throughout this Recommendation. I will speak alternately of plaintiffs or Ms. Sieverding, but, in the main, they are one and the same.

All of plaintiffs' pleadings in this case reflect that this case has been filed by plaintiffs because of certain events that began in 1991 in Steamboat Springs, Colorado. At about that time, the Sieverdings moved next door to the Bennetts, two of the parties that plaintiffs have sued. Ms. Sieverding objected to the local authorities about The Bennetts' construction activities, and what she perceived to be violations of the zoning laws by the Bennetts. Of course, Ms. Sieverding's complaints gave rise to tension between the two families.

The differences between Ms. Sieverding and the Bennetts escalated to the point that Jane Bennett sought, and obtained, a restraining order against Ms. Sieverding, prohibiting Ms. Sieverding from coming any closer than 30 feet from Ms. Bennett. The differences between Ms. Sieverding and the City escalated as she continued to complain about the perceived zoning violations, and as she concluded that the City would not take the actions against the Bennetts that she was demanding be taken. The differences between Ms. Sieverding and the County developed when the deputy district attorneys for Routt County initiated prosecutions against her for "unlawful tree trimming" and harassment of Jane Bennett, and refused to initiate prosecutions against the Bennetts for their perceived crimes.

Plaintiffs initiated this case by filing on October 11, 2002, a Complaint that purported to set forth claims against approximately 36 individuals and/or entities. The Complaint was 106 pages long, with 780 numbered paragraphs. The statement of claims itself was almost 20 pages long. Before any defendant was served, and before counsel for any defendant had entered an appearance, plaintiffs tendered for filing four amended complaints: an Amended Complaint on December 9, 2002; a "2nd Amended Complaint" on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

December 31, 2002; a "3rd Amended Complaint" on January 3, 2003; and a "4th Amended Complaint" on January 8, 2003. All of the amended complaints were equally long, equally convoluted and equally impossible to understand.

On January 10, 2003, I issued an Order in which I set this case for a status conference to be conducted on January 30, 2003. In my Order, I stated that I had read plaintiffs' Complaint, and I found it to be "verbose, prolix and virtually impossible to understand." I explained that plaintiffs' Complaint did not comply with Fed.R.Civ .P. 8(a), which required plaintiffs to draft a Complaint that provides "a short and plain statement of the claim showing that the pleader is entitled to relief." I explained that plaintiffs' claims against the people and organizations that they had named "appear to be completely groundless and frivolous," in violation of the provisions of Fed.R.Civ.P. 11. Finally, I warned plaintiffs that if they persisted in the prosecution of claims that were later determined by the court to be frivolous, they could be ordered to pay the attorney fees and costs that had been incurred by defendants.

*2 In my Order of January 10, 2003, I urged plaintiffs to take their Complaint to an attorney, expressing my opinion that plaintiffs would be better served by spending their money on an opinion from an attorney rather than on the costs that would be incurred in appearing here for my status conference. Finally, I informed plaintiffs that my purposes in setting the status conference were two-fold: (1) to discuss with plaintiffs my concerns that their claims were groundless, and (2) to attempt to persuade plaintiffs to reconsider their claims in light of the "probability that they will be sanctioned and/or ordered to pay legal fees to the defendants who are the subjects of frivolous claims."

Before January 30, 2003, the date of the status conference, plaintiffs had tendered for filing two more efforts to amend their complaint. On January 23, 2003, they filed a "5th Amended Complaint." On that same date, I entered an Order in which I struck the 5th Amended Complaint, as well as all of plaintiffs' previous efforts to amend their original Complaint. On January 28, 2003, plaintiffs filed what would be their sixth request to amend their complaint, this time asking leave to add a claim for "bad faith."

Plaintiffs appeared here on January 30, 2003, for the status conference that I had ordered. The conference lasted approximately one and one-half hours, but the futility of the conference became apparent in the first few minutes. As the transcript of proceedings reflects, I attempted to touch upon all of the claims-or, at least, groups of claims or groups of defendants-and I allowed counsel for defendants to express their views with regard to the fatal deficiencies that they perceived in plaintiffs' complaint. I attempted again to impress upon plaintiffs that their claims were groundless and frivolous. But Ms. Sieverding stubbornly and repeatedly argued that the court and counsel were simply incorrect in their views.

At the conclusion of the status conference, I advised plaintiffs that I was striking all of their Complaints and Amended Complaints. I informed them, again, that all of their pleadings violated Fed.R.Civ.P. 8(a) because they were needlessly long, and advised them that their efforts to state claims were difficult, even impossible, to understand. I directed them to file an amended complaint, and set a page limit for their amended complaint of 40 pages. I urged them, again, to reconsider most, if not all, of their claims in light of the remarks made by me, and by the attorneys who addressed the court with comments about the groundless nature of the claims against their respective clients. Plaintiffs were given until April 1, 2003, within which to file their amended complaint.

Ms. Sieverding is not without the *apparent* ability to file a complaint that would be intelligible to a reasonable person. She herself has stated in some of her documents that she possesses both graduate and undergraduate degrees from reputable universities, and has been employed in technical positions that required a high degree of intelligence and learning. She and her husband presently own and operate their own business. She has stated that her efforts in this lawsuit are based in part upon some legal software that permits her to conduct legal research, and her remarks in court were relatively articulate-though misguided. Unfortunately, Ms. Sieverding has apparently allowed her obsession with the restraining order and other events in Steamboat Springs to overcome her reason and judgment.

*3 On March 31, 2003, and April 1, 2003, plaintiffs filed two documents. The March 31 document is entitled "Substitute pleading shortened by requirement of Magistrate Judge O.E. Schlatter," and it will be referred to as the "Substitute Pleading." It is 40 pages and 353 numbered paragraphs long, with approximately eight pages of claims. It appears to be an effort to be an amended complaint that will comply with my order. The April 1 document is entitled "1st Amended as entitled version of shortened

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

pleadings replacing struck version," and it will be referred to as the First Amended Complaint, or FAC-although in light of plaintiffs' numerous prior complaints this one is plainly not the "First" one. The FAC, too, is 40 pages long, and it also appears to be an effort to submit an amended complaint that will comply with my order. However, this version contains 419 paragraphs, and about ten pages of claims. Although Ms. Sieverding makes much of the fact that these amended complaints are in compliance with my directive to restrain herself to no more than 40 pages, she clearly assisted herself in reaching this goal by reducing the size of her font and the spacing between lines.

In effect, the above two documents represent plaintiffs' 7th and 8th tendered amended complaints. On April 11, 2003, plaintiffs made a 9th effort to amend by filing a pleading entitled "Motion to amend case to add claims and claimants for bad faith insurance claims, civil conspiracy, and related activities." And on April 29, 2003, plaintiffs tendered for filing yet another effort to amend, their 10th attempt, this one entitled "2nd amended pleadings." These two efforts to amend were either denied or stricken by me. Thus, the operative Complaint in this case is either the "Substitute Pleading" filed on March 31, 2003, or the so-called "1st Amended" that was filed on April 1, 2003.

I do not find it necessary to direct that either of the above-referenced amended complaints stand as the operative complaint. I have examined both of them, and I note that the contents of the complaints are so similar as to be almost identical. As I explain further below, even though both of these efforts by plaintiffs are less than one-half the size of the original 106 page complaint, these complaints nevertheless violate the provisions of Rule 8(a). They are prolix, verbose, rambling and incoherent. Plaintiffs' effort to shorten their complaint did nothing to bring any coherence or intelligibility to the contents of their allegations and claims.

## II. NATURE OF PLAINTIFFS' CLAIMS, GENERALLY

In setting forth their claims in the Amended Complaint, plaintiffs state that "most [are] under U.S.C. 42 section 1983," despite the fact that plaintiffs were advised repeatedly that only "state actors" may be charged with a violation of § 1983. *See* Sub.Pleading at 30. Plaintiffs' claims are almost impossible to discern or interpret. *See, e.g., id.* at 30-

38. Any effort by any reasoanble person to wade through plaintiffs' complaint and all of their claims is a mind-numbing exercise. The number of claims asserted by plaintiffs is certainly in the hundreds. Describing each of the individual defendants, and all of the claims that are asserted against each one of them, would be interminable and extraordinarily difficult. In the circumstances presented by this case, such an effort is unnecessary. Instead, I will provide an overview of the general type of complaint that plaintiffs appear to have asserted about each of the different groups of defendants that they have named in this action.

*4 1. The Bennetts. The claims against the Bennetts read like the table of contents for a hornbook on torts. Virtually every tort imaginable has been listed against the Bennetts for their various actions during the dispute that began in 1991, and nothing would be served by listing those torts here. Just the *titles* of the various torts alleged ramble on for almost two pages in the March 31 complaint. *See* Substitute Pleading at 30-32.

2. The lawyers. During the decade of differences between the Sieverdings and the Bennetts, a number of lawyers were involved in the representation of persons or entities other than the Sieverdings in circumstances where the lawyers represented the persons or entities *against* the legal interests of the Sieverdings. The lawyers that have been sued include, at least, Klauzer & Tremaine, a Steamboat Springs firm that represented the Bennetts; James B.F. Oliphant, who also represented the Bennetts on some matters; David Brougham and his law firm, Hall & Evans, who represented the City officials of Steamboat Springs, the County Officials of Routt County, and CIRSA, their insurance carrier. Plaintiffs have sued all of these lawyers because, in general, (a) the lawyers' actions in representing their various clients constituted their participation in the so-called "civil conspiracy" to deprive plaintiffs of their rights, and (b) plaintiffs believe that the lawyers owed plaintiffs a duty to help the Sieverdings. For example, and solely for the purpose of describing the nature of plaintiffs' various claims, plaintiffs state the following in regard to two of the lawyers for Klauzer & Tremaine: "Nonfeasance and claims under the doctrine of discovered peril because they knew Sieverdings were hurt because of their actions but refused to help them." *Id.* at 36.

3. The City and County officials. The City and County officials have been sued for their numerous actions that allegedly resulted in benefits to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Bennetts, and for their numerous actions, or failures to take actions, that allegedly resulted in harm to plaintiffs. The actions include the alleged failures by the officials to enforce the zoning codes in regard to the Bennetts, for lying about actions taken in regard to the Bennetts, for failing to take legal action against the Bennetts, and, generally, for failing to help plaintiffs. For example, plaintiffs allege that the City, Sandy Fiebing, its code enforcement officer, and CIRSA "[u]nder U.S .C. 42 section 1983 [committed] accessory to theft by deception, intentional affliction [sic] of emotional distress, civil conspiracy, negligence per se, and tortious violation of statute for failure to perform job function of code inspection...." *Id.* at 32.

4. Judge James Garrecht. Judge Garrecht issued the restraining order against Ms. Sieverding. Plaintiffs state that Judge Garrecht is the district court judge for Steamboat Springs (although the state directory reflects that he is the county court judge), and they state in the caption of their Amended Complaint that their suit against the judge is "for injunctive relief only since he is immune from suit for damages." The restraining order issued by Judge Garrecht is at the heart of this case, and a number of pages and pleadings have been devoted to Ms. Sieverding's request to this court to vacate the restraining order.

**\*5** 5. The prosecutors. Plaintiffs offer somewhat of a summary of their claims against the group of defendants that were employed by the Office of the District Attorney for the County in which Steamboat Springs is located. Plaintiffs state:

> Nonfeasance/Conscious Last clear chance/Doctrine of discovered peril/Civil Conspiracy/Libel/Constructive Fraud/Tort of Statutory Violation (Official misconduct)/Obstruction of Justice/breach of implied duty of good faith performance/breach of implied contract for 3rd party beneficiaries against them all for their failure to prosecute the crimes against the Sieverdings (false reporting, criminal libel, theft by deception, conversion, official misconduct and extortion) and the perjuries by [other named individuals].

