# THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA

Sieverding , et al

                   *Plaintifsf,*           Case No. 1:05CV01283

         v                          (RMU)

American Bar Association, et al

                  *Defendants.*

## PLAINTIFFS' AMMENDMENT TO CONSOLIDATED OBJECTION TO DEFENDANTS' THREE MOTIONS TO DISMISS

The US Government's note to the Federal Rules of Civil Procedure justify the jurisdiction of the District of Columbia Court. Please see attachment. Under Rule 60(B), it says specifically; "This rule does not limit the power of a court to entertain an independent action to relieve a party from judgment"

In the notes of the Advisory Committee on 1946 Amendments to Rules, Subdivision (b), Paragraph 2, Sentence 4, it says; "The other procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment." Then on Paragraph 7, Sentence 5 it says; "On the other hand, it has been suggested that in view of the fact that fraud was omitted from original Rule 60(b) as a ground for relief, an independent action was the only proper remedy."

The right to sue pro se is guaranteed by Federal Statute 28 USC 1654.

1

Verification: The plaintiffs hereby declare under penalty of perjury that to the best of their knowledge and belief everything included in this document, and all other documents filed with this and all other courts is true and correct.

*Kay Sieverding*

Kay Sieverding 09-20-05


Ed Sieverding 09-20-05


Tom Sieverding 09-20-05

*[signature]*

Service by ECF

Attachments

1) Letter to Judge Nottingham from ABA Counsel, Pat Larson, asking him to suspend Rule 56 Summary Judgment process.

2) Bill from Luttunich & Vanderbloemen received after appeal was filed in Tenth Circuit showing that Judge Schlatter had told the attorneys, ex parte, that it was not necessary to reply to plaintiff motions, including for Partial Summary Judgment, thus, in effect, suspending Rule 56 and the Summary Judgment process. Thus, the court had secretly complied with Pat Larson's request.

3) Rule 60 and notes on Rule 60 from Cornell web site. Sentences quoted are underlined.

4) Letter from Attorney Bill Hibbard indicating that original complaint was not incomprehensible.

2

5) Defamatory articles from Steamboat Pilot website. Downloaded 09-22-05

6) Annotated copy of ABA response

7) Objection to the court's incarceration of plaintiff Kay Sieverding and to reverse the court's finding that Kay Sieverding is in contempt of court.

*Service by ECF*

*[handwritten: presented under penalty of perjury + not disputed]*

*[handwritten: Exhibit 1 Annotated ABA boycotted Motion]*

*[handwritten right margin: No example cited nor request for more definite statement]*

## INTRODUCTION

Plaintiffs' action in this Court is the most recent iteration of an interminable series of

court actions that they have filed based on a single set of alleged incidents beginning in 1991

*[handwritten: litigation of 02-1950 is new set of facts]*

concerning a property dispute between themselves and their neighbors, City (Steamboat Springs,

Colorado), and County (Routt County, Colorado). Like the complaints filed in their other

*[handwritten: OK under F.R.C.P.]*

actions, the 85-page Complaint in this action ("Complaint") is prolix, rambling, and incoherent.

*[handwritten: their opinion]*

*[handwritten: ABA part of 2nd set]*

It does not allege any claims whatsoever against the ABA. Rather, the general thrust of the

Complaint criticizes and seeks relief from two previous judgments against Plaintiffs: the first is

a Colorado state court judgment in *Bennett v. Sieverding*, 00cv008, enjoining Plaintiff Kay

Sieverding from coming within 30 feet of her neighbor, Defendant Jane Bennett; the second is a

judgment of the United States District Court for the District of Colorado ("Colorado District

Court") dismissing Plaintiffs' action in *Sieverding v. Colorado Bar Association*, No. Civ. A. 02-

M-1959, and barring them from filing further actions that relate to any of the events in their

*[handwritten: based on]*

complaint unless they are represented by counsel. *See* 2003 WL 22400218 (D. Col. Oct. 14,

2003) (Magistrate Judge Schlatter's recommendation of dismissal and enjoining further pro se

filings was adopted by the District Court on March 19, 2004), *aff'd* 126 Fed. Appx. 457 (10th

Cir. 2005). Copies of these federal court decisions and orders are attached, respectively, as ABA

Exhibits 1–3. *[handwritten: Also want to enjoin defamatory articles]*

The Complaint should be dismissed as against the ABA because relief from the

judgments is barred in this Court. Relief from the state court judgment is barred under the

*Rooker-Feldman* doctrine, because the claim seeks appellate review by this Court of a Colorado

*[handwritten: Meets Exceptions outlined in Moores]*

state court judgment. Relief from the Colorado District Court judgment is barred by the doctrine *[handwritten: NO]*

*[handwritten: Not a decision on merits]*

of res judicata. Plaintiffs' criticism or challenge of the Magistrate Judge's recommendations was

to the District Court—which they lost—and further challenge of the District Court's dismissal

*[handwritten: Because Defense Interferred with presentation of facts]*

*[handwritten: 83]*

*EX PARTE Collusion*

*10th didn't understand didn't read Reply, Procedure not considered*

and injunction was to the Tenth Circuit—which Plaintiffs also lost. Plaintiffs did not seek a

petition for certiorari to the U.S. Supreme Court and therefore, the matter is now ended between

Plaintiffs and the ABA. Plaintiffs cannot seek further review or relief from that judgment in this

Court. Plaintiffs' asserted procedural hook in bringing this action—Rule 60(b)(3) of the Federal

Rules of Civil Procedure—does not offer any basis for review of that judgment by this Court.

See Complaint at 2, 26 (¶ 39). *60(B)(3) Offers relief According to American Jurisprudence + STANDARD Oil v USC (USC's 1967) AWARD*

In addition to the above grounds, the Complaint should be dismissed against the ABA

*USC Said in Swieskiewz v Sorema Complaint*

because it violates Rule 8(a) of the Federal Rules of Civil Procedure: the Complaint fails to

*CANNOT BE DISmissed on BASIS of Rule 8*

contain "a short and plain statement of the claim showing that the pleader is entitled to relief"

against the ABA. Fed. R. Civ. P. 8(a)(2). The Complaint further should be dismissed because it

*COMPLAINT SEEKS Relief from $10,000 to ABA +*

fails to state a claim against the ABA upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

*res judicata of 02-CV-1950*

As noted, the Complaint does not allege any claims against the ABA, but is limited to

challenging the two judgments. Finally, the Complaint should be dismissed for improper venue

under Rule 12(b)(3). The proper venue for this action under 28 U.S.C. § 1391(b) is the District

of Colorado, not the District of Columbia. *Interstate Litigation Directed in Washington + London*

Finally, the ABA brings to the Court's attention that on Friday, September 2, 2005 the

Colorado District Court held Plaintiff Kay Sieverding in civil contempt for violating that court's

injunction against further pro se filings by Plaintiffs related to this matter and refusing to

withdraw this and other actions filed after the Colorado District Court judgment was issued.

Ms. Sieverding was remanded to the custody of the U.S. Marshal and remains incarcerated

pending her voluntary dismissal of the remaining actions. See Courtroom Minutes of September

2, 2005 hearing, attached as ABA Exhibit 4. *This Litigation challenges the Injunction. JAiling at defendent's request shows BAD FAITH. JAil As threat shows withdrawal not voluntary. Why is ABA sending people to jail for litigating without*

2

## RELEVANT FACT BACKGROUND

**I.    The Colorado State And Federal Court Actions**

The background to this case is amply discussed in Magistrate Judge Schlatter's October 14, 2003 opinion and recommendations and need not be repeated here at length. *Sieverding,* 2003 WL 22400218 at *1–6. MAG Schlatters' opinion miss RATED FACTS + LAWS,

Briefly, Plaintiffs became embroiled in a property dispute with their next-door neighbors, complaining to city officials that the neighbors' construction activities allegedly violated the city zoning laws. Tensions mounted between Plaintiffs and their neighbors and the neighbors obtained a restraining order prohibiting Plaintiff Kay Sieverding from coming within 30 feet of Defendant Jane Bennett. *Id.* at *1. It is this restraining order that Plaintiffs identify as "The 00-cv-008 Bennett v. Sieverding injunction" on page 11 of the instant Complaint and which Plaintiffs challenge here. *See* Complaint at 2, 7–26 (¶¶ 1–38). Ms. Sieverding complained to City and County officials about the construction and neighbors' lawsuits but concluded that no action would be taken against the neighbors because Defendant Bennett's husband was a city politician. Subsequently, the deputy district attorneys for the county initiated prosecutions against Ms. Sieverding. *Sieverding,* 2003 WL 22400218 at *1.