*Id.* at 38.

6. The insurance companies. Plaintiffs are not an insured of CIRSA, but they have sued CIRSA, the City's insurance company, and they have named CIRSA's lawyer, David Brougham. Plaintiffs state: "Bad faith in handling insurance claim and nonfeasance and breach of implied duty for good faith performance for their failure to investigate

Sieverdings' damages, and for David Brougham's threats of more abuse of process and deceitful statements on 1/30/03 [i.e., during court's status conference] that their claims were frivolous." *Id.*

7. The Bar Associations and Davis Graham & Stubbs. Plaintiffs claim that they spent months, perhaps years, attempting to find counsel to represent them in this case, and they allege that numerous lawyers refused to take their case as soon as the lawyers learned that a part of plaintiffs' lawsuit involved claims against other lawyers. Plaintiffs blame the Bar Associations for this problem and related problems. For example, plaintiffs state in their claims against the Bar Associations:

> tortious interference for interfering with Sieverdings' right to sue by their actions and omissions discouraging attorneys from assisting litigants with actions against attorneys for damages of the types experienced by the plaintiffs. Nonfeasance, misfeasance and breach of implied duty for good faith performance for not implementing even inexpensive attorney misconduct surveillance and help tools for non-client attorney victims, thereby creating a dangerous situation for the Sieverding family.

*Id.* at 30.

In their original Complaint, plaintiffs asserted a similar type of claim against Davis Graham & Stubbs ("DGS"), a local law firm. They stated in their Complaint that they had sent to DGS letters or e-mail reports about the misconduct of the lawyers who had represented clients in opposition to plaintiffs. Plaintiffs alleged that DGS had failed to take any action in regard to their reports, and had failed to report the misconduct to the appropriate authorities, thereby making DGS liable to plaintiffs for their damages. Curiously, in the two amended complaints that are before the court, plaintiffs do not assert any claim against DGS in either of the amended complaints, and fail even to name DGS in the caption of the April 1 Amended Complaint.

**\*6** 8. The newspaper. ms. Sieverding has sued WorlddWest Limited Liability Company, doing business as *The Steamboat Pilot & Today* and *Steamboat Today,* which are new spapers that are published and distributed in and around Steamboat Springs. She alleges that an article that was printed on March 31, 2001, was defamatory.

III. MOTIONS TO DISMISS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                            Page 5
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

1. Grounds asserted for dismissal.

The majority of the numerous defendants named by plaintiffs have filed motions to dismiss plaintiffs' Amended Complaint of April 1, 2003, and several of the defendants have filed motions pursuant to Fed.R.Civ.P. 11 for sanctions against plaintiffs, or have requested sanctions in the body of their motions to dismiss. Plaintiffs have filed responses to all of the motions to dismiss and motions for sanctions, entitling all of their responses as "objections."

The motions to dismiss have been referred to me by District Judge Richard P. Matsch. His order of reference directs me to submit recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). However, this case has very recently been transferred from Judge Matsch to District Judge Edward W. Nottingham. Judge Nottingham will be responsible for all further matters in this case, including the approval or disapproval of this Recommendation.

Motions to dismiss and/or for sanctions: The following motions to dismiss and/or for sanctions have been filed, and are addressed in this Recommendation:

(a) Defendants Randall Klauzer, James "Sandy" Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC, and Jane Bennett's Motion to Dismiss [filed May 1, 2003];

(b) Defendants Randall Klauzer, James "Sandy" Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC and Jane Bennett's Motion for Rule 11 Sanctions [filed May 9, 2003];

(c) Motion to Dismiss and/or Motion for Summary Judgment [filed May 1, 2003, by public officials (City and County), David Brougham, and Hall & Evans, LLC]; in their motion to dismiss, the public officials expressly ask the court to award attorney fees and costs as a sanction for frivolous litigation;

(d) Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [filed April 29, 2003, by James B.F. Oliphant];

(e) Motion for Sanctions Pursuant to F.R.C.P. 11 [filed April 29, 2003, by James B.F. Oliphant];

(f) Defendant American Bar Association's Motion Pursuant to Fed.R .Civ.P. 12(b)(6) to Dismiss Plaintiffs' Complaint With Prejudice [filed May 19, 2003];

(g) Defendant Colorado Bar Association's Motion to Dismiss Plaintiff's [sic] Complaint [filed May 1, 2003];

(h) Motion to Dismiss All Claims Against New spaper Defendants [filed May 14, 2003].

Summary of grounds presented for dismissal: In one form or another, defendants have asked for dismissal on the following grounds:
   1. plaintiffs' Amended Complaints fail to comply with Fed.R.Civ.P. 8(a);
   2. plaintiffs' claims are barred by Fed.R.Civ.P. 41 and res judicata;
   3. plaintiffs fail to state claims pursuant to the requirements of Fed.R.Civ.P. 12(b)(6) , including (a) their failure to allege facts as to some defendants that show state action for § 1983 purposes, (b) their failure to allege facts for conspiracy in other than conclusory fashion, and (c) their failure to allege the existence of duties that are cognizable in the law;
*7 4. plaintiffs fail to rebut the claims of qualified and absolute immunity that have been raised by the City and County defendants;
   5. plaintiffs' claims are barred by the Colorado Governmental Immunity Act;
   6. plaintiffs' claims are barred by the statute of limitations;
   7. plaintiffs have failed to state claims against David Brougham, Hall & Evans and CIRSA; and
   8. plaintiffs' claims against the new spaper defendants are barred by the statute of limitations, and plaintiffs have failed to state a claim against these defendants.

2. Summary of recommendation.

I have reviewed all of the pleadings that have been filed by plaintiffs with the liberal deference that is due to them pursuant to the case law. *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ; *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Although they are entitled to a liberal reading of their pleadings, they are not entitled to have the court act as an advocate on their behalf. *Hall,* 935 F.2d at 1110.

(a) Rule 8(a). I conclude that plaintiffs have done nothing to address the problems that I outlined for them in my Order of January 10, 2003, and in my remarks during the status conference of January 30, 2003. Their Amended Complaints, although shorter

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

than all of the other complaints and amended complaints, are still "verbose, prolix and virtually impossible to understand." Their Amended Complaints do not satisfy the requirements of Rule 8(a), and their complaints, all of them, should be dismissed for that reason.

This is a Recommendation, not an order of dismissal. For dismissal purposes, plaintiffs' failure to provide a complaint that complies with Rule 8(a) is sufficient to provide a basis for the dismissal of this case, and any order of dismissal need not address, discuss or resolve the numerous other legal issues that are raised by the motions to dismiss. However, because this is a Recommendation, I have an obligation to address the other legal issues in this case, even if only in summary or overview fashion. Further, because I recommend that plaintiffs be made to pay the legal fees and costs that have been incurred by defendants, I am obligated to address the frivolous nature of plaintiffs' claims.

(b) Rule 41 and res judicata. At the time of the status conference, I was unaware that plaintiffs had filed this same, identical cause of action against the same defendants no less than four times before filing this case. Mr. Brougham stated during the conference that he believed that plaintiffs had filed the same complaint on several prior occasions, but he had not yet obtained the documents that would demonstrate their multiple filings. As noted in the discussion below, those documents have now been provided, and demonstrate that plaintiffs' claims against most of the defendants are barred by application of Rule 41 and the doctrine of res judicata.

(c) Rule 12(b)(6), failure to state claims. Plaintiffs' inability on the face of their Complaint to state claims against defendants pursuant to the provisions of Rule 12(b)(6) was the reason that I conducted the status conference of January 30, 2003: to inform plaintiffs that they had failed to state claims, and to warn them of the probable consequences that would result if they failed to withdraw such claims. Despite the warnings, plaintiffs have persisted in their efforts against defendants, virtually without changing a word. As discussed below, plaintiffs do not merely fail to meet the requirements of Rule 12(b)(6), their claims are so bizarre they are fanciful.

**8* (d) Failure to overcome claims of absolute and qualified immunity. The City and County defendants have raised the defense of qualified immunity. The County defendants, i.e., the judge and prosecutors, have raised the defense of absolute immunity.

Plaintiffs have asserted no facts that would rebut these defenses by these defendants.

(e) All claims are barred by applicable statutes of limitations. Plaintiffs' numerous complaints and amended complaints all reflect that the events about which they make complaint, and about which they were complaining at the time that the events occurred, all happened before the date upon which the applicable statute of limitations would bar the commencement of any suit on such events.

(f) Claims against the newspapers are barred by the statute of limitations, and by plaintiffs failure to state a claim. Plaintiffs sued the newspapers in Steamboat Springs for an article which appeared on March 31, 2001. Their claims are barred because they failed to file within the one-year statute of limitations, and because they allege no facts that demonstrate the existence of actual malice or knowledge of the article's falsity.

(g) Summary. Therefore, for all of the reasons presented by defendants, I will recommend that all of plaintiff's claims be stricken, and this case dismissed with prejudice.

(h) Recommendation that plaintiffs be assessed attorney fees and costs as a sanction for filing, and persisting in the prosecution, of frivolous claims. Plaintiffs have deliberately and stubbornly elected to ignore all of the advice that they received from both the lawyers and myself during the status conference. All of their claims are groundless and frivolous, and I warned plaintiffs that their failure to withdraw such claims could result in the imposition upon them of the attorney fees and costs that have been incurred by defendants. Additionally, one set of the defendants (referred to below as the "Klauzer defendants), served "safe harbor" letters upon plaintiffs in which the same types of warnings were presented.

I seriously doubt that any pro se parties have ever been the beneficiaries of advice and warnings to the extent that such advice and warnings have been provided to the Sieverdings. Nevertheless, they persistently and adamantly chose to ignore the information and advice that was offered to them. They have persisted in the prosecution of claims that are frivolous, and their prosecution of these claims constitutes abusive litigation. For these reasons, I recommend that plaintiffs be ordered to pay the legal fees and costs that have been incurred by all of the defendants from and after the status conference of January 30, 2003. This date represents the occasion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 7
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

upon which plaintiffs were first warned by the court and the attorneys who were present that their claims were frivolous, and that attorney fees and costs would be the probable consequence of their persistence in the prosecution of this case.

### 3. Need for dismissal of the minor children.

**\*9** The two minor children should not be parties to this case. On January 23, 2003, I explained to plaintiffs in a written order that the parents could not present a claim on behalf of the children unless the parents and/or the children were represented by counsel. I gave the parents a deadline within which to obtain counsel. The parents did not obtain counsel by the deadline that I established, and on May 14, 2003, I submitted a Recommendation to Judge Matsch, recommending that the two boys be dismissed as parties to this case. The parents filed an objection to my Order of January 23rd, and this issue remains pending.

In the Conclusion of this Recommendation, I reiterate my Recommendation that Ed and Tom Sieverding be dismissed as parties. Dismissal of the minor children has some importance at this time because I am recommending that plaintiffs be ordered to pay attorney fees and costs. The minor children, who have not been represented by counsel, should not be subject to the burdens of any court order that directs plaintiffs to pay fees and costs.

### 4. Plaintiffs' rights to object.

Plaintiffs are entitled to seek review or reconsideration of my recommendations by filing "objections" to my recommendations within ten days. An advisement of plaintiff's right to appeal or object is attached to this Recommendation on a page which is entitled "Advisement Under Fed.R.Civ.P. 72."