Ms. Sieverding then brought several federal court actions, including in the Colorado District Court. In that action, she sued, among others, the Bennetts, the City and County, City and County officials, attorneys representing the defendants, and the Colorado and American Bar Associations. Plaintiffs' complaint ("Colorado Complaint") included claims under 42 U.S.C. § 1983 for civil conspiracy, fraud, libel, and various torts. 2003 WL 22400218 at *3–6. The claims against the ABA essentially alleged that (i) the Sieverdings could not obtain counsel to represent them in the plethora of state and federal actions they filed or that were filed against them, (ii) the ABA owed Plaintiffs a duty to assist them in finding representation, and (iii) the

FAlse STATEMENT — Never Said that

3

ABA discouraged attorneys from assisting litigants with actions against other attorneys, downplayed attorney misconduct, and pretended that tort actions against attorneys were impossible. *Id.* at *5, * 20.[1] *This was a causal factor of Steamboat Events*

The Magistrate Judge assigned to the case recommended that these claims, and the Colorado Complaint as a whole, be dismissed with prejudice and that the Plaintiffs be enjoined from filing further actions related to the events in their complaint unless represented by counsel. *Id.* at *8, *34. The court specifically held that the ABA did not "owe[] any legal duty whatsoever to plaintiffs" and the claims against the ABA were "downright absurd" and "foolish and frivolous." *Id.* at *18–19, *20. Magistrate Judge Schlatter's recommendations were adopted in full by the District Court and judgment was entered accordingly. *See* District Court Order dated March 19, 2004, attached as ABA Exhibit 2. The Tenth Circuit affirmed on appeal. 126 Fed. Appx. 457 (10th Cir. 2005). *Judge Nottingham's + 10th Circuit orders did not discuss facts nor the ABA's duty*

---

[1] The Colorado Complaint, attached as ABA Exhibit 5, specifically alleged the following claims against the ABA:

(a) Claim of Deceit/Fraud on the ABA for claiming that the American attorney services industry is self regulating, down playing problems with attorney misconduct, and pretending that tort actions against attorneys for attorney fraud, abuse of process, defamation, and other intentional torts performed by an attorney in the course of business are somehow impossible;

(b) Claims of Reckless Negligence, Nonfeasance, Malfeasance and Misfeasance and Damages under [42 U.S.C. §§] 1981 and 1985(3) for Tortious Interference on the ABA for their actions and omissions interfering with the Sieverding family's right and ability to sue the lawyer defendants with the assistance of an attorney and for interfering with Sieverdings' right and ability to sue by their actions and omissions discouraging attorneys from assisting litigants with actions against attorneys for damages of the types experienced by the plaintiffs;

(c) Claims of Nonfeasance, Misfeasance, Reckless Negligence and Breach of Implied Duty for Good Faith Performance on the ABA for not implementing even inexpensive attorney misconduct surveillance and help tools for non-client attorney victims thereby creating a dangerous situation for the Sieverding family; and

(d) Claims of Nonfeasance, Reckless Negligence, Civil Conspiracy and Breach of Implied Duty for Good Faith Performance on the ABA for failure to establish standards to be used as a basis for civil action against attorneys who commit intentional or negligent torts in the course of business and its failure to establish model bar association management standards adequate to deter the CBA from the actions and omissions described herein.

*See* ABA Exhibit 5 at 31.

4

*[handwritten: WAS not spontaneous because Chris Beall said he talked to the court about it]*

Plaintiffs disregarded the Colorado District Court's injunction and filed actions naming the ABA as a defendant concerning the events in their complaint in the United States District Court for the Northern District of Illinois and this Court.[2] The action in the Northern District of Illinois was dismissed sua sponte by the District Court on July 22, 2005. *See* Statement dismissing action, attached as ABA Exhibit 6. As noted, Plaintiff Kay Sieverding's refusal to withdraw the remaining actions led to her being held in civil contempt by the Colorado District Court during a hearing on September 2 and incarcerated until she voluntarily withdraws the *[handwritten: impossible]* remaining cases. Although Plaintiff David Sieverding promised at the end of the hearing to withdraw from the cases by September 9, he has informed counsel that he will not do so. ABA Exhibit 4, at 3; email from David Sieverding to counsel dated September 6, 2005, attached as ABA Exhibit 7. *[handwritten: He wants to rejoin if not threat of jail]*

## II.    The Complaint In This Action

*[handwritten: Defendants including ABA benefit from disputed orders]*

Plaintiffs Complaint does not allege any claims against the ABA—or any other defendant for that matter. Even when construed with the relaxed pleading standard afforded to a pro se plaintiff, the Complaint limits itself to criticizing the judgment of the Colorado state court in *Bennett v. Sieverding*, Complaint at 2, 7-26 (¶¶ 1–38), and the judgment of the Colorado District Court in *Sieverding v. CBA*, Complaint at 2, 26–70 (¶¶ 39–137). The Complaint seeks relief under Rule 60(b)(3) of the Federal Rules of Civil Procedure from the two judgments, as well as an injunction under Rule 65 of the Federal Rules of Civil Procedure from publishing the decisions and injunctions contained in the two judgments. Complaint at 76–77 (¶ 154). The Complaint then asks the "U.S. Judicial Council to clarify the rules" in a number of situations

---

[2] Plaintiffs also filed actions in which the ABA was not named as a defendant but that concerned the same events in the U.S. District Court for the Western District of Wisconsin, the U.S. District Court for the District of Minnesota, and in a Colorado state court.

allegedly faced by Plaintiffs, through a series of questions that suggest the rendering of advisory opinions. Complaint at 78–85 (¶ 155).

*Not Frivolous nor whimsical*

The almost whimsical nature of the Complaint as against the ABA is encapsulated in Plaintiffs' reasoning behind the addition of the ABA to their ever growing list of defendants: "[a]fter studying the Supreme Court database on-line for several months and considering the legal significance of the Rules of Professional Conduct, in August 2002, Sieverding had a flash of inspiration to add the American Bar Association and the Colorado Bar Association as co-defendants." Complaint at 4. The only thing that can be said about Plaintiffs "flash of inspiration" is that it further blinded them to the patently frivolous nature of their complaints.

The sparse allegations in the Complaint concerning the ABA occur during the course of criticizing the Colorado District Court judgment, where Plaintiffs make a series of comments and criticisms directed at the motions filed by the ABA in the Colorado action. The following are representative examples:

(a)     Plaintiffs state that the "ABA filed something they called a 'motion to dismiss with prejudice.' If plaintiffs had filed an inadequate complaint against the ABA, they could have potentially remedied it, if told how it was inadequate. In fact, Family filed very specific allegations tracing acts and omissions of the ABA to acts and omissions of various lawyers in Steamboat [Springs]". Complaint at 40 (¶ 74).

*Important Not Considered By court*

(b)     Plaintiffs "thought, and think, the ABA's motion to dismiss is completely ineffective legally…The U.S. government, President Clinton, Attorney General Mitchell, and the Catholic Church had to answer, why shouldn't the ABA?…It is not plaintiffs fault that the ABA filed such a stupid answer." Complaint at 41 (¶¶ 75–76).

(c)     "Plaintiffs were assertive in their motions for summary judgment that they expected an answer to their summary judgment motions in the 20-day period. So the ABA filed a so called 'letter motion in lieu of a formal motion' asking that the process be stayed until the case was dismissed…This violated the rules of civil procedure, the rules of professional conduct, litigation conduct standards…" Complaint at 42 (¶ 78).

*Caused summary judgment procedure not to be available in case for any defendant*

6

*Relief against ABA requested — Not Frivolous*

Based on Plaintiffs utter failure to state any claims against the ABA in the Complaint, and because Plaintiffs failed to voluntarily withdraw their patently frivolous action before this Court as ordered by the Colorado District Court, the ABA is forced to file the present Motion.