### IV. PLAINTIFFS HAVE FAILED TO COMPLY WITH RULE 8(a)

Ms. Sieverding's success in reducing the size of her complaint to "no more than 40 pages" does not mean, *ipso facto,* that she has complied with the requirements of Rule 8(a). I have already stated above that plaintiffs' Amended Pleadings do not comply with Rule 8(a) because they are little more than mirror images, though miniaturized, of the 106 page document that was stricken for being "verbose,

prolix and virtually impossible to understand." The Amended Complaints filed by plaintiffs are anything but "simple, concise and direct," and they are completely lacking in clarity and intelligibility. As I have already noted, although Ms. Sieverding boasts that her two new complaints are no more than 40 pages in length, part of her success is premised upon the fact that she merely reduced the size of the font and the line spacing in her documents.

In my Order of January 10, 2003, I described for plaintiffs the requirements of Rule 8(a). I stated in that Order:

> Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). "[T]he only permissible pleading is a short and plain statement of the claim showing that the pleader is entitled to relief on any legally sustainable grounds ." *Blazer v. Black,* 196 F.2d 139, 144 (10th Cir.1952). The requirements of Rule 8(a) guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Communications Network, Inc. v. ESPN, Inc.,* 767 F.Supp. 1062, 1069 (D.Colo.1991), *aff'd,* 964 F.2d 1022 (10th Cir.1992).
> **\*10** The philosophy of Rule 8(a) is reinforced by Rule 8(e)(1) which provides that "[e]ach averment of a pleading shall be simple, concise, and direct." Taken together, Rules 8(a) and (e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8. A decision to dismiss a pleading pursuant to Rule 8 is within the trial court's sound discretion. *Atkins v. Northwest Airlines, Inc.,* 967 F.2d 1197, 1203 (8th Cir.1992); *Gillibeau v. City of Richmond,* 417 F.2d 426, 431 (9th Cir.1969).

Order of 1-10-03 at 3-4.

Obviously, my goals in directing plaintiffs to submit a shortened complaint were not achieved. I had assumed that in light of the court's remarks that plaintiffs would reflect upon their course of conduct, and seek to withdraw their complaint. If plaintiffs refused to withdraw all of their claims, I had hoped that they would, at least, see the foolishness of their pursuit of many, if not most, of their claims against most of the defendants, and that they would submit an amended complaint that named only a few

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

individuals for limited causes of action.

However, as the two amended complaints make obvious, no individual or entity was dropped from the suit, and no claim was omitted. Plaintiffs' factual assertions, consisting of 353 paragraphs in one document, and 419 in the other, remain rambling and incoherent. The claims section for each set of defendants continues to contain so many *titles* for alleged wrongs, usually with no apparent references to any factual bases relative to each title, that defendants are left with no notice-and certainly no fair notice of the claims against which they must defend. In some places, plaintiffs ran together the titles for ten or twelve torts in one single sentence, as I illustrated in a preceding section of this Recommendation:

> Nonfeasance/Conscious Last clear chance/Doctrine of discovered peril/Civil Conspiracy/Libel/Constructive Fraud/Tort of Statutory Violation (Official misconduct)/Obstruction of Justice/breach of implied duty of good faith performance/breach of implied contract for 3rd party beneficiaries against them all for their failure to prosecute the crimes against the Sieverdings (false reporting, criminal libel, theft by deception, conversion, official misconduct and extortion) and the perjuries by [other named individuals].

Am.Compl. of 3-31-03 at 38.

In summary, plaintiffs failed to comply with the requirements of Rule 8(a). Therefore, for this reason, their Amended Complaints should be dismissed. This ground for dismissal, standing alone, provides a sufficient legal basis for the dismissal of this entire case.

## V. PLAINTIFFS' CLAIMS ARE BARRED BY RULE 41 AND RES JUDICATA

### 1. Facts.

Two sets of defendants have filed motions to dismiss in which they argue, in part, that plaintiffs' claims are barred by application of Rule 41(a)(1) and the doctrine of res judicata. *See* (1) Motion to Dismiss and/or Motion for Summary Judgment" filed by, generally, City and County officials, District Attorneys, David Brougham and Hall & Evans, L.L.C. (collectively, "City-County defendants"); (2) "Defendants Randall Klauzer, James 'Sandy' Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC, and

Jane Bennett's Motion to Dismiss" (collectively, "Klauzer defendants"). The Klauzer Motion to Dismiss demonstrates that plaintiffs' effort to file this law suit is the *fifth* time that they have filed these same claims against these same defendants based upon the same series of events that have been outlined by plaintiffs again and again in their numerous complaints and amended complaints. Klauzer Mtn Dism. at 4-8.

*11 The sequence of previous filings by plaintiffs is as follows:

1. On April 19, 2002, plaintiffs filed a Complaint in Routt County District Court here in the State of Colorado, captioned *David and Kay Sieverding v. City of Steamboat Springs, Kevin and Jane Bennett, et al.,* Case No.2002 CV 41. The Klauzer defendants report that the Complaint filed in Routt County was 800 paragraphs long. *See* Klauzer Mtn Dism. at 4. On June 19, 2002, plaintiffs themselves moved to dismiss this case, stating:

> the interests of justice will be served by refiling in Federal Court. Due to the similarity of the pleadings to be filed in Federal Court, all legal efforts useful in one will be useful in the other.

City-County Mtn Dism/Sum.Jdgmt, Ex. 1. The state District Court granted plaintiffs' request, and dismissed the case on July 9, 2002, "without prejudice." *Id.*

2. On April 25, 2003, while the Routt County case was still pending, plaintiffs filed the same Complaint in this court, captioned *Kay and David Sieverding v. City of Steamboat Springs, Kevin and Jane Bennett, et al.,* Case No. 02-M-815. As the case number reflects, this second case was assigned to Judge Matsch. The file for this court reflects that the City-County defendants and the Klauzer defendants were included in this suit. On May 1, 2002, Judge Matsch entered an order summarily remanding the case to the Routt County District Court. The Klauzer defendants state that they are informed and believe that this case has been dismissed by the state court without prejudice. *Id.* at 5.

3. On May 21, 2002, plaintiffs filed a complaint in the United States District Court for the Western District of Wisconsin, captioned *Kay Sieverding and David Sieverding v. City of Steamboat Springs, CO, Kevin and Jane Bennett, et al.,* Case No. 02-CV-287-C. *See* City-County Mtn Dism/Sum.Jdgmt, Ex. 2. Because plaintiffs filed a second law suit after this one, this first suit will be referred to as # 287. The City-County and Klauzer defendants who seek

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

dismissal pursuant to Rule 41(a)(1) were all named in case # 287. *Id.* On July 10, 2002, Plaintiffs filed a motion for voluntary dismissal of # 287, stating:

> We are filing a revised pleadings [sic] the same day related to the same events. Our only motivation for withdrawing and refiling is to revise our pleadings to make them as compatible with federal procedure as we can, as clear as we can, and to make the Court's job as easy as we can.

*Id.* Their case was dismissed by the Court "without prejudice" on July 15, 2002. *Id.* However, in a subsequent order by the Court, the judge stated that she dismissed plaintiffs' complaint and first amended complaint in # 287 "because they were excessively prolix in violation of Fed.R.Civ.P. 8." *See id*, Ex. 3 at 1. The judge noted that plaintiffs' complaint totaled 100 pages and contained more than 800 paragraphs, and the amended complaint ran to 603 pages and featured well over 3,000 paragraphs and 726 exhibits. *Id.*

**\*12** 4. Following the dismissal of # 287, plaintiffs filed yet another complaint in the federal court for the Western District of Wisconsin, calling this one a "Second Amended Complaint." The case was numbered 02-CV-0395-C, and will be referred to as # 395. Plaintiffs once again named all four members of the Sieverding family as plaintiffs, and once again named the various defendants who are claiming the protections of Rule 41. The City-County and Klauzer defendants assert, and their assertion is not disputed by plaintiffs, that the claims and parties that were alleged by plaintiffs in # 395 were "essentially identical" to those alleged in case # 287, as well as the claims that were asserted when plaintiffs filed in state and federal court in Colorado. Klauzer Mtn to Dism. at 6.

On October 18, 2002, District Judge Barbara B. Crabb, in a stinging order, dismissed plaintiffs' Second Amended Complaint. *See* City-County Mtn Dism/Sum.Jdgmt, Ex. 3. She first noted that she had scolded plaintiffs in her order dismissing # 287 for "persist[ing] in filing shotgun pleadings," and for submitting complaints that were "excessively prolix in violation of Fed.R.Civ.P. 8." *Id.* at 1. She then noted that plaintiffs' revised complaint "runs to 107 pages, contains 706 paragraphs and names more than 50 defendants against whom plaintiffs assert some 230 'claims.' " *Id.* She then remonstrated plaintiffs as follows:

> The complaint is a rambling, massive collection of facts with no apparent organizational scheme. There are so many factual allegations in the complaint that it is nearly impossible to discern

which acts of which defendants are alleged to have violated which laws. At the end of their complaint plaintiffs list each defendant and the "laws" they are alleged to have violated, but this is of little help. For starters, some of these claims are either downright bizarre (as when plaintiffs accuse defendant Colorado Bar Association of "misconduct, blockading a road") or so vague as to be meaningless (as with the claim that nearly every defendant abrogated an unspecified "duty to care"). Moreover, because the plaintiffs claims are so nebulous ("conspiracy of abuse of process;" "conspiracy to deny and accessory to denial of federal and state constitutional rights;" "failure to properly supervise and restrict dangerous attorneys"), their summary does not allow the court to discern which of defendants' elaborately detailed actions are linked to the various claims. I emphasize that this is not a result of too little factual detail in the complaint. Rather, it is a result of including far too many facts in a disorganized complaint that apparently chronicles every disagreeable encounter that plaintiffs ever experienced while residents of Colorado.

*Id.* Judge Crabb thereupon ordered that # 395 be "DISMISSED with prejudice," and directed the clerk of court to "close this case." *Id.*

### 2. Discussion of Rule 41 and res judicata.

**\*13** Rule 41(a), Fed.R.Civ.P., provides, in pertinent part, as follows:

> ... an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, *except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.*

Fed.R.Civ.P. 41(a), emphasis added.

Res judicata, or claim preclusion, bars a party or its privies "from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." *King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir.1997). To apply the doctrine of res

Not Reported in F.Supp.2d                                                                                          Page 10
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

judicata, three elements must exist:
> (1) a judgment on the merits in an earlier action;
> (2) identity of parties or privies in the two suits;
> and (3) identity of the cause of action in both suits.

*Id.,* citing *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1467 (10th Cir.1993). Consideration of the doctrine of res judicata is the same whether the court is evaluating plaintiffs' federal claims or state law claims. The test for res judicata is the same for both jurisdictions. *See, e.g., Squire v. United Airlines, Inc.,* 973 F.Supp. 1004, 1006 (D.Colo.1997), citing *Michaelson v. Michaelson,* 884 .2d 695, 699 (Colo.1994).

The first part of the test is satisfied in the present circumstances because the claims that have been brought by plaintiffs have been adjudicated on the merits. The "adjudication on the merits" of plaintiffs' claims has occurred in two fashions. First, as Rule 41(a) plainly states, parties are entitled to voluntarily dismiss their case once, and the voluntary dismissal does not act as a bar to the bringing of the same suit on a later occasion. However, Rule 41 states that upon the voluntary dismissal of a case for the second time, parties are precluded from ever bringing again the same claims that were asserted in the first suit. Rule 41(a)(1) gives a plaintiff a maximum of two bites of the apple. If a litigant who has previously dismissed the case by notice under Rule 41(a)(1) in any court seeks again to dismiss following an unfavorable ... determination, the dismissal will operate as "an adjudication upon the merits...." *In re Piper v. Aircraft Dict. Sys. Antitrust Litigation,* 551 F.2d 213, 219 (8th Cir.1977).