## ARGUMENT

I.    **The Complaint Should Be Dismissed Against The ABA Under The Doctrine Of Res Judicata**

The Complaint in this case as against the ABA simply is a rambling criticism of the motions filed by the ABA in the Colorado District Court action. *See* Complaint at 40-43. As such, Plaintiffs' Complaint amounts to little more than a collateral attack on the judgment of the Colorado District Court. Plaintiffs fully participated in the Colorado District Court proceedings, *Prevented from consideration on merits* had their day in Court, and lost with respect to their claims against the ABA and other defendants. The District Court had jurisdiction to hear the case and, as noted, it adopted the Magistrate Judge's recommendations to dismiss the action and enjoin Plaintiffs from further pro se filings related to their complaint. The District Court's judgment, in turn, was affirmed on appeal by the Tenth Circuit. Plaintiffs elected not to petition the Supreme Court for certiorari, thereby closing off any legitimate remaining routes for review. *Rule 60 (B) 3 offers alternate evidentiary review*

Therefore, as between Plaintiffs and the parties to the Colorado District Court action, including the ABA, the matter is res judicata and Plaintiffs cannot use this Court as a surrogate appeals court to collaterally review the Colorado District Court's judgment—including the *BASED ON SAME SERIES OF EVENTS* injunction against Plaintiffs filing further pro se actions. *See Columbia Plaza Corporation v. Security National Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975) ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided"); *Food Fair Stores v. Square Deal Market Company*, 187 F.2d 219, 220 (D.C. Cir. 1951) (finding injunction to prevent

7

*[handwritten: different cause of Action]*

adjudication of same cause of action in two different Federal courts proper); *Mikkilineni v. Penn*

*Nat'l Mut. Ins. Co.*, 271 F. Supp. 2d 142, 149 (D.D.C. 2003) (banning Plaintiff from filing

additional complaints without leave of the Court); Fed. R. Civ. P. 41(b) (permitting dismissal of

*[handwritten: Only if VALID order under Rule 65]*

an action for violation of a court order); *see also Mullis v. U.S. Bankruptcy Court for Dist. of*

*Nevada*, 828 F.2d 1385, 1392-1393 (9th Cir. 1987) (discussing the impropriety of "collateral

attacks on the judgments, orders, decrees or decisions of federal courts" because to allow such a

course of action would "permit, in effect, a 'horizontal appeal' from one district court to

another"). *[handwritten: 60 (B)(3) is by right when conditions as alleged exist]*

The doctrine of res judicata prevents repetitive litigation involving the same causes of

action or the same issues. *See I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944,

946 (D.C. Cir. 1983). "[A] final judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have been raised in that action." *Drake v.*

*FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

*[handwritten: STATED recognized CLAIMS on timely BASIS]*

Dismissals for failure to state a claim are considered final judgments on the merits for purposes

of res judicata. *Polsby v. Thompson*, 201 F. Supp. 2d 45, 49 (D.D.C. 2002). As between the

ABA and Plaintiffs, the parties and issues are the same in the Colorado District Court action and

this action. *[handwritten: Only when decision on the merits + plaintiffs given full FFAIr opportunity to present]*

Even if a claim of some kind against the ABA were made in the present Complaint

*[handwritten: New CAUSE is 02-1950 Litigation Conduct]*

through criticism of the ABA's motions in the Colorado action, it would be grounded in exactly

the same alleged behavior that was raised or would have been raised, and dismissed with

prejudice, in the earlier Colorado action, i.e., the ABA's alleged duty to Plaintiffs and its failure

to allow attorneys to represent Plaintiffs. In addition, even if some new legal argument or theory

can be discerned in Plaintiffs' Complaint, it must still be barred by res judicata because it would

*[handwritten: ABA situation not litigated Because Summary judgment procedure Suspended]*

*See* STANDARD out of CA RULES. USC 1997

be based exclusively on the same facts that underlie Plaintiffs' action in the Colorado District

Court. *See Apotex, Inc. v. Fed. Drug Admin.*, 393 F.3d 210, 218-19 (D.C. Cir. 2004) (stating that

legal arguments based on the same facts as a previously-adjudicated claim are barred by res

judicata). Behavior of comsel FActs + Billing STATEMENTS Adequate For New Hearing See USC

The Plaintiffs make it explicitly clear that the present Complaint stems from the same

Stems from litigation conduct

series of events described in their Colorado Complaint. The Colorado Complaint describes

everything from the Plaintiffs' neighbors' building activities to the various uses of Plaintiffs'

driveway by third parties, to their alleged prosecution and persecution by City and County

officials, to the alleged duty and liability of the ABA in tort. *See* Colorado Complaint (ABA

Exhibit 5) at ¶¶ 1–59, 77–203, 248–71, 383, 390, 418. In the present action, Plaintiffs admit that,

as in the Colorado action, "[t]he original primary events happened within a space of blocks and

included face-to-face interaction involving all four members of the Sieverding Family," and then

go on to recite the same operative facts, including the Plaintiffs' neighbors' building activities

and their alleged persecution by City and County officials. Complaint at 4–22. With respect to

Very specific claims made About ABA

the ABA, the Plaintiffs criticize the ABA's motions in the Colorado action and nebulously

ABA claims to be discusses In 05-CV-1687

suggest in a conclusory manner that the ABA has a duty to Plaintiffs regarding attorney

where fully presented

misconduct. Complaint at 5, 28 (¶ 46), 30–31 (¶ 54). Clearly, Plaintiffs' action stems from the

NOT FAIR NOT ON MERITS

exact same facts and allegations against the ABA as the previously adjudicated claims in the

Colorado District Court action. This is presented in 05-CV-01687

Moreover, Rule 60(b)(3) does not provide a basis for bringing this Complaint in this

INDEPENDANT Action Allowed

Court. Complaint at 2, 26 (¶ 139), 76 (¶ 154). Rule 60(b)(3) may only be invoked on a motion,

and the "motion for relief from final judgment must be filed in the district court and in the action

in which the original judgment was entered." *Bankers Mortgage Co. v. United States*, 423 F.2d

According to American Jurisprudence it CAN BE Brought in nonrendering Court

9

*[handwritten:] The Rules do not restrict 60(B)(3) to the rendering court and the Rules ARE*

73, 78 (5th Cir. 1970). Any such motion, therefore, must have been brought within the time

*[handwritten:] Not supposed to be expanded by*

period allowed in the Colorado District Court, not here.

*[handwritten:] CASE LAW only By Formal Process. De affirmed*

**II.    Plaintiffs' Complaint As Against The ABA Is Barred Under The *Rooker-Feldman*** *[handwritten: 60 B(3)]*
     **Doctrine** *[handwritten: ... in part]*

*[handwritten:] FAIRNESS + APA require independent forum,* *[handwritten: SYNANON church 1984]*

The ABA was not a party to the Colorado state court action Plaintiffs challenge.

Nonetheless, to the extent the Complaint seeks relief from that judgment in this Court, such relief

*[handwritten:] PLAINTIFFS MEET conditions*

is barred under the *Rooker-Feldman* doctrine. *[handwritten:] outlined in MOORES — Due Process, No IMPARTIAL ADJudicator, + No Alternative*

The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that

amount to the functional equivalent of an appeal from a state court. *See Dist. Of Columbia Court*

*[handwritten:] Not According to MOORES*

*of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923);

*Gray v. Poole*, 275 F.3d 1113 (D.C. Cir. 2002). Because 28 U.S.C. § 1257 requires that appeals

from state courts go exclusively to the Supreme Court, the *Rooker-Feldman* doctrine ensures that

the Supreme Court's appellate jurisdiction is exclusive. *See Stanton v. Dist. Of Columbia Court*

*of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997). *[handwritten:] See PLAINTIFFS Objection*

In the Complaint, Plaintiffs request "relief from low process civil judgment still

restricting liberty issued through 00cv008 Bennett v. Sieverding in Routt County Court,

Steamboat Springs, Colorado by County Judge James Garrecht." Complaint at 2. The *Rooker-*

*Feldman* doctrine applies to decisions of lower state courts as well as to the highest one. *See*

*Richardson v. Dist. Of Columbia Court of Appeals*, 83 F.3d 1513 (D.C. Cir. 1996) (citing *Port*

*Auth. PBA v. Port Auth. of N.Y. & N.J.*, 973 F.2d 169, 177 (3rd Cir. 1992). Plaintiffs' request

that this Court review the state court judgment falls squarely in the ambit of the *Rooker-Feldman*

line of cases. Thus, the Complaint should be dismissed as an improper attempt to use this Court

to act in an appellate capacity over the lower Colorado state court. *[handwritten:] Not According To Moores +*

*[handwritten:] Other Authorities in certain circumstances*

**III.    Plaintiffs' Complaint Fails To Meet The Requirements Of Fed. R. Civ. P. 8(a)(2)**

Rule 8(a)(2) requires that a complaint include "a *short* and *plain* statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  The

Court of Appeals for this Circuit has stated that the purpose of this rule is to "give the defendant

fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Atchinson v.*

*District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (citing *Conley v. Gibson*, 355 U.S. 41,

47 (1957)). *[handwritten: ABA should file motion for more definite statement. See USC]*

Plaintiffs fail to state *any* claims against the ABA.  Their 85-page Complaint is anything

*[handwritten: Swierkccz V Sorema  Rule 8 not]*

but simple and concise, and is thoroughly lacking in clarity and intelligibility.  The rambling

*[handwritten: Basis for development]*

nature of this pleading includes everything from statements about legal developments in

Indonesia and Bulgaria, to Plaintiffs' rights under the Magna Carta and skiing conditions in

*[handwritten: So what]*

Steamboat Springs, Colorado.  *See, e.g.*, Complaint at 4, 10 (¶¶ 7–8), 17 (¶ 20–21), 59 (¶ 116).