The Sieverdings' argument that no "adjudication" ever occurred is utter nonsense. They state, "[t]hese claims [in Wisconsin] were never litigated, only filings submitted for form review while pro se litigant studied case law on line and law school texts." Pltfs' Objection to Klauzer Mtn to Dism. at 14.

**\*14** In this case, plaintiffs have voluntarily dismissed their case twice: once on June 19, 2002, when they voluntarily dismissed the complaint that they had filed in the Routt County District Court, and again on July 10, 2002, when they voluntarily dismissed the complaint that they had filed in federal court in the Western District of Wisconsin. The result of plaintiffs' "second bite of the apple" was to forever preclude them from ever bringing the same claims again in any court. *Id.*

Plaintiffs' claims have been adjudicated on the merits in a second manner. On October 18, 2002, District Judge Crabb dismissed plaintiffs' complaint "with prejudice." If that particular complaint had been the *only* complaint that plaintiffs had ever filed, Judge Crabb's ruling effectively bars plaintiffs from any attempts to litigate the same claims again-in any court, ever. An order that dismisses a case "with prejudice" acts as an adjudication on the merits. *Murphey v. Klein Tools, Inc.,* 935 F.2d 1127, 1129 (10th Cir.1991). Even if plaintiffs believe that Judge Crabb erred in dismissing their case, or even if Judge Crabb, *in fact,* erred in dismissing her case, her decision nevertheless acts as a bar to any future effort by plaintiffs to refile their claims. As the Tenth Circuit noted in the *Murphy* case:
> we must assume that plaintiff had no quarrel with the decision as he elected not to appeal. An erroneous judgment fairly and regularly entered by a court of competent jurisdiction is nevertheless an effective bar under the doctrine of res judicata to a subsequent action between the same parties on the same cause of action.

*Id.* When the Sieverdings failed to appeal from Judge Crabb's order, the judgment against them became final. *Id.*

The second part of the test for res judicata requires that the parties in the two (or more) proceedings be identical. This requirement has been satisfied because the parties who are seeking the protection of this doctrine here are the same parties who were named by plaintiffs in their Wisconsin and Routt County complaints.

Finally, the third part of the test is satisfied because the claims that plaintiffs are asserting here are the same claims that they have asserted in their previous complaints. Even if plaintiffs did not phrase their claims in a similar manner, the Tenth Circuit has adopted the transactional approach of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for res judicata purposes. *See King v. Union Oil Co.,* 117 F.3d at 445. The "transactional" approach provides that:
> "[A] final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What constitutes a "transaction" or a "series" is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit."

**\*15** *Id,* quoting *Lowell Staats Mining Co., Inc. v. Philadelphia Eec. Co.,* 878 F.2d 1271, 1274 (10th Cir.1989).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

Although the Sieverdings' claims are difficult, if not impossible, to discern or decipher, without doubt every effort they have made to sue the defendants in this case relates to the same "transactions" or "series of transactions." The Sieverdings' grievance began with the disputes that arose between them and their neighbors, the Bennetts. Their grievance grew and grew, to include anyone and everyone who were perceived by plaintiffs to be in agreement with the Bennetts-or, in plaintiffs' minds, "in conspiracy" with the Bennetts. The list of defendants grew to include the lawyers who represented the Bennetts, the public officials who failed or refused to act against the Bennetts, the judge who ruled in favor of the Bennetts, and so forth. The list has grown to where it now includes the lawyers who represent the people, lawyers or entities against whom plaintiffs commenced their legal actions, and the defendants' insurance company. Plaintiffs have tendered amended pleadings, which I disallowed, in which they attempted to add more parties. If not stopped, plaintiffs may soon be attempting to sue the lawyers who represent the lawyers who represent the lawyers, with no end in sight. Everything in this chain of events flows from plaintiffs' overriding frustrations with the allegedly wrongful conduct surrounding the zoning disputes with the Bennetts, and with the restraining order that was obtained by Jane Bennett to prevent Ms. Sieverding from coming within thirty feet.

In summary, all of plaintiffs' claims either were brought, or could have been brought, in the prior lawsuits that they initiated. Therefore, pursuant to Rule 41 and the application of the doctrine of res judicata, their claims against the persons or entities that were named in those suits are barred.

## VI. PLAINTIFFS HAVE FAILED TO STATE CLAIMS

### 1. Standards for Rule 12(b)(6).

Rule 12(b)(6), Fed.R.Civ.P., permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); accord *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th

Cir.1988). In reviewing the sufficiency of the complaint, a court must presume that the plaintiff's factual allegations are true, and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ; accord *Meade,* 841 F.2d at 1526.

Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47. A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 154-159 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). A court may not assume that a plaintiff can prove facts that it has not alleged, or that the defendant has violated laws in ways that plaintiff has not alleged. *Associated General California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

### 2. Overview.

**\*16** Judge Crabb in Wisconsin put her finger on the pulse of the complaint that was filed there by plaintiffs when she stated that it "is a rambling, massive collection of facts with no apparent organizational scheme [and][t]here are so many factual allegations in the complaint that it is nearly impossible to discern which acts of which defendants are alleged to have violated which laws." City-County Mtn Dism/Sum.Jdgmt Ex. 3 at 2. As noted above, plaintiffs have asserted their numerous claims in run-on fashion by stringing the titles of one claim after another in the same paragraph, or even the same sentence.

No person who is possessed of reason and legal learning could hope to wade through the two amended complaints presently at issue, and attempt to evaluate the so-called claims in an effort to determine if a linkage is presented between any facts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in the complaint and the claims that are asserted. First, the statements of claims are generally little more than a mish-mash of legal theories, seemingly plucked at random from some textbook on torts. Second, the complaints themselves generally, if not always, fail to provide any linkage between facts and claims. Reading the complaints pursuant to Rule 12(b)(6) , but in conjunction with Rule 8(a), plaintiffs have failed to set forth, in "short and plain" fashion, any claims for relief against any of the parties they have named.

I decline to even attempt to parse out and evaluate each and every effort made by plaintiffs to state a claim for relief. Instead, I merely highlight here several illustrations of the manner in which plaintiffs' effort falls abysmally short.

### 3. Failure to demonstrate "state action."

Plaintiffs have sued *everybody* in this case pursuant to 42 U.S.C. § 1983. Although they were expressly informed by me at the status conference of January 30, 2003, that they must allege facts that reflect "state action" in order to state a claim against a party under § 1983, plaintiffs have stubbornly ignored my comments, and have persisted in their claims that everybody named in their complaints have violated their civil rights.

In order to establish a party's liability for an alleged violation of a civil right, plaintiffs are required to prove either that the party is a state actor, or that the conduct of the party is "fairly attributable to the State." *See Pino v. Higgs,* 75 F.3d 1461, 1465 (10th Cir.1996).

> "[I]n order to hold a private individual liable under § 1983, it must be shown that the private individual was jointly engaged with state officials in the challenged action, or has obtained significant aid from state individuals, or that the private individual's conduct is in some other way chargeable to the State."

*Id., quoting Lee v. Town of Estes Park* 820 F.2d 1112, 1114 (10th Cir.1987).

In her response to the Klauzer motion to dismiss, Ms. Sieverding spends a huge amount of time discussing, among other relationships, who in Steamboat Springs is married to who, who works with who, who serves on what committee with who, and who lives near who-all in her effort to establish links between public and non-public persons. *See* Pltfs' Objection to Klauzer Mtn to Dism. at 17-43. None of her

discussions, however, provides a factual basis for her assertion that the non-governmental defendants engaged in "state action."

**\*17** Unfortunately, Ms. Sieverding's gossip degenerates into vicious and unfounded remarks about the so-called "real connections" between the defendants in the case. *Id.* at 32. emphasis added. In her responses, plaintiff accused virtually every named official associated with the City of Steamboat Springs of "bribery," "corruption," accepting "kickbacks," sale and consumption of cocaine and marijuana, sale of narcotics evidence in custody of the Steamboat Springs Police Department, "money laundering," "snorting cocaine," blackmailing of judges in Routt County, and many other defamatory, scandalous and politically unethical innuendos." *See id* at 17-43.

Ms. Sieverding makes no attempt to hide the fact that her charges are based on nothing more than her own speculation and gossip. She states, for example, "Kay Sieverding *suspects* that the real connections between the Fiebings and the Bennetts revolve around issues and history related to use, sale, and regulation of marijuana and cocaine in Routt County." *Id* at 32, emphasis added. She remarks that "[i]t was widely *rumored* in Steamboat Springs that Kevin Bennett had engaged in the marketing of marijuana and cocaine for many years," and that the police allegedly ignored or condoned this activity. *Id,* emphasis added. Plaintiffs' responses to defendants' motions are littered with such remarks as "it is suspected," "it is believed," "it was reported that," "apparently," "it is therefore believed," "Plaintiffs suspect," and other such phrases. *See id,* 17-43.

Ms. Sieverding provides no facts that would warrant a reasonable person in the belief that any of these outrageous allegations are true. Even if the allegations were true, they do not provide any factual basis to support her assertion that the defendants who are not governmental officials engaged in "state action" or action that is "fairly attributable to the state." Thus, plaintiffs have failed to state claims under § 1983 against any non-public persons or entities.

### 4. Failure to allege conspiracy with particularity.

Virtually every defendant is charged by plaintiffs with being in conspiracy. Everybody is alleged to be in conspiracy with everybody else. However, in order to state a claim for conspiracy, plaintiffs are required to state their claims against each defendant with

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

particularity. *See* *Nelson v. Elway*, 908 P.2d 102, 106 (Colo.1995). Whether plaintiffs are attempting to state claims for conspiracy pursuant to state law or pursuant to 42 U.S.C. § 1985, they have failed to state facts that would support their claims.

Under state law, in order for plaintiffs to state a claim for civil conspiracy, they must allege the following:
> (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result.

*18 *Magin v. DVCO Fuel Systems, Inc.*, 981 P.2d 673, 674-75 (Colo.App.1999), *cert.den.* Aug. 9, 1999. Normally, persons or parties may not be held liable for doing in a proper manner that which they had a lawful right to do. *Id.* Mere agreement to do something that happens to aid in the commission of a tort, without more, does not constitute civil conspiracy. *Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1480 (D.Colo.1996). In order to successfully plead a civil conspiracy, plaintiff must allege facts that show that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose. *Id.*

Plaintiffs have failed to allege any specific facts that fulfill the requirements of the elements of a state law claim for civil conspiracy. Their conclusory statements with regard to the existence of conspiracies surrounding every event that they allege is insufficient to state a claim. *See* *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995) (conclusory statements are insufficient to allege a claim of conspiracy). Plaintiffs have failed to allege any facts that show either unlawful acts or unlawful goals by any of the defendants. Despite plaintiffs' strong feelings to the contrary, parties are entitled to avail themselves of any appropriate legal procedures and legal counsel in an effort to prosecute Ms. Sieverding for perceived civil or criminal wrongdoings. So long as the goal and the means are lawful, no conspiracy can be charged.