*[handwritten: Seek relief of Res Judicata +]*

Where no claims have been made and the ABA is consequently left uninformed of any claims

*[handwritten: $10,000 Awarded to ABA]*

against it, Plaintiffs have failed to satisfy the requirements of Rule 8(a)(2) and dismissal is

warranted because "the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."  *Conley*, 355 U.S. at 45-46; *see also Brooks-Miller v. England*, 357 F.

Supp. 2d 197, 202 (D.D.C. 2004) (dismissing complaint with prejudice partly under Rule 8(a)

because the "plaintiff's apparent confusion with regard to the factual or legal basis for

her…claim undoubtedly leaves the [defendant] unable to determine the theory upon which the

plaintiff seeks relief, and unable to mount an appropriate defense").

**IV.    Plaintiffs' Complaint As Against The ABA Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted**

Assuming, arguendo, that Plaintiffs' Complaint against the ABA is not barred by res

judicata and is not subject to dismissal under Fed. R. Civ. P. 8(a)(2), the Complaint should still

be dismissed with prejudice for failure to state a claim against the ABA upon which relief can be

*[handwritten: AgAiN , $10,000 + Res Judicata]*

granted. As discussed above, there simply are no claims against the ABA in the Complaint.

Although Plaintiffs' allegations are assumed to be true for the purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), dismissal is appropriate when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Certainly, the ABA recognizes that "pleadings filed by pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers." *Magee v. Hatch*, 26 F. Supp. 2d 153, 155 (D.D.C. 1998). However, even claims that are brought pro se may be deemed frivolous if wholly unsupported by law or facts. *See Crisafi v. Holland*, 655 F.2d 1305 (D.C. Cir. 1981); *Deutsch v. U.S. Dep't of Justice*, 881 F. Supp. 49 (D.D.C. 1995).

*[handwritten: Supported by lAW + FActs - 60(B)(3) + Evidence OF Ex PARtE CONTACt]*

In *Deutsch*, for example, the court found that the plaintiff's in forma pauperis action was frivolous because his RICO and Sherman Act claims were "wholly unsupported by any argument or facts to support such claims.... Accordingly, because the assertion of RICO and the Sherman Act is entirely without merit, any and all claims thereunder will be dismissed as 'frivolous' within the meaning of § 1915." *Id.*, at 54.

Moreover, this Court also has employed "injunctive remedies when needed to protect the integrity of the courts and the orderly and expeditious administration of justice." *Mikkilineni v. Penn Nat'l Mut. Ins. Co.*, 271 F. Supp. 2d 142 (D.D.C. 2003) (citing *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985)). In *Mikkilineni*, the pro se plaintiff's behavior bore more than a passing resemblance to the Plaintiffs' in the present case:

*[handwritten: only one Set under consideration]*

> Having reviewed many of the plaintiff's cases and numerous orders sanctioning the plaintiff and dismissing his actions, the court determines that the plaintiff re-files complaints and motions—regardless of laws and court orders prohibiting such behavior, even when the orders threaten

fines or imprisonment—whenever he is not satisfied with court orders, thereby harassing the defendants and abusing the judicial system....Similarly, the court finds that the plaintiff has demonstrated complete and blatant disregard for court orders...The court also finds that not only do the plaintiff's attempts to circumvent court orders and sanctions show contempt for the justice system, but they also harass the defendants by forcing the defendants to spend resources litigating previously-resolved claims.

*[handwritten: Plaintiff Did Proper Research, Order Challenged under Rule 65]*

*Id.*, at 148–49. The court in *Mikkilineni* then barred the plaintiff from filing additional complaints without leave of the court. *Id.*

Under these standards, the Complaint must be dismissed because no claim can be construed as against the ABA that might be supported consistent with the Plaintiffs' allegations.

Plaintiffs have not claimed that the ABA has done anything other than respond to Plaintiffs' complaint in the Colorado action in a manner that displeased the Plaintiffs, nor can they establish any legal duty owed to them by the ABA. While some portions of the Complaint that mention the ABA discuss in a nebulous and conclusory manner the Plaintiffs' belief that "bars" owe them and the public some sort of "duty to care" based on the beliefs of "various legal scholars," Complaint at 5, 28 (¶ 47), none of these allegations establishes a duty of care owed by the ABA to Plaintiffs. As the Colorado court held, the ABA did not owe "any legal duty whatsoever to plaintiffs," and "Plaintiffs' claims that they were owed duties by the lawyers, law firms or the Bar Associations are beyond frivolous. Their claims are downright absurd." *Sieverding*, 2003 WL 22400218 at *19, *20.

*[handwritten: Letter Asking to Suspend Rule 56 + relay messages thru Clerk illegal + controlled case]*

*[handwritten: See 05-CV-01687]*

Indeed, Plaintiffs' statement that "[a]ll the bars have to do to limit their liability is to apply for a license and offer public....[m]ost states already license state bars," *id.* at 30-31, shows that the Plaintiffs have mistakenly conflated the various state bars with the ABA in believing that the ABA is somehow empowered to set enforceable standards for attorney conduct. Contrary to Plaintiffs' allegations, only the highest court of a state has the power to

*[handwritten: ABA could put on web site that should sue lawyers + advocate more regulation]*

13

*[handwritten: Then why does ABA claim D. of Col CAN Adjudicate plaintiffs' litigation in D.C.?]*

promulgate standards, regulate attorney conduct, and adjudicate attorney discipline matters concerning attorneys who are licensed to practice in any given state. Concerning the allegations in Plaintiffs' Complaint, that state would be Colorado. *See e.g., Colorado Supreme Court Grievance Committee et al. v. District Court, City and County of Denver, Colorado, et al.*, 850 P.2d 150, 152 (Colo. 1993) (*en banc*) (holding that Colorado Supreme Court has exclusive jurisdiction over attorneys and authority to regulate, govern and supervise the practice of law in Colorado: "Pursuant to its inherent power to establish attorney disciplinary rules, the Colorado Supreme Court promulgated the Code of Professional Responsibility"); *On Petition to Amend Rule I of the Rules Governing the Bar*, 431 A.2d 521 (D.C. 1981) (the D.C. Court of Appeals makes the rules respecting the examination, qualification, admission, governance, and disciplining of attorneys in the District of Columbia); *Lewis v. District of Columbia Com. on Licensure to Practice the Healing Art*, 385 A.2d 1148, 1153 n.12 (D.C. 1978) ("it was the fact of adoption and promulgation by the appropriate court which made the Code [of Professional Responsibility promulgated by the ABA] binding authority on the legal profession rather than the fact of its promulgation by the American Bar Association"). *[handwritten: USC endorsed 60(B)(3) (as remedy for attorney misconduct]*

The ABA, in contrast, is a private voluntary national professional association. *See, e.g., Public Citizen v. United States Department of Justice, et al.*, 491 U.S. 440, 443 (1989). The ABA has no legal authority to impose or enforce standards of conduct on individual attorneys in any state or jurisdiction, or on the legal community generally. Although the ABA has promulgated its Model Rules of Professional Conduct as a guide for the legal profession, the ABA has no legal authority to mandate the adoption, use or enforcement of these or any other rules; rather, it is only the relevant state's highest appellate court that may adopt and enforce such rules. Accordingly, and even assuming, arguendo, that the ABA had engaged in the acts and

omissions that Plaintiffs assert in their Complaint—which the ABA denies—Plaintiffs cannot

establish a legal duty that might flow from the ABA to the Plaintiffs based on those alleged ABA

acts or omissions. *How does ABA know if doesn't Allow Full litigation?*

Thus, even were Plaintiffs to assert claims, they would be frivolous because there are no

claims that might be supported consistent with Plaintiffs' allegations. *See Deutsch*, 881 F. Supp.

at 52-53; *Anders v. California*, 386 U.S. 738, 744 (1967) (stating that an appeal on a matter of

law is frivolous where "[none] of the legal points [are] arguable on their merits"). Likewise, the

analysis in *Mikkilineni*, which directs a court to "look to both the number and content of the

filings to determine whether they are frivolous or harassing," supports the ABA's contention that

the present claims are patently frivolous and that the Colorado District Court's injunction against

further pro se filings should be respected. *Mikkilineni*, 271 F. Supp. 2d at 148. The Colorado

docket alone contains over 590 entries, and the present Complaint weighs in at 85 pages with

little to no structure or logical consistency. Given the prolific nature of Plaintiffs' writing and a

*Not on Merits*

prior decision on the merits holding "that none of the lawyer defendants or the Bar Associations

owed any legal duty whatsoever to plaintiffs, and that all of plaintiffs' claims in this regard were

foolish and frivolous," 2003 WL 22400218, at *20, the Plaintiffs' Complaint falls squarely

within the parameters of a frivolous and harassing filing as defined by this Court.

## V.    Venue Is Improper Under Fed. R. Civ. P. 12(B)(3)

Plaintiffs allege that jurisdiction is based on 42 U.S.C. § 1983. Complaint at 3.