To the extent that plaintiffs are attempting to assert claims against all of the defendants for conspiracy pursuant to the federal statute, plaintiffs have failed to allege or demonstrate that they are part of a protected class. Section 1985, including both sub-sections (2) and (3), require plaintiffs to allege and prove the existence of a "class-based discriminatory

animus" in order to state a claim for civil conspiracy under federal law. *Lessman v. McCormick*, 591 F.2d 605, 608 (10th Cir.1979); *Murray v. City of Sapulpa*, 45 F.3d at 1423 (stating requirement under § 1985(3) for invidious, class-based discriminatory animus); *see also* *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir.1990). Plaintiffs have not alleged that they are a part of a protected class, for example, by virtue of their race, age or gender.

In summary, plaintiffs have failed to allege against any defendant facts or circumstances in other than conclusory fashion that satisfies the elements of civil conspiracy under either federal or state law.

5. Failure to demonstrate the existence of duties, e.g., duty to aid, assist or help.

A theme that runs throughout plaintiffs complaints is their claim that various defendants, if not all of them, owed to plaintiffs some form of duty to aid, assist or help plaintiffs. Plaintiffs frequently summarize their feelings in this regard by alleging that certain defendants committed for example, nonfeasance, misfeasance, negligence or reckless negligence.

*19 The most prominent examples of these types of effort by plaintiffs are illustrated by their claims against the Colorado Bar Association ("CBA") and the American Bar Association ("ABA") (collectively, "the Bar Associations"). I have already discussed the failure of plaintiffs' to state valid claims for relief for violation of § 1983 against any of the non-public defendants, including the Bar Associations, because they failed to allege facts showing state action. And I have discussed the failure of plaintiffs to state valid claims for relief against any of the defendants, including the Bar Associations, for civil conspiracy. However, plaintiffs have also charged the Bar Associations, as well as the Klauzer defendants and other lawyers, with a breach of a duty of care that plaintiffs have alleged is owed to them by these types of defendants.

Whether a particular defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty owed, are questions of law for a court to resolve. *Bath Excavating & Const. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo.1993). In determining whether to recognize the existence of a legal duty, several factors are relevant to a court's consideration of the question. These factors include the following: (1) the risk involved; (2) the foreseeability and likelihood of injury as weighed against the social utility of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 14
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

actor's conduct; (3) the magnitude of the burden of guarding against injury or harm; and (4) the consequences of placing the burden upon the actor. *Id.; see also Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 50 (Colo.1987).

None of the above factors is dispositive or controlling, and the court may evaluate other considerations that may be relevant to the determination. *Greenberg v. Perkins,* 845 P.2d 530, 536-37. Once a court has determined that a duty exists, the court must then consider the scope of the duty and define the applicable standard of care against which to measure the defendant's conduct. *Bath Excavating,* 847 P.2d at 1147.

Plaintiffs' claims that they were owed duties by the lawyers, law firms or the Bar Associations are beyond frivolous. Their claims are downright absurd.

Plaintiffs assert, for example: that the lawyers breached some ill-conceived duty to plaintiffs when the lawyers sent them letters that contained opinions about the law that plaintiffs considered incorrect; that the lawyers owed to plaintiffs a duty to ensure that plaintiffs' legal rights and needs were protected; and that the lawyers breached a duty to plaintiffs when the lawyers failed or refused to present to the lawyer disciplinary agency plaintiffs' complaints about other lawyers.

Plaintiffs' claims against James B.F. Oliphant are representative of the type of claims that they assert against lawyers. Mr. Oliphant represented the Bennetts in the early 1990's, when the zoning disputes between plaintiffs and the Bennetts first emerged. He wrote an opinion letter on behalf of the Bennetts, and his letter was mailed to plaintiffs on November 5, 1992. *See* FAC at 37. As a result of this letter, plaintiffs seek to sue Oliphant for fraud and deceit because he made "deceitful statements [in the letter] implying that blockading the road was legal...." *Id.* They seek to sue him for "Nonfeasance and ... for Breach of Implied Duty for Good Faith Performance, because he had written to Sieverdings pretending to be a legal authority, [and] because he knew Sieverdings were hurt partially because of his deceits but refused to help them." *Id.* at 37-38.

**\*20** The lawyers in the Klauzer law firm have been sued for, among other things, "facilitating Bennetts' building in violation of the city zoning and development laws. *Id.* at 38. One attorney in the Klauzer firm has been sued for "Obstruction of Justice and Civil Conspiracy" for "refusing to let the

Sieverdings use his properly certified copy of CITY laws on 7/27/00." *Id.* The remaining claims against lawyer defendants are similarly foolish.

In regard to the Bar Associations, plaintiffs have stated repeatedly that they were unable to retain a lawyer to represent them in this case, and they assert that the responsibility for their failure rests with both the Colorado Bar Association and the American Bar Association. They seek to sue the ABA, in part, for fraud and deceit "for claiming the American attorney services industry is self regulating, down playing problems with attorney misconduct, and pretending that tort actions against attorneys for attorney fraud, abuse of process, defamation, and other intentional torts performed by an attorney in the course of business are somehow impossible." *Id.* at 31. They charge that the ABA is guilty of "Reckless Negligence, Nonfeasance, Malfeasance, and Misfeasance" for "interfering with the Sieverding family's right and ability to sue the lawyer defendants with the assistance of an attorney...." *Id.* The claims against the Colorado Bar Association are similar, and similarly ridiculous.

Plaintiffs' complaints are filled with additional examples of unfounded assertions in regard to the CBA, the ABA and the lawyer defendants. Nothing would be served by attempting to list all of those examples here. Suffice it to say that plaintiffs were warned repeatedly during the status conference of January 30, 2003, that none of the lawyer defendants or the Bar Associations owed any legal duty whatsoever to plaintiffs, and that all of plaintiffs' claims in this regard were foolish and frivolous.

In several of their responses, plaintiffs argue that they can sue lawyers because a basis for such a suit is provided in a Colorado Court of Appeals decision. *See Berger v. Dixon & Snow, P.C.,* 868 P.2d 1149 (Colo.App.1993), *cert.denied* Feb. 28, 1994. In that case, the Court of Appeals stated the general rule:

> An attorney generally has no duty to his or her client's adversary. * * * [W]hile fulfilling his or her fiduciary duty to act in the client's best interests, an attorney generally has no duty to the client's adversary and therefore is liable only for injuries caused by his or her fraudulent, malicious, or intentionally tortious conduct.

*Id.* at 1151, 1152, citations omitted. However, plaintiffs have stated no facts in their complaints that would cause their claims to fall within the exceptions to the general rule, that is, claims against lawyers for conduct that is "fraudulent, malicious, or intentionally tortious."

Not Reported in F.Supp.2d                                                                     Page 15
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

### VII. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE ABSENCE OF ABSOLUTE IMMUNITY AND QUALIFIED IMMUNITY FOR PUBLIC OFFICIALS

1. Judge and prosecutors have absolute immunity.

**\*21** Certain of the public defendants are entitled to absolute immunity. The judge who has been sued by plaintiffs, James Garrecht, for issuing the restraining order that has been driving plaintiffs to persist in these numerous law suits, is entitled to absolute judicial immunity for his conduct of any judicial proceedings that come before him. *Lerwill v. Joslin,* 712 F.2d 435, 438 (10th Cir.1983). To the extent that plaintiffs are seeking an injunction against the judge, the doctrine of abstention announced in the *Younger* case prohibits any action by this court with regard to the actions taken by the state court. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The prosecutor defendants are entitled to absolute immunity for their conduct in the initiation and prosecution of criminal cases. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990), *cert.denied,* 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). In short, plaintiffs have alleged no claims against the judge or the prosecutors for which they do not have absolute immunity.

2. Public officials have qualified immunity.

The public officials have raised the defense of qualified immunity. Once the defense of qualified immunity has been raised by a defendant, "the plaintiff assumes the burden of proof. *Barney v.. Pulsipher,* 143 F.3d 1299, 1309 (10th Cir.1998). The plaintiff must come forward with sufficient facts to show (1) that the defendant's conduct violated the law, and (2) that the relevant law was clearly established when the alleged violation occurred. *Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir.1995). "Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, [the court] need not reach the issue of whether the law was clearly established." *Id; Barney* at 1309.

To the extent that plaintiffs' allegations in regard to the public officials can be understood, plaintiffs appear to be challenging the public officials' actions in regard to zoning legislation and the implementation of zoning regulations. Plaintiffs believed that certain construction activities at the Bennett residence were in violation of zoning regulations, and plaintiffs complain about the failure of the public officials to control or stop the activities. However, plaintiffs have alleged no facts that demonstrate that any of the conduct of the public officials was in violation of any legal or constitutional right that they possessed.

Except for rare exceptions, plaintiffs have failed to allege facts that reflect personal participation by many of the City officials in the activities about which plaintiffs make complaint. The parties who did not personally participate in the events are entitled to dismissal. *Bennett v. Passic,* 545 F.2d 1260 (10th Cir.1976).

Having failed to demonstrate that the public official defendants violated any law or provision of the constitution, no further inquiry is required. Plaintiffs have failed to carry their burden with regard to the claim of qualified immunity, and the public official defendants, therefore, are entitled to qualified immunity for their actions as public officials.

3. The City has no liability.

**\*22** Plaintiffs have also named the City of Steamboat Springs as a defendant.

Under 42 U.S.C. § 1983, a local government may be held liable for the constitutional violation of its employees only when employee action pursuant to official municipal policy ... caused a constitutional tort. Therefore, to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.

*Hollingsworth v. Hill,* 110 F.3d 733, 742 (10th Cir.1997) (citation and quotations omitted); *Monell v. New York Dept. of Soc. Svcs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To hold the City liable, plaintiffs must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation. *Myers v. Oklahoma County Bd. of county Comm'rs,* 151 F.3d 1313, 1320 (10th Cir.1998).

The Sieverdings have alleged no facts that would tend to demonstrate the existence of a practice or policy by the City, and that a direct causal link between such custom or policy resulted in any violation of plaintiffs' rights. The failure to allege

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

Page 16

such facts is fatal to a claim against a municipality.

## VIII. PLAINTIFFS' CLAIMS ARE BARRED BY THE COLORADO GOVERNMENTAL IMMUNITY ACT

The majority, if not all, of the claims that plaintiffs have asserted against the public officials are claims that are based upon some tort theory-claims such as negligence, misfeasance or fraud, for example. All of the claims for tort against the officials are barred by the Colorado Governmental Immunity Act. Colo.Rev.Stat. § 24-10-101 *et seq.*

The statute provides that public employees are immune from liability for any claim that would lie in tort. *Id.* at § 118(2)(a). The statute provides a list of exceptions, but none of the torts alleged by plaintiffs fall within any of the listed exceptions. *Id.* at § 106(1). Therefore, all of the tort claims against all of the public officials must be dismissed for this reason as well as the other reasons.

## IX. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Ordinarily, the statute of limitations must be pled and proved as an affirmative defense. However, the City-County defendants and the Klauzer defendants have moved for dismissal on this basis because the factual averments of plaintiffs' complaints themselves contain the proof that plaintiffs' claims are time-barred. *CAMAS Colorado, Inc. v. Board of County Commissioners, 36 P.3d 135, 139 (Colo.App.2001)* ; *Wasinger v. Reid, 705 P.2d 533 (Colo.App.1985)*; *see also* 2A Moore's Federal Practice § 12.10 (2d ed.1985).

The longest period of limitations that could apply in this case is the two-year limit for tort claims. Colo.Rev.Stat. § 13-80-102(1)(a). Claims against law enforcement authorities, and claims for defamation, are governed by a one-year statute of limitations. *Id.* § 13-80-103. The two-year limitations period applies to claims made under § 1983. *Crumpton v. Perryman, 956 P.2d 670, 672 (Colo.App.1998)*.