Accordingly, the applicable venue statute is 28 U.S.C. § 1391(b). That statue provides:

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship
> may, except as otherwise provided by law, be brought only in (1) a judicial district
> where any defendant resides, if all defendants reside in the same state, (2) a judicial
> district in which a substantial part of the events or omissions giving rise to the claim
> occurred . . . or (3) a judicial district in which any defendant may be found, if there
> is no district in which the action may otherwise be brought.

*1 + 2, don't apply therefore 3 Applies*

*Maus Jr* [handwritten]

28 U.S.C. § 1391(b).

Most of the defendants in this action reside in Colorado, and the remaining parties reside

in Minnesota, Kansas, and Illinois. Therefore, subsection (1) of § 1391(b) is eliminated as a

basis for venue in the District of Columbia because not all of the defendants reside in the

*PLAINTIFFS have not lived in CO since 2001* [handwritten]

District. Subsection (2) likewise is inapplicable as a basis for venue in the District of Columbia,

*DEFAMATION comes FROM KANSAS,* [handwritten]

because all of the events discussed in the Complaint occurred in Colorado. Finally, subsection

*LitigATION conduct comes from Washington* [handwritten]

(3) is inapplicable as a basis for venue in the District of Columbia, given the action could

*+ London* [handwritten]

otherwise be brought in the District of Colorado under § 1391(b)(2). Thus, venue does not

properly lie in this District, and the action should be dismissed. *See Willhite v. Mainsource*

*Bank*, 2005 WL 1539267 (D.D.C. 2005) (dismissing a complaint under 28 U.S.C. § 1391(b)

because the proper venue for the litigation in question was the state in which the defendant was

*All of the events did not take place in CO* [handwritten]

headquartered and in which "all of the events giving rise to [plaintiff's] claims occurred.")

**CONCLUSION**    *Both in 02-CV-1950 + in its litigATION* [handwritten]

For the foregoing reasons, the ABA's motion should be granted and the Court should

enter an order dismissing the Plaintiffs' Complaint as against the ABA with prejudice.

Dated: Washington, D.C.                     Respectfully submitted,
     September 7, 2005

                        **WHITE & CASE**
                        LIMITED LIABILITY PARTNERSHIP

                        By: *Carolyn B. Lamm*

                          Carolyn B. Lamm (D.C. Bar No. 221325)
                          Frank Panopoulos (D.C. Bar No. 459365)
                          **WHITE & CASE** LLP
                          701 13th St., N.W.
                          Washington, D.C. 20005
                          (202) 626-3600

                        *Attorneys for Defendant*
                        *American Bar Association*

16

**AБА** Defending Liberty
Pursuing Justice

PATRICIA J. LARSON
Associate General Counsel

AMERICAN BAR ASSOCIATION

Office of the General Counsel
541 North Fairbanks Court
Chicago, Illinois 60611
(312) 988-6684
FAX: (312) 988-5217

Ⓝ F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 2 9 2003

GREGORY C. LANGHAM
CLERK

∂∂-N- 1950( ∂ES )

October 28, 2003

**VIA FEDERAL EXPRESS**

Hon. Edward W. Nottingham
United States District Court for the District of Colorado
1929 Stout Street
Denver, Colorado  80294-3589

Re:   Letter Motion of the American Bar Association in the Matter Captioned
      *Sieverding et al. v. Colorado Bar Association et al.*, Civil Action No. 02-
      CV-1950, Requesting that this Court Stay Plaintiffs' Motion for Partial
      Summary Judgment as against It, as well as the Response Time thereto.

Dear Judge Nottingham:

Defendant American Bar Association ("ABA") respectfully requests that, based on the
posture of this case, this Court accept this Letter Motion in lieu of a formal motion.

On October 14, 2003, Magistrate Judge Schlatter filed his "Recommendation for
Dismissal of All Claims against All Defendants and Recommendation that Plaintiffs Be
Ordered To Pay Attorneys Fees and Costs," in which he concluded, *inter alia*, that the
ABA should be dismissed from the above captioned action. Nevertheless, on October 20,
2003, the *pro se* Plaintiffs filed a motion for partial summary judgment against the ABA
and the Colorado Bar Association.

The ABA respectfully requests that Plaintiffs' motion as against the ABA be stayed, as
well as the time in which the ABA is required to respond to Plaintiffs' motion, until such
time as this Court rules on the Magistrate Judge's Recommendation.  A proposed order is
attached as Attachment A, for the Court's convenience.

The ABA also requests that this Court allow it to clarify one statement made in Plaintiffs'
motion.  Plaintiffs state, at page 2, that the ABA "will not oppose a motion for summary
judgment."  First, the statement made by the ABA was that it "will not *object* to a motion
for summary judgment." (emphasis added).[1]  Second, this statement was a response to

---

[1] The first three pages of a 32-page e-mail string are attached as Attachment B.  (Pages 3 through 32 were
a draft of plaintiffs' proposed motion for default judgment).  At the top of the string is my statement that
the ABA "will not *object* to a motion for summary judgment." (emphasis added).  Included in the first

242

Hon. Edward W. Nottingham
October 28, 2003
page 2

Plaintiffs' assertion that they were considering *filing* motions for default judgment and/or summary judgment. The ABA responded -- apparently too succinctly -- that it would object to the *filing* of a motion for default judgment as inappropriate because the ABA had responded to the Complaint by filing its motion to dismiss; however, the ABA would not object to the *filing* of a motion for summary judgment *on the same basis*.[2]

The ABA therefore respectfully asserts that Plaintiffs have no basis on which they might state that the ABA will not oppose their motion for summary judgment. In fact, the ABA hereby specifically reserves its right to oppose said motion if and when a response is required.

If your Honor prefers that this request be presented by formal motion, or has any questions or needs further information concerning this request, I respectfully ask that your Honor's clerk call me at (312) 988-6684, or e-mail me at larsonp@staff.abanet.org.

Thank you very much for your Honor's consideration of this request.

Respectfully submitted,

Patricia J. Larson

Enclosures

cc:    Darryl DePriest, General Counsel
              American Bar Association (w/o enclosures)
       Kay Sieverding, David Sieverding, Ed Sieverding and Tom Sieverding (via first
              class mail) (w/enclosures)

---

three pages of the e-mail string are portions of my previous e-mail to Ms. Sieverding, interspersed among her comments. I apologize to this Court that the string as here presented is difficult to follow but, unfortunately, I did not retain the individual e-mails.

[2] As stated within the body of the e-mail string, I had responded to Ms. Sieverding on or about July 11, 2003 that, "because there is a pending motion to dismiss, a motion for default judgment is not appropriate." Ms. Sieverding responded that she had looked through the rules of civil procedure and a textbook and "cannot find anyplace that says we can't put in a motion for summary judgement [sic] or a motion for default judgement [sic] just because you filed a motion to dismiss." Based on Ms. Sieverding's reference to "putting in" -- which I interpreted as *filing* -- I responded: "We will object to a motion for default judgment [as not appropriate because the ABA had responded to the Complaint]. We will not object to a motion for summary judgment [on the same basis]."

APPENDIX A



**LETTUNICH & VANDERBLOEMEN, LLC**
ATTORNEYS AT LAW

ALPINE OFFICE BUILDING
200 LINCOLN AVENUE, SUITE 300
P.O. BOX 773990
STEAMBOAT SPRINGS, COLORADO 80477

ANTHONY B. LETTUNICH
JOHN A. VANDERBLOEMEN

TELEPHONE
(970) 879-0109

TELECOPIER
(970) 870-0890

City of Steamboat Springs

0155. Litigation

August 11, 2003
Page 5

Matter - <u>Sieverding - Litigation</u>

| | | Hours | Amount |
|---|---|---|---|
| 6/24/3 | Telephone call from Dave Brougham advising me that the clerk for Magistrate Schlatter advised that no Reply would be necessary. Brougham indicated he may file a motion to strike because of the scurrilous and salacious nature of the assertions made by Mrs. Sieverding. Also discussed recovery of attorney fees and issues related to an injunction preventing her from filing any other lawsuits with an attorney. Reviewed new emails from Sieverding. | 0.60 | 96.00 |
| 6/26/3 | Review two new emails from Sieverdings forwarded to me by Dave Brougham. Email Dave Brougham with inquiry. | 0.40 | 64.00 |
| | For professional services rendered | 6.70 | $1,072.00 |
| | Previous balance | | $1,360.00 |
| | Payment - Thank You | | ($1,360.00) |
| | Balance due | | $1,072.00 |



# LII
legal information institute

**Federal Rules of Civil Procedure**



collection home | tell me more | donate | search

Prev | Next

**VII. JUDGMENT > Rule 60.**

Notes

Law About
... Civil
Procedure

## Rule 60. Relief from Judgment or Order

(a) Clerical Mistakes.