**\*23** The statute provides that "[a] cause of action ... shall be considered to accrue on the date both the injury and its cause are known or should be known by the exercise of reasonable diligence." Colo.Rev.Stat. § 13-80-108(1). If the undisputed

facts "clearly show that a plaintiff discovered, or reasonably should have discovered the negligent conduct as of a particular date, the issue may be decided as a matter of law." *Salazar v. American Sterilizer Co., 5 P.3d 357, 365 (Colo.App.2000)*.

The plaintiffs filed their complaint in this court on October 11, 2002. Any events that occurred after October 11 of the year 2000, or the year 2001 in regard to defamation claims or claims against police officers and district attorneys, would be barred by the statutes of limitations.

Plaintiffs have failed to demonstrate that the claims that they assert in their complaints are not time-barred. As the City-County defendants and the Klauzer defendants point out in their motions, a reading of plaintiffs' complaints reflects that the events that underlie their claims began as early as 1992, when plaintiffs began disputing the lawfulness of the conduct of the Bennetts in regard to their construction projects. Plaintiffs' complaints reflect that their disputes with the City and the County officials arose during the 1990's, and the facts that they allege reflect that they were aware, or should have been aware, of their legal complaints against the public officials well before October of 2000 or 2001. With the exception of the claims that have been asserted against Mr. Brougham, Hall & Evans, and CIRSA, parties who allegedly breached plaintiffs' rights *after* this case was filed, plaintiffs' claims against the remaining defendants are time-barred.

## X. PLAINTIFFS FAIL TO STATE CLAIMS AGAINST BROUGHAM, HALL & EVANS AND CIRSA

In the amended complaints that were filed by plaintiffs on April 1, 2003, plaintiffs bring claims for the first time against David Brougham and his law firm, Hall & Evans, and against CIRSA, the insurance carrier for the City. The claims against Mr. Brougham are directed at his conduct in responding to plaintiffs' claims on behalf of his clients, including allegedly defamatory remarks that he made about Ms. Sieverding during the status conference of January 30, 2003. Against CIRSA, plaintiffs allege that the insurance company is liable for its "bad faith" handling of their claims against the City.

I have previously explained to plaintiffs-both during the status conference and in orders that I issued in response to their motions to amend their complaints in order to state claims for bad faith-that they cannot

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

state a claim for insurance bad faith against CIRSA because they are not insured by CIRSA. A claim for "bad faith breach of insurance contract" is grounded in both tort as well as contract. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984). Because plaintiffs are not insured by CIRSA, they lack standing to sue that company. *Farmers Ins. Exchange v. District Court*, 862 P.2d 944, 948 (Colo.App.1992) (adopting the rule that a party lacks standing to sue an insurance company until after the party obtains a judgment against the company's insured); *Parrish Chiropractic v. Progressive Cas.*, 874 P.2d 1049, 1056-1057 (Colo.1994) (holding that a party who is not the insured under the terms of an insurance contract is not a third-party beneficiary to that contract unless the parties to the agreement intended to benefit that third party, and explicitly provided so in the agreement). Because plaintiffs themselves did not have a contract with CIRSA, CIRSA does not owe them any contractual duty. And because CIRSA did not owe plaintiffs any contractual duty, it is not obligated to deal with plaintiffs in "good faith," or in any other manner Thus, plaintiffs are unable to state any legal theory which would constitute a claim against Farmers for breach of contract, for example, or for "bad faith" breach of contract.

**\*24** In regard to plaintiffs' claims against Mr. Brougham, plaintiffs were advised during the status conference that the statements of attorneys that are made during or in preparation for judicial proceedings are absolutely privileged, even if defamatory, and cannot form the basis of a law suit against the attorney. *Buckhannon v. U.S. West Communications, Inc.*, 928 P.2d 1331, 1334 (Colo.App.1996); *Club Valentia Home Owner's Ass'n v. Valentia Assoc.*, 712 P.2d 1024 (Colo.App.1985). Thus, plaintiffs cannot state a claim against Mr. Brougham for any statements he allegedly made in relation to the events surrounding this law suit.

In fact, plaintiffs admit that they are fully aware that law yers cannot be sued for their actions as advocates. Very early in their disputes with all of the defendants, plaintiffs sought legal advice from an attorney named Sandy Gardner. Plaintiffs state: "Sandy Gardner told the plaintiffs that the lawyers were entitled to write or say anything in their role as advocates." Pltfs' Objection to Oliphant Mtn to Dism. at 9. In suing Mr. Brougham, plaintiffs clearly are motivated by nothing more than malice, ill will and a desire to harass.

## XI. AGAINST THE NEWSPAPER DEFENDANTS PLAINTIFFS FAIL TO STATE A CLAIM, AND THEIR CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs assert a claim of defamation against the newspaper defendants, in their words, "because they published an article on 3/31/01 quoting district attorney P. Elizabeth Wittemyer as saying that there was reasonable cause to believe that Kay Sieverding was a criminal and had harassed Jane Bennett and that Jane Bennett was a victim without asking what the probable cause [sic] that a crime was committed." FAC at 39. Plaintiffs assert other claims of fraud, nonfeasance, misfeasance, malfeasance and civil conspiracy. I have addressed the baseless nature of those claims in previous sections.

Plaintiffs' defamation claim is barred by Colorado's one-year statute of limitation. Colo.Rev.Stat. § 13-80-103(1)(a). Plaintiffs were required to bring any claim for libel or defamation within one year of the publication of the challenged statement. *Russell v. McMillen*, 685 P.2d 255, 258 (Colo.App.1984) (holding that a cause of action in libel "accrues when the defamatory statements are published"); *Even v. Longmont United Hosp. Ass'n*, 629 P.2d 110, 1103 (Colo.App.1981) (same). Plaintiffs' right to bring a claim for defamation against these defendants expired on March 31, 2002, well before they filed their complaints in this case.

Plaintiffs have also failed to state a claim against the newspaper defendants. First, plaintiffs have failed to allege any facts that demonstrate that defendants published the article for reasons of actual malice. See *Diversified Mgmt., Inc. v. Denver Post*, 653 P.2d 1103, 1106 (Colo.1982) ; *Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 41 (Colo.App.1996). Second, plaintiffs have failed to allege any facts that demonstrate that defendants either knew the statement to be false, or had serious, actual doubts as to the truth of the statement. See *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.,S. 657, 667 (1989); *Bowers v. Loveland Publ'g Co.*, 773 P.2d 595, 596 (Colo.App.1988).

**\*25** The newspaper defendants have attached the article about which plaintiffs have complained. Newspaper Mtn to Dism., Ex. 1. The article consists of a report about the fact that prosecuting attorney Wittemyer moved for the dismissal of a charge of harassment against Ms. Sieverding, and about the fact that Judge Garrecht granted the motion, and dismissed the charge. The article states, "Wittemyer

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 18
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

claims to have had 'probable cause' to go ahead with the case, but did not think the ultimate cost to the public would be worth whatever outcome would occur." *Id.* Plaintiffs allege that this statement is libelous because Wittemyer "implied Kay Sieverding was a criminal." FAC at ¶ 314.

Whether an allegedly defamatory statement is constitutionally privileged is a question of law. *Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d at 41, *citing NBC Subsidiary v. Living will Center*, 879 P.2d 6 (Colo.1994), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1355, 131 L.Ed.2d 214 (1995). The gist of the March 31, 2001, article reflects that it is on a matter of public concern. "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). If a public figure or a matter of public concern is involved, a heightened burden applies. *Smiley's Too*, 879 P.2d at 41. "This is so because reporting about public figures or matters of public concern triggers certain constitutional privileges" on the part of the press to engage in "uninhibited, robust, and wide open debate on public issues." *Id.*

Because the March 31 article is on a matter of public concern, plaintiffs must allege that the newspaper defendants published the offending statement with actual knowledge of its falsity or with serious reservations as to its truth. They have failed to do so. Their claim for defamation against the newspaper defendants is therefore barred by the First Amendment. *See P.G. v. Ramsey County*, 141 F.Supp. 1220, 1227 (D.Minn.2001) (dismissing claim for defamation because plaintiff failed to plead facts sufficient to warrant a conclusion that defendants acted with "actual malice").

## XII. RECOMMENDATION THAT PLAINTIFFS BE ORDERED TO PAY ATTORNEY FEES AND COSTS

### 1. Overview of background.

Plaintiffs' claims are groundless and frivolous. They have been told this on innumerable occasions, both by judges as well as by lawyers. Ms. Sieverding, the spokesperson for plaintiffs, has shown through all of her remarks and actions that she will neither be persuaded nor deterred by the remarks and rulings of judges. Indeed, since 1992, Ms. Sieverding has been relentless in bringing suit against each and every person who she perceives to be in opposition to her primary goal, which is to demonstrate that the restraining order that was entered against her was entered unjustly. She has ignored the dismissal of her complaints in the past, and all signs point to her determination to ignore any dismissals that are entered by this court, unless something is done that will act as an effective deterrent.

*26 Ms. Sieverding was told by Federal District Court Judge Crabb in October of 2002 that her claims are "downright bizarre," "so vague as to be meaningless," "nebulous," and impossible to discern. City-County Mtn Dism./ Sum.Jdgmt, Ex. 3 at 2. In the face of these remarks, in the face of Judge Crabb's dismissal of plaintiffs' case "with prejudice," Ms. Sieverding nevertheless simply took her complaints to another state, Colorado, and filed them again, here in federal court.

Shortly after their complaint was filed, plaintiffs were told by me in a lengthy order of January 10, 2003, that their claims were "impossible to understand" and "appear to be completely groundless and frivolous." During the status conference of January 30, 2003, I dwelled at length upon the frivolous and baseless nature of the claims. Rather than deterred, or even slowed, by such remarks from a judicial officer and the lawyers who were present, Ms. Sieverding expressed her opinion at that time that everyone was wrong except her. Her persistence in this law suit reflects that she absolutely refuses to be influenced either by reason or by judicial mandate.

The Klauzer defendants served a "safe harbor" letter upon plaintiffs pursuant to Fed.R.Civ.P. 11(c)(1)(A), together with a draft motion for sanctions. *See* Klauzer Mtn for Rule 11 Sanctions at 2, and Ex. 1. The safe harbor letter and draft motion reiterate again for plaintiffs the frivolous nature of the claims that they asserted against the Klauzer defendants, and, by extension, against the other defendants. The letter repeated the warnings that attorney fees and costs would be pursued. The warnings were ignored by Ms. Sieverding.

Plaintiffs are not prosecuting this case on a *pro se* basis because they lack the funds to hire a lawyer, or because they simply have chosen to do this case on their own. According to their own pleadings, they consulted approximately 20 lawyers and could find

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 19
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

not one lawyer who would take their case. Plaintiffs have stated that they are able to pay the fees that a lawyer would demand, because in one pleading filed with this court plaintiffs asked the court to appoint an attorney *that they would pay for themselves.* In short, plaintiffs are financially able to hire a lawyer; they simply could not find one who would take their case.