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Prev | Next

© copyright | about us | email us



## NOTES TO RULE 60

**HISTORY: (Amended Mar. 19, 1948; Oct. 20, 1949; Aug. 1, 1987)**

**Notes of Advisory Committee on Rules.**

**Note to Subdivision (a).**

See former Equity Rule 72 (Correction of Clerical Mistakes in Orders and Decrees); Mich Court Rules Ann (Searl, 1933) Rule 48, § 3; 2 Wash Rev Stat Ann (Remington, 1932) § 464(3); Wyo Rev Stat Ann (Courtright, 1931) § 89-2301(3). For an example of a very liberal provision for the correction of clerical errors and for amendment after judgment, see Va Code Ann (Michie, 1936) §§ 6329, 6333. Note to Subdivision (b). Application to the court under this subdivision does not extend the time for taking an appeal, as distinguished from the motion for new trial. This section is based upon Calif Code Civ Proc (Deering, 1937) § 473. See also NYCPA (1937) § 108; 2 Minn Stat (Mason, 1927) § 9283.

For the independent action to relieve against mistake, etc., see Dobie, Federal Procedure, pages 760--765, compare 639; and Simkins, Federal Practice, ch CXXI (pp 820--830) and ch CXXII (pp 831--834), compare § 214.

**Notes of Advisory Committee on 1946 Amendments to Rules.**

**Subdivision (a).**

The amendment incorporates the view expressed in Perlman v 322 West Seventy-Second Street Co., Inc. CCA 2d, 1942, 127 F2d 716; 3 Moore's Federal Practice, 1938, 3276, and further permits correction after docketing, with leave of the appellate court. Some courts have thought that upon the taking of an appeal the district court lost its power to act. See Schram v Safety Investment Co. ED Mich 1942, 45 F Supp 636; also Miller v United States, CCA 7th, 1940, 114 F2d 267.

**Subdivision (b).**

When promulgated, the rules contained a number of provisions, including those found in Rule 60(b), describing the practice by a motion to obtain relief from judgments, and these rules, coupled with the reservation in Rule 60(b) of the right to entertain a new action to relieve a party from a judgment, were generally supposed to cover the field. Since the rules have been in force, decisions have been rendered that the use of bills of review, coram nobis, or audita querela, to obtain relief from final judgments is still proper, and that various remedies of this kind still exist although they are not mentioned in the rules and the practice is not prescribed in the rules. It is obvious that the rules should be complete in this respect and define the practice with respect to any existing rights or remedies to obtain relief from final judgments. For extended discussion of the old common law writs and equitable remedies, the interpretation of Rule 60, and proposals for change, see Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L J 623. See also 3 Moore's Federal Practice, 1938, 3254 et seq.; Commentary, Effect of Rule 60b on Other Methods of Relief From Judgment, 1941, 4 Fed Rules Serv 942, 945; Wallace v United States, CCA 2d, 1944, 142 F2d 240, cert den 1944, 323 US 712, 89 L Ed 573, 65 S Ct 37.

The reconstruction of Rule 60(b) has for one of its purposes a clarification of this situation. Two types of procedure to obtain relief from judgments are specified in the rules as it is proposed to amend them. One procedure is by motion in the court and in the action in which the judgment was rendered. The other procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment. Various rules, such as the one dealing with a motion for new trial and for amendment of judgments, Rule 59, one for amended findings, Rule 52, and one for judgment notwithstanding the verdict, Rule 50(b), and

including the provisions of Rule 60(b) as amended, present numerous cases in which the practice by motion is permitted. In each case there is a limit upon the time within which resort to a motion is permitted, and this time limit may not be enlarged under Rule 6(b). If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action. Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations. The Committee has endeavored to ascertain all the remedies and types of relief heretofore available by coram nobis, coram vobis, audita querela, bill of review, or bill in the nature of a bill of review. See Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L J 623, 659--682. It endeavored then to amend the rules to permit, either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules, and the amendment concludes with a provision abolishing the use of bills of review and the other common law writs referred to.

To illustrate the operation of the amendment, it will be noted that under Rule 59(b) as it now stands, without amendment, a motion for new trial on the ground of newly discovered evidence is permitted within ten days after the entry of the judgment, or after that time upon leave of the court. It is proposed to amend Rule 59(b) by providing that under that rule a motion for new trial shall be served not later than ten days after the entry of the judgment, whatever the ground be for the motion, whether error by the court or newly discovered evidence. On the other hand, one of the purposes of the bill of review in equity was to afford relief on the ground of newly discovered evidence long after the entry of the judgment. Therefore, to permit relief by a motion similar to that heretofore obtained on bill of review. Rule 60(b) as amended permits an application for relief to be made by motion, on the ground of newly discovered evidence, within one year after judgment. Such a motion under Rule 60(b) does not affect the finality of the judgment, but a motion under Rule 59, made within 10 days, does affect finality and the running of the time for appeal.

If these various amendments, including principally those to Rule 60(b), accomplish the purpose for which they are intended, the federal rules will deal with the practice in every sort of case in which relief from final judgments is asked, and prescribe the practice. With reference to the question whether, as the rules now exist, relief by coram nobis, bills of review, and so forth, is permissible, the generally accepted view is that the remedies are still available, although the precise relief obtained in a particular case by use of these ancillary remedies is shrouded in ancient lore and mystery. See Wallace v United States, CCA 2d, 1944, 142 F2d 240, cert den, 1944, 323 US 712, 89 L Ed 573, 65 S Ct 37; Fraser v Doing, App DC 1942, 130 F2d 617; Jones v Watts, CCA 5th, 1944, 142 F2d 575; Preveden v Hahn, SD NY 1941, 36 F Supp 952; Cavallo v Agwilines, Inc. SD NY 1942, 6 Fed Rules Serv 60b.31, Case 2, 2 FRD 526; McGinn v United States, D Mass, 1942, 6 Fed Rules Serv 60b.51, Case 3, 2 FRD 562; City of Shattuck, Oklahoma ex rel. Versluis v Oliver, WD Okla 1945, 8 Fed Rules Serv 60b.31, Case 3; Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L J 623, 631--653; 3 Moore's Federal Practice, 1938, 3254 et seq.; Commentary, Effect of Rule 60b on Other Methods of Relief from Judgment, op cit supra. Cf. Norris v Camp, CCA 10th, 1944, 144 F2d 1; Reed v South Atlantic Steamship Co. of Delaware, D Del 1942, 2 FRD 475, 6 Fed Rules Serv 60b.31, Case 1; Laughlin v Berens, D DC 1945, 8 Fed Rules Serv 60b.51, Case 1, 73 WLR 209.

The transposition of the words "the court" and the addition of the word "and" at the beginning of the first sentence are merely verbal changes. The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

The qualifying pronoun "his" has been eliminated on the basis that it is too restrictive, and that the subdivision should include the mistake or neglect of others which may be just as material and call just as much for supervisory jurisdiction as where the judgment is taken against the party through his mistake, inadvertence, etc.

Fraud, whether intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party are express grounds for relief by motion under amended subdivision (b). There is no sound reason for their exclusion. The incorporation of fraud and the like within the scope of the rule also removes

confusion as to the proper procedure, it has been held that relief from a judgment obtained by extrinsic fraud could be secured by motion within a "reasonable time," which might be after the time stated in the rule had run. Fiske v Buder, CCA 8th, 1942, 125 F2d 841; see also inferentially Bucy v Nevada Construction Co. CCA 9th, 1942, 125 F2d 213. On the other hand, it has been suggested that in view of the fact that fraud was omitted from original Rule 60(b) as a ground for relief, an independent action was the only proper remedy. Commentary, Effect of Rule 60(b) on Other Methods of Relief From Judgment, 1941, 4 Fed Rules Serv 942, 945. The amendment settles this problem by making fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a basis for relief by independent action insofar as established doctrine permits. See Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L J 623, 653--659; 3 Moore's Federal Practice, 1938, 3267 et seq. And the rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, see Hazel-Atlas Glass Co v Hartford Empire Co. 1944, 322 US 238, 88 L Ed 1250, 64 S Ct 997.

The time limit for relief by motion in the court and in the action in which the judgment was rendered has been enlarged from six months to one year.

It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief. It should also be noted that under § 200(4) of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 USC Appendix, §§ 501 et seq. [§ 520(4)], a judgment rendered in any action or proceeding governed by the section may be vacated under certain specified circumstances upon proper application to the court.

### Notes of Advisory Committee on 1949 Amendments to Rules.

The amendment effective October 1949 substituted the reference to "Title 28, USC, § 1655" in the next to the last sentence of subdivision (b), for the reference to "Section 57 of the Judicial Code, USC, Title 28, § 118."