Ms. Sieverding even refuses to understand that the approximately 20 lawyers that she attempted to retain declined to take her case for reasons other than the one she insists upon believing: that the lawyers are afraid to sue other lawyers because of possible recriminations from the Bar Associations. The materials that she presented in support of her position reflected, in the main, contrary reasons. I read one lawyer's remarks to her during the status conference, where I quoted him as saying, "In short, your case will be a difficult one as I do not see a claim under which relief can be granted to you. Based on this, we will not be able to represent you in this matter...." Trans. of Proceedings, Jan. 30, 2003 (attached with Motion to Dismiss of City-County defendants), p. 23. Ms. Sieverding insisted that his remarks did not mean that the lawyer believed that she had no claim. *Id.*

### 2. Requirements of Rule 11 for *pro se* parties.

**\*27** Rule 11 requires parties (or their attorneys, for those who have them) to conduct a reasonable investigation into the facts that they believe will support their claims, and into the laws that they believe will provide them with a legal basis for seeking relief from the court. Parties who file law suits on a *pro se* basis must comply with the provisions of Rule 11, the same as if they were lawyers. Fed.R.Civ.P. 11 ; *Business Guides, Inc. v. Chromatic Communications Enter., Inc.,* 498 U.S. 533, 544-45, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (explaining that Rule 11 applies both to parties who are represented by counsel and to *pro se* parties as well); *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1540 (10th Cir.1996) (same); *Eisenberg v. University of N.M.,* 936 F.2d 1131, 1134 (10th Cir.1991) (same).

If the court finds that a *pro se* party has signed a pleading in violation of Rule 11, the court "may ... impose an appropriate sanction" upon that party." Fed.R.Civ.P. 11(c); *see also Ferguson v. MBank Houston, N.A.,* 808 F.2d 358 (5th Cir.1986) (approving the imposition of monetary sanctions against a *pro se* party who filed, for the second time, the same claims against a party); *Miller v. United*

*States,* 868 F.2d 236 (7th Cir.1988) (approving imposition of monetary sanctions, and approving injunction against further filings, against plaintiff who would not stop filing the same types of claims against the tax laws of the United States); *Goad v. Williams,* 921 F.2d 69 (5th Cir.), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1684, 114 L.Ed.2d 79 (1991) (approving imposition of monetary sanctions, and approving injunction against further filings, for claims that were baseless and frivolous, and returning case to trial court for imposition of additional monetary sanctions); *Daniels v. Stovall,* 660 F.Supp. 301 (S.D.Tex.1987) (filing of frivolous Complaint warranted payment of attorney fees as a sanction, and trial court entered order that prohibited plaintiff from filing any further cases until she had paid the attorney fees in full).

Under the provisions of Rule 11, when a party signs a pleading, the signature of that party serves as a certification that the party has conducted a reasonable inquiry into the facts and the law before the pleading was filed. The signature also serves as a certification that the investigation into the facts and law have provided the party with *both* facts *and* law that will support the claim that is being made. *Id.* The certification requirement mandates that "all signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings." 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1335 , ¶ 57 -58 (2d ed.1990).

*Pro se* parties are entitled to have their pleadings reviewed with some measure of liberal deference accorded to their status as *pro se* parties. However, this liberal deference" does not confer a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *In re Winslow,* 132 B.R. 1016, 1019 (Bankr.D.Colo.1991) (internal citations and quotation marks omitted).

**\*28** The focus of Rule 11 is narrow. "It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or *pro se,* to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed." *Eisenberg v. University of New Mexico,* 936 F.2d at 1134. Even though *pro se* litigants may not have the training and resources of an attorney, they nevertheless must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law. *See* Fed.R.Civ.P. 11(b); *see also Danvers v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

Page 20

*Danvers, 959 F.2d 601, 604-05* (6th Cir.1992).

The Tenth Circuit has adopted the view that "an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions." *White v. General Motors Corp., Inc., 908 F.2d 675, 680* (10th Cir.1990). By extension, the actions of *pro se* parties are required to be "objectively reasonable" as well.

> A good faith belief in the merit of an argument is not sufficient; the attorney's [or the party's] belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.

*Id.*

The standard is one of reasonableness under the circumstances. Under this standard, the court must determine what a reasonable person in the *pro se* litigant's position would have done. "[S]ubjective good faith-that is, a pure heart but empty head-is no defense." *OTR Drivers at Topeka Frito-Lay, Inc. v. FritoLay, Inc., 160 F.R.D. 146, 149 (D.Kan.1995)*, internal quotation marks omitted.

### 3. Discussion of plaintiffs' Rule 11 violations.

Rule 11 requires that the Sieverdings, before filing their law suit, conduct a reasonable inquiry into the factual and legal bases for their proposed claims. A second requirement consists of the Sieverdings' duty to determine, before filing their claims, "whether any obvious affirmative defenses bar the case." *White v. General Motors Corp., Inc.,* 98 F.2d at 682. Here, although done post-filing, that inquiry was conducted *for* plaintiffs by the numerous judicial officers and lawyers who have informed them that they have no claims. Thus, plaintiffs have not merely failed to make a reasonable inquiry into the factual and legal bases for their claims, and the existence of any "obvious affirmative defenses," they have had that inquiry thrust upon them by others more educated and knowledgeable in the law than they, *and they have deliberately and continuously chosen to ignore what they have been told!* As the Tenth Circuit Court stated in the *White* case:

> We agree that sanctions are appropriate in this case, not because plaintiffs failed to inquire into the facts of their claims, but because they failed to act reasonably given the results of their inquiries.

*White,* 908 F.2d at 682.

Although a lay person may not understand the principles that underlie Rule 8(a) of the Federal Rules of Civil Procedure, plaintiffs were provided with a discourse on these principles when Judge Crabb dismissed plaintiffs' claims, "with prejudice." The content and condition of all of the dozen or so complaints that have been tendered by plaintiffs in this action reflect that plaintiffs ignored Judge Crabb's remarks, and filed the identical complaints in this court.

*29 Although a lay person might not understand that once a case has been dismissed by a judge "with prejudice" it may not be filed again, the Sieverdings were expressly told during the status conference of January 30, 2003, that if their case has been filed and dismissed before, it would likely be dismissed here. Fed.R.Civ.P. 41. In the texts of the motions for dismissal that were filed by the Klauzers and the City-County defendants, the Sieverdings were provided with the evidence that their case had been previously dismissed with prejudice, and were informed explicitly of the consequences that would flow from these circumstances. Whereas a reasonable person would have heeded the warnings, and would have considered the substance of Rule 41 with care, the Sieverdings ignored the evidence and the warnings, and forged ahead, arguing only, in effect, that the first efforts were just for practice.

Although a lay person may not know about certain technical legal principles before filing a case, the Sieverdings were expressly told and warned by the lawyers and by this court, for example, the following: that only "state actors" may be sued pursuant to § 1983; that no legal duties were owed to them by lawyers who acted on behalf of persons who were adverse to the Sieverdings; that judges and prosecutors possessed absolute immunity; that City officials possessed qualified immunity; that lawyers enjoyed immunity for their remarks made preceding and during the events related to a law suit; that City's were immune from suits for tort; and that insurance companies may not be sued for bad faith by parties who were not themselves insureds. Whereas no reasonable person would ignore the advice and warnings contained in the numerous remarks of judges and lawyers, the Sieverdings elected to disregard all advice and warnings presented to them, and persisted in the prosecution of their baseless and frivolous claims.

Even had plaintiffs not received the advice and warnings that they received, no reasonable person could possibly conclude that any basis exists for the claims that plaintiffs have attempted to assert in this case against the Bar Associations, or against Davis Graham & Stubbs, or against any of the lawyers. By

Not Reported in F.Supp.2d                                                                Page 21
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

way of example, no reasonable person could believe, as plaintiffs believe here, that the Bar Associations could be blamed, and held liable in damages, for a party's failure or inability to find a lawyer who will take his or her case. And no reasonable person could believe, as plaintiffs believe here, that a law firm such as Davis Graham & Stubbs could possibly be held liable for damages for failing to file grievances against a list of lawyers that has been provided to them in an e-mail from plaintiffs. The bare notions that underlie plaintiffs' efforts to sue the Bar Associations and Davis Graham & Stubbs are so absurd as to cause reasonable persons to shake their heads in dismay and wonderment.

In summary, plaintiffs have violated the terms of Rule 11 in egregious fashion. Their violations of Rule 11 are made all the more egregious by the fact that they have received explicit advice and warnings from both court and counsel, including counsel whom they themselves consulted, and by the fact that plaintiffs have deliberately ignored the advice and warnings that they received. For conduct such as this, sanctions are appropriate and necessary.

4. Amount of sanctions.

**\*30** In discussing the amount of a monetary sanction that is appropriate to impose in any particular case, the Tenth Circuit stated:

> Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management.

*White v. General Motors Corp., Inc.,* 908 F.2d at 683.

The Circuit Court acknowledged that Rule 11 specifically allows the award of attorney fees to the opposing party as an appropriate sanction, but stated that such an award " 'is but one of several methods of achieving the various goals of Rule 11.' " *Id, quoting Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). In considering an appropriate sanction, the Court stated that a district court must expressly consider at least the following circumstances: (1) the reasonableness of any attorney fees that are sought by a party after measuring the fees by a lodestar calculation; (2) the minimum amount that is necessary in order to deter the offending party; (3) the offender's ability to pay; (4) and such other factors as may be appropriate in the circumstances, including such factors as "the

offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, [and] the risk of chilling the type of litigation involved...." *Id.* at 684-85. Because the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit, "the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer." *Id.* at 685.

In the circumstances of this case, an award of fees and costs to defendants is an appropriate sanction to impose upon plaintiffs. These plaintiffs are neither ignorant nor naive, and they have not asserted a few claims against a few defendants out of momentary anger or spite. These plaintiffs-or, more appropriately, Ms. Sieverding-have harbored a ten-year obsession with the perceived wrongs of everyone who has had the misfortune of straying into the path of plaintiffs' pursuit of their misguided vision of justice. Ms. Sieverding is a plaintiff who refuses to listen to reason or orders from any person or court. Her ten-year crusade against the defendants in this case has been marked, as illustrated above, by actions and allegations that are vindictive and malicious.

Ms. Sieverding's malice and bad faith is illustrated by the manner in which she has made wild accusations about virtually every public official in Steamboat Springs. She is aware that her actions are public in nature, and that her comments and actions likely will be reported by the media. After all, she has sued the news papers for reporting other events that underlie this case. Knowing this, she has brazenly accused the public officials of every manner of crime and corruption, admitting all the while that she has no evidence what soever to support her accusations. This conduct presents an unusual set of circumstances that warrant an unusual response from the court, both to punish as well as to deter.

**\*31** As I write this Recommendation, I have learned that plaintiffs have filed on October 2, 2003, yet another complaint with this court based upon the same series of events that transpired in Steamboat Springs that are described in this case, *Sieverdings v. Coldwell Banker et al.,* # 03-N-1949. Once again, plaintiffs' minor children are named as parties, although the Complaint has been filed *pro se,* and the children are not represented by counsel.

On its face, this new case is as frivolous as this present one. Plaintiffs allege in the most recent case

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

that the realtors who assisted them in the sale of their property were a part of "the conspiracy" that they describe in this present case, and because the realtors were a part of the conspiracy, they caused plaintiffs to sell their property for less than its value. Evidence of the conspiracy, according to Ms. Sieverding, is presented by the fact that the accused realtors were members of the Steamboat Arts Council along with other co-conspirators, and the realtors were "in the same social network as Mr. and Mrs. Randy Klauzer." Plaintiffs' Complaint at ¶ ¶ 36 & 39.

Obviously, unless deterred through some significant measure, these plaintiffs will not stop. This chain of law suits and voluminous pleadings needs to have a wooden stake driven through its heart.

The Sieverdings operate their own business, and they have stated that they are able to afford their own attorney-if they could find one who would take their case. In light of these facts, a small monetary sanction is inadequate to act as a deterrent. Because of the burdens that the Sieverdings have imposed upon defendants and the court, a small monetary sanction would diminish the seriousness of plaintiffs' conduct.