### Notes of Advisory Committee on 1987 amendments to Rules.

The amendment is technical. No substantive change is intended.

© copyright | about us | email us

## WILLIAM C. HIBBARD, P.C.

*Attorney at Law*
610 Oak Street
P.O. Box 773959
Steamboat Springs, CO 80477

(970) 879-4330 (Office)
(970) 879-5501 (Fax)
e-mail address: wch2@mindspring.com

May 14, 2003

Kay Sieverding
641 Basswood Ave.
Verona, WI 53593-1772

Dear Kay:

I am returning the check that you had sent. I have in no way asked for that. I did have a chance to read through the voluminous pleadings while I was up the cabin. Interesting theories, especially against the ABA and Colorado Bar Association. I am not sure how far those will go, but I would be interesting in knowing.

As a friend, keep me up to date of what is going on. As you know, I am not involved in the litigation of the case but I would certainly be willing to give you some comments.

Sincerely,

WILLIAM C. HIBBARD, P.C.

William C. Hibbard

WCH:blm
enclosure



PILOT &TODAY

Steamboat **Homefinder**.com
shop for a home from home.

close to town
room for a studio
plenty of wall space

Real Estate | Reader Forum | Classifieds | Contact | Subscribe

**Weather**

99% listing fee

☀ **66° Fair**

Current conditions
7 day forecast


Affordable
Comprehensive
Creative.

**Community**

Calendar
Reader Forum
Groups & Clubs
Find a new home

**Sections**



Front page
Classifieds
Service Directory
Public Notices
News
Sports
Obituaries
Births
Viewpoints
Dining Guide
Style
Outdoors
The Record
Business
Real Estate News
Featured Properties
Four Points
South Routt
West Routt
Education
Women of Northwest
Colorado
Weddings
Engagements

**Special Sections**

Hunting Guide 2005
Winter VacationLand
Yampa Valley Health
Care

## Archived stories

✉ E-mail story    🖶 Printer Friendly    ✉ E-mail editor

## Restraining order issued against Sieverding

**Judge worried that dispute between City Council president's family and neighbor could escalate to violence**

By <u>Tom Ross</u>, Staff Reporter
THURSDAY, SEPTEMBER 7, 2000

STEAMBOAT SPRINGS — SAYING HE WAS WORRIED THAT a neighborhood dispute could escalate into violence, Routt County Judge James Garrecht issued a restraining order Wednesday prohibiting Kay Sieverding from contacting her neighbor, Jane Bennett, wife of City Council President Kevin Bennett.

The judge's ruling came after a hearing that lasted more than four hours and included a sharp exchange involving Sieverding's husband, David, and Bennett's attorney, Randall Klauzer.

Sieverding and Bennett live on Princeton Avenue in Old Town Steamboat Springs. The two families have not gotten along for years, but the level of acrimony has been growing this summer. The most recent incident happened Aug. 29, when witnesses said Sieverding stood in the street in front of the Bennett home and screamed "at the top of her lungs" that the Bennetts were violating her constitutional rights and breaking the law.

The dispute has boiled over this summer because of Sieverding's insistence that a garage addition and remodeling of a small log cabin on the Bennetts' property are in violation of city regulations.

Garrecht told Sieverding Wednesday not to come within 10 yards of Jane Bennett in the future. She also was ordered not to go onto the Bennetts' property.

"If she's near you, turn around and walk the other way," Garrecht told Sieverding. "Get yourself 10 yards away."

Garrecht referenced a tragic incident in Denver this year when tension between neighbors over parking disputes resulted in the shooting death of a schoolteacher and his daughter.

"I'm concerned about the escalating nature of this," Garrecht said. "I think more safety than harm is going to be accomplished by this (restraining order)."

Sieverding, who told the judge she believes she has acted properly throughout the summer, represented herself in the hearing, but her son and husband were seated at the table with her and actively advised her.

At one point in the proceedings, David Sieverding leaned over to Klauzer and said something to him in low tones. Klauzer leapt to his feet and loudly exclaimed, "What? I'm a son of a bitch? I'm a son of a bitch?"

At that point several people seated in the courtroom called out to Garrecht, "I heard it, too."

"People, this is a courtroom," Garrecht responded. "If you want to have a dogfight, go outside."

The judge then required David Sieverding to leave the advocate's table and take a seat in the audience.

Jane Bennett sought the restraining order after an Aug. 29 incident that began, she said, as she returned from buying produce, heard a car honking its horn and looked in the mirror to see Sieverding and her son following closely in their car. Bennett said she drove straight to her home to avoid contact with Sieverding.

"I got scared because I've had problems before," Bennett said. "I saw Mrs. Sieverding come charging at me through her yard. She started jumping up and down and screaming in the scariest voice, 'Just because you are the wife of the City Council president doesn't mean you can break the law.' ⬦ I was so scared."

Bennett said she went inside and called the police.

Sieverding faces misdemeanor criminal harassment charges in connection with the incident, the judge observed in court.

Story search  GO
More search options

TOP JOBS
FEATURED PROPERTIES

YAMPA VALLEY
Real Estate
New Issue Online
Every Month
Order a free copy


HOMES
FOR SALE!
search listings
here!

The
Inn at Steamboat
Lodge and Suites

REAL ESTATE
Cameron Boyd
18 years of proven success
970-879-8100 ext 116


Prudential
Steamboat Realty

Marketplace
Real Estate

Steamboat online offices · Richmond Condominiums

Care
Wedding Guide
The Venue
Rodeo Guide
**Assistance**
Search
Subscriptions
Contact
Advertising
About the Pilot &
Today



Autos
Recreational
Employment
Clerical Office
Rentals
Homes
More classifieds
Submit a classified ad
Find a home

**Calendar**
Today's events
Go to the calendar
Submit an event

to testify about their visits to her neighborhood to respond to complaints. In response to direct questions from Sieverding, both officers said they had not observed her displaying physical aggression toward her neighbors.

"Did you ever see me act in a violent or threatening manor?" Sieverding asked Brown.

"No," he replied.

"Have you ever observed me behaving threateningly? Did I ever act in any way that seemed irrational?" Sieverding asked Blackman.

"Not at the times when I've been called," Blackman responded.

In her closing argument, Sieverding told the judge this has been the "strangest summer of her life."

"My honest belief, was that everything I've done over the summer was honest and proper," she said.

Sieverding has objected strenuously this summer to construction projects occurring on the Bennett property at the end of Princeton, a dead end street. She contends that the size of an addition being built above a freestanding, two-car garage violates the city development code. She also alleges code violations related to the Bennetts' conversion of an existing log shed into guest quarters.

City Planning Director Wendie Schulenburg testified Wednesday that she has responded in detail to Sieverding's concerns and has told her that the Bennetts' construction is in compliance with the code.

Klauzer argued that Sieverding's behavior, including the wide distribution of leaflets criticizing the Bennetts and the city's handling of her concerns, was in violation of the terms of a mediated agreement the Sieverdings and the Bennetts signed this year. The city paid $4,000 for a mediator to work on the agreement between the two families. It was meant to restore peace to their neighborhood.

Klauzer told Garrecht that failure to act now "would allow something horrible to occur here."

"This is personal abuse," Klauzer told Garrecht. "This is not going to stop, judge, until you stop this woman from harassing Jane Bennett."

◆ To reach Tom Ross call 871-4210, or e-mail tomross@amigo.net

More in News

Copyright © 2005 The Steamboat Pilot & Today. All rights reserved.

There's always more available in our print version. **Subscribe to The Steamboat Pilot & Today!**

If you have a question or comment, visit our **feedback** page.

Interested in **promoting your business** on our site?

Please acquaint yourself with our **Privacy Policy** and **Terms of Use Agreement**.




# PILOT & TODAY

Steamboat
**Homefinder.com**
Shop for a home from home

close to town
room for a studio
plenty of wall space

Real Estate | Reader Forum | Classifieds | Contact | Subscribe

**Weather**
here to receive 1.5

66° Fair

Current conditions
7 day forecast

Affordable
Comprehensive.
Creative.

**Community**
Calendar
Reader Forum
Groups & Clubs
Find a new home
**Sections**

Front page
Classifieds
Service Directory
Public Notices
News
Sports
Obituaries
Births
Viewpoints
Dining Guide
Style
Outdoors
The Record
Business
Real Estate News
Featured Properties
Four Points
South Routt
West Routt
Education
Women of Northwest
Colorado
Weddings
Engagements
**Special Sections**
Hunting Guide 2005
Winter VacationLand
Yampa Valley Health

## Archived stories

✉ **E-mail story**   🖶 **Printer Friendly**   ✉ **E-mail editor**

## Sieverding responds to recommendations

TUESDAY, NOVEMBER 4, 2003

**KAY SIEVERDING HAS RESPONDED TO** a federal magistrate's recommendation that her lawsuit against the Colorado Bar Association and several other defendants be dismissed.