The file in this case reflects the gross nature of the plaintiffs' "litigation abuse," and the need for compensation to be paid to defendants, the primary victims of plaintiffs' litigation abuse. Until I entered an order that stopped plaintiffs from filing additional motions or pleadings, the court and opposing counsel were literally inundated with paper from plaintiffs. All of plaintiffs' motions to the court were so frivolous or nonsensical that responses from defendants were unnecessary. However, even though defendants may not have faced the need to respond to frivolous motions, the file reflects several pleas from defendants for an order that would stop Kay Sieverding both from flooding them with e-mails and letters, and from attempting to contact them by telephone-virtually on a daily basis.

Initially, I entered an order on June 4, 2003, in which I "suspended" the meet-and-confer requirements of Local Rule 7.1A, advising the parties, but primarily Ms. Sieverding, that during the period that the dispositive motions were under advisement the parties should have no need to meet and confer about any matter associated with this case. Ultimately, however, I was compelled to issue an order on July 31, 2003, in which I enjoined plaintiffs from the filing of any further pleadings, and enjoined plaintiffs from any further contact of any kind with opposing

counsel or parties, until after the dispositive motions were resolved. My effort was only partially successful, as I received letters from two different lawyers complaining that Ms. Sieverding persisted in her efforts to contact their offices.

**\*32** Of course, any effort by any counsel for a defendant, including the taking of a phone call or the review of an e-mail, creates a financial burden that must be passed along by counsel to the respective client. Ms. Sieverding acknowledged the existence of this burden upon defendants in one of her pleadings where she remarked that she could press this case as persistently as she wished, because she was doing it on her own, and had no concerns for the payment of attorney fees. *See,* Order of July 31, 2003, at 3.

This case has represented a huge drain on the court and its resources. The numerous filings by plaintiffs must be processed by the clerical staff for the court, and because of the bizarre titles plaintiffs appended to their motions the clerks are confronted with the sometimes impossible task of deciphering exactly what it is they are logging in for plaintiff. Although I instructed plaintiffs in several orders to copy the form and style of the pleadings that were being filed at that time by Mr. Brougham on behalf of the City-County defendants, plaintiffs ignored my instructions and continued to file motions in an awkward format, with titles that made no sense.

I personally have been caused to address and resolve some 25 or 30 motions from plaintiffs. As I noted above, most of the motions were frivolous, even silly, and could be resolved with relatively brief orders. However, though frivolous and silly, the motions still needed to be read and given the appropriate consideration under *Haines v. Kerner.* Lengthy motions required lengthy periods of time to read and consider, and I have been compelled to issue orders that exceeded five and ten pages in length in an effort to address questions or problems raised by plaintiffs that no reasonable party would raise, or to address again questions or problems raised by plaintiffs that I had addressed in previous orders. Indeed, because plaintiffs have named 36 parties in this law suit, and have alleged hundreds of claims, all of which are frivolous, I have been compelled to write a Recommendation for Dismissal that is longer than this case deserves.

In the circumstances presented by this case, the amount of monetary sanction that is appropriate and necessary to deter plaintiffs from the future filings of cases that are related to the events that transpired in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 23
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

Steamboat Springs is the amount that defendants have incurred in legal fees and costs from and after the date that plaintiffs were formally warned, in open court, that their claims were baseless and frivolous, or January 30, 2003. Payment by plaintiffs to defendants of all legal fees and costs that have been incurred will serve to deter plaintiffs from future litigation abuse, punish them for their present litigation abuse, and will compensate the parties who have been the victims of their litigation abuse. _White v. General Motors Corp., Inc., 908 F.2d at 683_. By deterring plaintiffs from future filings, the court also seeks to secure its own interests, which are to protect the court staff from litigation abuse, and facilitate the management of the cases on its dockets. _Id._ Of course, at a later date the court will need to conduct a lodestar review in order to determine the reasonableness of the fees that are sought by each defendant. _Id._ at 685.

**\*33** Attorney fees have been expressly requested by the Klauzer defendants, the City-County defendants and James B.F. Oliphant. However, I recommend that plaintiffs be ordered to pay attorney fees and costs not only to the parties that have expressly requested them in their pleadings, but to all defendants, whether fees and costs were requested or not. The litigation abuse by plaintiff is too widespread and too serious to limit their exposure to sanctions only to those defendants who have requested them. Any such limitation would not act to deter plaintiffs from future, similar filings.

Indeed, plaintiffs' _copy costs_ for their history of filings probably exceed the amount of any sanctions that may be imposed by this court. They have tendered for filing to this court over 1000 pages of complaints and amended complaints, and their responses just to the motions to dismiss exceed 400 pages-including 128 pages and 66 pages for plaintiffs' responses to the motions to dismiss filed by the Bar Associations, parties for which the absence of any legitimate claim is so clear that no rational person could possibly argue to the contrary. Add to these numbers the numerous so-called motions that plaintiffs have filed, multiply by the number of defendants to be served with copies, and plaintiffs can be seen to have spent thousands of dollars simply on copy and mailing costs. Obviously, a small sanction will mean little to these people.

If a party wishes to obtain sanctions pursuant to Rule 11, they are required to first provide to the offending party a "safe harbor" period of 21 days. Fed.R.Civ.P. 11(c)(1)(A). The purpose of that "safe harbor" is to

provide an opportunity to the miscreant to withdraw the pleading that offends the provisions and purposes of Rule 11. However "the 'safe harbor' provision does not apply when a court imposes sanctions on its own initiative." _Laurino v. Tate, 220 F.3d 1213, 1219_ (10th Cir.2000), _citing Hutchinson v. Pfeil_, 108 F.3d 11809, 1184 (10th Cir.2000). A _sua sponte_ award of sanctions requires the issuance of a show cause order, with reasonable opportunity to respond. Fed.R.Civ.P. 11(c)(1)(B) ; _Laurino, 220 F.3d at 1219_.

My order of January 10, 2003, and my status conference of January 30, 2003, stood as clear notice to plaintiffs of the probability that sanctions would be imposed against them if they failed or refused to withdraw the claims that the court or counsel indicated were frivolous or groundless, such as the claims against the lawyers who represented persons other than plaintiffs, and the Bar Associations. In light of the clear notice that has been presented to plaintiffs, the court has discretion to impose any sanction that is warranted, so long as the limit of the sanction is "that amount reasonably necessary to deter the wrongdoer." _White v. General Motors Corp., Inc., 908 F.2d at 685_.

Payment of fees alone is not a sufficient deterrent in this case. The determination manifested by plaintiffs in their pursuit of this case reflects that even the requirement that they be made to pay fees and costs to all defendants may not deter them from filing future cases. As mentioned above, on October 3, 2003, plaintiffs filed another patently frivolous complaint that has its roots and origin in the same events in Steamboat Springs that have given rise to this present case. As I have noted throughout this recommendation, these types of actions by plaintiffs are being taken in the face of prior dismissals "with prejudice" by another judge in another district, and in the face of explicit advice and warnings by a judicial officer for this district that their claims in regard to activities in Steamboat Springs are baseless. Thus, I recommend, in addition to the imposition of the above monetary sanction, that the court issue an injunction that prevents plaintiffs from filing any other cases in this court that relate to any of the series of events that occurred in Steamboat Springs, and that form the basis and backdrop for this case, unless plaintiffs are represented by counsel.

**\*34** The requirement that they must be represented by counsel in order to file a complaint is a reasonable one, and ensures that any complaints that are filed have first been reviewed by an attorney, and certified by that person to be a complaint that has a basis in

Not Reported in F.Supp.2d                                                        Page 24
Not Reported in F.Supp.2d, 2003 WL 22400218
**(Cite as: Not Reported in F.Supp.2d)**

fact and in law. Plaintiffs' objection that no lawyer will represent them because "they are suing lawyers" is so absurd as to be not worthy of any further discussion.

### XIII. CONCLUSION

#### A

I reiterate again here the RECOMMENDATION that I submitted on May 14, 2003, and I RECOMMEND that the two minor children, Ed and Tom Sieverding, be DISMISSED as parties from this suit.

#### B

For the reasons stated in this Recommendation, I RECOMMEND that the following motions to dismiss be GRANTED, and that this case be DISMISSED WITH PREJUDICE:

1. Defendants Randall Klauzer, James "Sandy" Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC, and Jane Bennett's Motion to Dismiss [filed May 1, 2003];

2. Motion to Dismiss and/or Motion for Summary Judgment [filed May 1, 2003, by public officials (City and County), David Brougham, and Hall & Evans, LLC], including the request for attorney fees and costs as a sanction for frivolous litigation;

3. Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [filed April 29, 2003, by James B.F. Oliphant];

4. Defendant American Bar Association's Motion Pursuant to Fed.R.Civ.P. 12(b)(6) to Dismiss Plaintiffs' Complaint With Prejudice [filed May 19, 2003];

5. Defendant Colorado Bar Association's Motion to Dismiss Plaintiff's [sic] Complaint [filed May 1, 2003]; and

6. Motion to Dismiss All Claims Against New spaper Defendants [filed May 14, 2003].

#### C

I ALSO RECOMMEND that the following motions for sanctions be GRANTED:

2. Defendants Randall Klauzer, James "Sandy" Horner, J. Richard Tremaine, Klauzer & Tremaine, LLC and Jane Bennett's Motion for Rule 11 Sanctions [filed May 9, 2003]; and

5. Motion for Sanctions Pursuant to F.R.C.P. 11 [filed April 29, 2003, by James B.F. Oliphant].

#### D

I ALSO RECOMMEND that plaintiffs, meaning David and Kay Sieverding only, be ordered as a sanction to pay the attorney fees and costs that have been incurred by all of the defendants, whether requested or not, from and after the date of January 30, 2003, and that the matter be referred back to me for a determination of the reasonableness of any fees that are sought.

#### E

Finally, in order to prevent further abusive litigation by plaintiffs, I RECOMMEND that they be enjoined from filing any further lawsuits that relate to any of the series of events that occurred in Steamboat Springs, or that form the basis and backdrop for this case, unless plaintiffs are represented by counsel.

### ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz,* 447 U.S. 667, 676-83, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ; 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 25
Not Reported in F.Supp.2d, 2003 WL 22400218
(Cite as: Not Reported in F.Supp.2d)

District Court. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991) ; *Niehaus v. Kansas Bar Ass'n,* 793 F.2d 1159, 1164 (10th Cir.1986).

### Certificate of Service

**\*35** The undersigned certifies that a copy of the foregoing was delivered on this day of October 15, 2003, by:

(X) delivery to:

Judge Richard P. Matsch

David Brougham

Hall and Evans

DC Box 05

( ) e-mail to:

( ) facsimile to:

(X) depositing same in the United States mail postage prepaid, addressed to:

Kay Sieverding

David Sieverding

Ed Sieverding

Tom Sieverding

641 Basswood Ave.

Verona, WI 53593

Michael T. McConnell

Traci L. Van Pelt

Meghan E. Pound

2401 15th Street, Suite 300

Denver, CO 80202

Thomas B. Kelley

Christopher P. Beall

Eileen Kiernan-Johnson

Faegre & Benson, LLP

3200 Wells Fargo Center

1700 Lincoln Street

Denver, CO 80203

D.Colo.,2003.
Sieverding v. Colorado Bar Ass'n
Not Reported in F.Supp.2d, 2003 WL 22400218

Briefs and Other Related Documents (Back to top)

• 1:02CV01950 (Docket) (Oct. 11, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.