In addition to the Colorado Bar Association, the more than 30 defendants in the lawsuit include the city of Steamboat Springs, several current and former City Council members, several city officials, several attorneys and the Steamboat Pilot & Today.

On Oct. 14, Magistrate Judge O. Edward Schlatter issued a recommendation for dismissal of all claims in the federal civil case, Kay Sieverding et al. vs. Colorado Bar Association et al. In addition to recommending dismissal of all claims, Schlatter recommended that the plaintiffs be ordered to pay attorney fees and costs for the defendants. The 59-page recommendation was filed with the U.S. District Court in Denver.

Schlatter also advised all parties that they had 10 days to respond to his recommendations.

Sieverding has filed numerous motions for summary judgment or other relief in response to Schlatter's recommendation.

Schlatter issued a new order Friday recommending that these motions be stricken from the case because they do not conform to the rules for filing an objection to Schlatter's recommendation. Sieverding has until Nov. 14 to respond to this latest recommendation from Schlatter.

In an article published Oct. 15, 2003, Steamboat Today incorrectly reported that the lawsuit had been dismissed. Actually, Schlatter's filing is merely a recommendation to federal District Judge Edward W. Nottingham, who ultimately will decide the case. No timetable had been set for Nottingham's decision, attorneys said.

More in News

Story search    GO
More search options

TOP JOBS
FEATURED PROPERTIES

YAMPA VALLEY


Real Estate
New Issue Online
Every Month
Order a free copy


REAL ESTATE
Cameron Boyd
18 years of proven success
970-879-8100 ext 116

Prudential
Steamboat Realty

Marketplace
Real Estate

KAY SIEVERDING

ED SIEVERDING, AND

TOM SIEVERDING

PRO-SE PLAINTIFFS

641 BASSWOOD AVE

VERONA, WI 53593

608 848 5721

02N1950 (OES)

IN THE UNITED STATES DISTRICT COURT OF

THE DISTRICT OF COLORADO

Colorado Bar Association et al.

Objection to the court's incarceration of plaintiff Kay Sieverding and to reverse the
court's finding that Kay Sieverding is in contempt of court.

The court specifically stated on 09-02-05 that the goal of the incarceration is to
force the plaintiffs into releasing their claim on all of the 02-1950 defendants.
Incarceration with such a stated goal violates canon 3a5, "a judge must demonstrate due
regard and to have issues resolved without unnecessary cost or delay. Parties should not
feel coerced into surrendering the right to have their controversy resolved by the court."
This order was issued with improper motive and is invalid. As discussed on 09-02-05, the
court apparently intended to give different meaning to the words in his order "based on
the same series of events" than plaintiffs interpreted, however plaintiffs are entitled to

1

their interpretation which allows actions on events related to but different in timing, basis in law, new damages, etc., all the reasons that res judicata may not apply.

It is undisputable that the injunction does not the mandatory requirements of Rule 65d, "every order granting an injunction and every restraining order shall set forth the reasons for its issuance, shall be specific in terms, shall describe in reasonable and not by reference to the complaint or any other document the act or acts sought to be restrained".

The court based its action to incarcerate Kay Sieverding on an oral motion by Faegre and Benson. That oral motion, and the preceding written motions, to stop plaintiffs from litigating, violated Federal Rules of Civil Procedure 7d2 because they did not show the rule that was invoked. Any sanction on plaintiffs requires a showing of bad faith conduct on plaintiff's part. Plaintiffs verified every pleading under penalty of perjury. There have been no allegations that any of plaintiffs' statements were fraudulent, nor have there been any allegations that plaintiffs misquoted or misapplied the law. Plaintiffs filed a motion in Oct 2003 asking the defense to identify any evidence of misconduct on plaintiffs' part, but no response was entered by the court or any defendant other than the differing perception of the so called vocation restrictions.

Plaintiffs showed their good faith by showing up on 09-02-05.

"The inherent power of the court may only be imposed for bad faith conduct." Federal Practice and Procedure, Wright, Miller and Case, West Group 2002, page 574.

The court demand to David Sieverding to jail or withdraw was unconstitutional and cannot be enforced. David Sieverding meant no disrespect. He had no advanced notice that immediate incarceration would be requested and could not adequately prepare for the meeting. The magistrate's October 2003 recommendation that a litigation sanction be imposed did not follow the required procedure for a sanction or injunction because

2

there was no evidentiary hearing and there was no notice. The week afterward, plaintiffs filed a motion for evidence of any improper conduct. No one offered such evidence. Plaintiffs are entitled to a presumption of innocence, both within the litigation, and in external events. They more than fulfilled their duty when they requested an evidentiary hearing in their motion in October 2003.

"A report and recommendation of a magistrate relative to a pretrial motion cannot automatically become an order of the court even though no party registers an objection." Federal Rules of Evidence citing 28 USC 636 IV 45.

"Under the Federal Rules of Civil Procedure every judgment must be set forth in a separate document and a judgment is effective only when set forth." American Jurisprudence 46, section 87, page 440.

"The duty to comply with injunctions assumes the existence of a valid and operative order. Disobedience may subject the violator to contempt unless the order requires an irretrievable of constitutional guarantees" Federal Procedure Lawyers Edition 47.150.

In this case proposed to leave the Sieverding children without any parent. Not only is this unconstitutional, but it is also unconscionable.

"The requirement that every order granting an injunction and every restraining order cite the reasons for its issuance is a common sense rule imposed so that the parties why and on what actual basis the court acts. The requirement is also designed to aid the trial court by requiring it to marshal the evidence and to aid the appellant court on review. This rule is made mandatory and may not be departed from even under emergency conditions." Federal Procedure Lawyers Edition 47.27.

The district court cut short plaintiffs' presentation to five minutes after allowing the defendants to present for twenty minutes. This was aggravated by the fact that refused before the hearing to clarify the reason for the hearing and the planned procedure.

"Where the district court failed to afford the party adversely affected an opportunity to cross examine, to present evidence and because the court made no adequate finding of fact, the order granting injunctive relief would be reversed." Federal Rules Digest 65.

3

"While the inherent power of the court may be used to punish conduct not taking place within the courtroom or as a formal part of the litigation, it may only be imposed for bad faith conduct" Federal Practice and Procedure Desk Book, Wright and Cane, page 653.

"Bad faith, not simply bad judgment or negligence, but involving the conscious doing of a wrong because of dishonest purpose" Black's Law Journal

Plaintiffs' goal in the litigation was not to hurt the defendants, or the court, but to remedy the damages, still ongoing, inflicted upon them. The problems with the bulky record are based on the defendants' refusal to stipulate to the facts and the refusal of the court to process the summary judgment motions, so as to simplify the issues. Plaintiffs cannot be held responsible for the results of decisions made by the defendants and the court.

"In deciding whether to issue an injunction the district court must expressly consider the party's interest on the record." Portland Audio Society v Lujan, District of Oregon 1992.

"A civil sanction that cannot fairly be said to solely serve a remedial purpose but rather can only be explained as also serving either a retributive or deterrent purposes is punishment" US v Mackley, 9th Circuit 2001.

A criminal procedure is required to keep Kay Sieverding in jail or to sanction David Sieverding. Thus, the 09-02-05 incarceration of Kay Sieverding violated procedural due process requirement and must be immediately reversed.

The plaintiffs hereby declare under penalty of perjury that to the best of their knowledge and belief everything included in this document, and all other documents filed with the Court, is true and correct.

Kay Sieverding
(Dictated by Kay Sieverding)

4

Certificate of Service In the United States Court For the District of Colorado Case 02-N-1950 (OES)  The Undersigned certifies that copies were delivered as required.

Kay Sieverding

| | |
|---|---|
| John Palmeri<br>Brett N Huff<br>White and Steele for CBA<br>950        17th St, 21st floor<br>    Denver, CO 80202 | David Brougham<br>Hall and Evans, LLC<br>1225 Seventeenth St, Suite 600<br>Denver, CO 80202- |
| Patricia J. Larson<br>American Bar Association<br>Office of General Counsel<br>321 N. Clark St<br>Chicago, IL 60610-4714 | Thomas Kelley/Christopher P.<br>Beall/Eileen Kiernan Johnson<br>Faegre & Benson<br>1700 Lincoln St.<br>3200 Wells Fargo Center<br>Denver, CO 80202 |
| Traci L. Van Pelt/Michael T<br>McConnell/Troy R. Backman/Megan<br>E. Pound<br>McConnell Siderious etc.<br>2401 15th St Suite 300<br>Denver, CO, 80202 | James B.F. Oliphant<br>PO 77425<br>750 Princeton<br>Steamboat Springs, CO 80477<br>Note the last mailing to him at that<br>address was returned by USPO on<br>5/18/04 |