# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID SIEVERDING, et al.,      )
                       )
                       )
          *Plaintiffs,*     )      Case No.:05-CV-01283
                       )      (RMU)
     v.                   )
                       )
AMERICAN BAR ASSOCIATION, et al.,  )
                       )
         *Defendants.*    )

## PLAINTIFFS' CONSOLIDATED REPLY TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS MOTIONS FOR SUMMARY JUDGMENT

The Rules of Professional Conduct, the ABA's self-published guide to litigation conduct, and Note 3 to Rule 11, all require the defendants to divulge applicable legal authorities that the opposing side is unaware of. In this case, not only are the Sieverdings pro se but the 02-CV-1950 defendants colluded with Colorado Judge Nottingham to violate U.S.C 42 § 1985 (Conspiring to Interfere with a Court Presentment) by jailing Kay Sieverding so she couldn't consult the Internet or the University of Wisconsin Law Library or use her computer.

"The duty to comply with injunctions assumes the existence of valid and operative order...disobedience may subject the violator to contempt unless... the order requires an irretrievable surrender of constitutional guarantees." *Federal Procedure Lawyers Edition, West Law Publisher v 47 page 150*

Res judicata is an affirmative defense, the burden of proof in on the defendants and the defenses are supposed to be consolidated.

"The party asserting collateral estoppel or res judicata must plead and prove the earlier judgment was rendered on the merits of the case where there is a question as to

whether a previous decision was rendered on the merits of the case ... no conclusive effect is given to the earlier decision." *American Jurisprudence § 729-730.*

The ABA claimed first that a 60 B (3) motion could not be an independent action despite the fact that the 60 B (3) notes show that it is allowed as an independent action. (See notes filed as attachment to first errata.) It seems impossible that the ABA and White and Case, LLP. did not know that. The notes also say "Where the independent judgment is resorted to the limitations of time are those of the statute of limitations" (Advisory Committee Notes 1946 Amendment to Rule 60 quoted in Rules of Civil Procedure with recent judgment Rule 60 page 280-281). The defense did not disclose the federal law offers a 30-day equitable tolling clause. The mandate of 10th Circuit was issued 6/2, 05-CV-01283 was sent by overnight DHL delivery on 5/24. The DHL package was somehow showed up over the weekend but it was supposed to be delivered 5/24. The 10th Circuit appeal tolled plaintiffs' motion for relief from legal fees and relief from judgment. The plaintiffs filed their complaint for Summary Judgment in Northern Illinois on 6/23 and it refers to (05-CV-01283) that was dismissed as defective and too long. Plaintiffs shortened it substantially and revised the claims and filed it less than 30 days after it was dismissed. Furthermore, defense counsel Beall testified that he had ex parte contact about the merits of the case with the District of Northern Illinois and the Court statement refers to facts not in the complaint.

One reason why plaintiffs could not appeal to the Supreme Court is that both the 10th Circuit and Judge Nottingham's orders were unpublished, very short and so vague as to be meaningless. The ABA now claims that Magistrate Schlatter has conferred immunity on them despite the fact that Magistrate Schlatter is not a legal authority. However,

2

"Immunity granted to a class, however limited, having the effect to deprive another class, however limited, of a personal or property right is just as cruelly a denial of equal protection of the laws to the latter class as if the judgment were in favor of, or the depravation of rights permitted to be work in a larger class one of the principle purposes of the equal protection clause is to insure that citizens are not subject to arbitrary and discriminatory state action. The equal protection clause was intended to work nothing less than the abolition of all caste and class based (law)." *American Jurisprudence 2d 16(b) § 785.*

The litigation of conduct in 02-CV-1950 is described in detail in more than 30 pages. The letter from the ABA asking the Colorado Court to suspend the summary judgment process was a solicitation to deny the family honest services. The 1948 Amendment to the Rules of Civil Procedure mandates that a plaintiffs' motion for summary judgment be processed before defense motion to dismiss. The solicitation to relay messages through the clerk violates Canon III. Furthermore, both Judge Nottingham and Magistrate Schlatter are aware of the 05-CV-01283 complaint and neither has denied plaintiffs' allegations. The 02-CV-1950 defense bills show that plaintiffs' motions for summary judgment were served on them in July and August 2004 although the court refused to docket them.

The DC Court of Appeals precedent states, "whenever such fundamental fraud is uncovered, it calls for nothing less than complete denial of relief" <u>Synon Church v. U.S.D.C.D.C.,</u> 1984 579 F. Supp. 967 Affirmed 820 F 2d 421, 261 U.S. App. BC 13.

The ABA, White and Case, LLP and O'Brien, Butler must know, but did not disclose;

"1391 was amended in 1990 ... there may be several districts that qualify as a nexis of such substantial activities ... if the selected district contacts are substantial it should make no difference that others are more so... long arm jurisdiction ... the new language was first substantial ... events occurred ... in instances in which an act or acts were required by the engagement of the parties ... a failure to perform them in that district can qualify that district as a proper venue" *District Courts Venue 28 § 1391 pg. 910.*

The 05-CV-01672 Complaint Facts 2 – 74 describe such acts and omissions as a proximate cause of the later events. Then, the ABA and the defendants do not deny that O'Brien, Butler and the ABA directed the 02-CV-1950 misconduct. The fraudulent articles about the criminal charges against Kay Sieverding and the 02-CV-1950 litigation history (saying that summary judgment motions can be ignored if they are not in the form of objections) are broadcast into the district with working 800 numbers soliciting business. These articles quote the city of Steamboat, Wendy Schulenburg, Randall Klauzer and Jane Bennett. The city subsidizes air flights from the east coast and Steamboat's tourist business. Wittemeyer's husband sells second homes to east coast residents and advertises nationally. The World Company interactive commercial website directly solicits business and reader input from DC, thus most of the defendants do business in DC. The 02-CV-1950 defendants acted together as a group to cause suspension of the normal course of litigation in 02-CV-1950. Thus, 1391 (b) (2) can apply to this action.

Furthermore, whatever section of 1391 one wishes to apply the DC Court cannot mandate that the District of Colorado is the proper venue because the Sieverdings moved to Wisconsin in July 2001 and the DC Court knows that the described acts causing their damages happened after they moved.

"A cause of action is a form of property. A plaintiff may bring an action under RICO for interference with another lawsuit." (Proper RICO standing is adequately pled where plaintiffs have established expense delay and inconvenience.) Federal Procedure Lawyers Edition Published by West Law 10:158

"A complaint which alleges that the fraudulent scheme was undertaken... by individual defendants... participated in fraudulent acts as a group, describes in detail the responsible and fraudulent acts of each individual defendant... pleads predicate acts (under Rule 9) with sufficient particularity." Federal Procedure Lawyers Edition Published by West Law 10:222

4

Because the 02-1950 litigation conduct was conducted in conspiracy and some of the acts and omissions originated in Washington DC, most were interstate, and one defendant is in Washington DC, jurisdiction is established by RICO, civil conspiracy and 1391 for all defendants.

All of the 02-CV-1950 litigation was interstate except for one 90-minute meeting in January 2003 that was held in Denver. Ninety percent of the filings were written in Wisconsin and the ABA, who led and legitimized the litigation's conduct, does not have an office in Colorado. Remand to Colorado is not allowed under the Principles of Equity because not only did Judge Nottingham and Magistrate Schlatter behave improperly, but the 02-CV-1950 case was transferred to Judge Nottingham in violation of normal procedure. Judge Matsch is designated to hear all District of Colorado 1983 complaints. Cases are never supposed to be transferred midway unless the first judge dies or is too sick to adjudicate.

Judge Nottingham was not a random choice. He had already pronounced as frivolous a court document that Sieverdings the filed in September 2003 alleging that a defendant, Kevin Bennett, had in 2001, threatened to shoot one of investment banker Tom Ernst's small children if he were to buy Sieverding's building lot that adjoined Keven Bennett's property, and one of his small children wandered onto his Keven Bennett's property. Sieverdings heard about this threat in an email from Tom Ernst.

Plaintiffs requested that Judge Nottingham recuse himself because of his inadequate supervision of Magistrate Schlatter. Then, instead of recusing himself, that very day, ignoring Swierkiewicz v Sorema N.A. 543 US 506 (2002), which plaintiffs repeatedly cited, without citing a legal basis, he dismissed 02-1950 saying only that

5

plaintiffs' pleadings were legally twisted and incomprehensible and, again without citing

a legal basis, entering a vague injunction imposing illegal and unconstitutional filing

restrictions in violation of Rule 65 and, yet again without citing a legal basis, awarding

legal fees in violation of Rule 54.

Judge Nottingham has a professional interest in the outcome of 05-CV-01283 and

05-CV-01672. Plaintiffs received the transcript of the 9/2/05 hearing and it is clear that

Judge Nottingham's only motivation in jailing Kay Sieverding and threatening David

Sieverding with jail was to cause these two actions to be withdrawn.

"It is the general rule of ethics that no person... should sit in judgment in cases...
in which they are interested and violation of this rule by persons presiding over cause
tribal an ordinary court of justice amounts to a denial of due process of law to those who
are injuriously affected" *American Jurisprudence 16(b) § 968.*

"The right to unlimited and unimpaired access to federal courts is one of the most
important principles and immunities of U.S. citizenship." *American Jurisprudence
16(b)§ 769 pg. 287.*

The 9/02/05 transcript cites no law to support the jailing of Kay Sieverding. The

only case mentioned was an entirely different subject (unions on strike). The defense

counsel misrepresented the facts, but Sieverding was not allowed cross examine them.

As Sieverding was quoting <u>Troy v. Cochran</u> (U.S.C. 05/31/05) Judge Nottingham

interrupted and told her to stop. Previous to the hearing Sieverdings had asked for a more

clear statement, an impartial adjudicator, the procedure planned, and the legal authority

cited, but their motion was denied in one word.

The D.C. Court of Appeals has confirmed:

"This rule authorizing relief from final judgment or order is not affirmative grant
the power but preserves historical authority of courts in equity to reform judgments in
special circumstances" <u>Carr v. District of Columbia</u> 1976, 543 2 N.B. 917, 177 U.S.
App. D.C. 432 – see also <u>Joland v. Central Intelligence Agency</u> 1978 607 F 2d W 39, 197
U.S. App. D.C. 25 Certiorari denied 100 S. Ct. 1312, 445 U.S. 927, 63 L EB 2d 759.

6

"The limitations inherent in the requirement of equal protection of law extend to the judicial ... branches" *American Jurisprudence 2d 16(b) § 884.*

"Due process of law is denied when any particular person ... is singled out for the imposition of restraints ... not imposed upon ... all of the class ... unless the restraint ... is based upon existing distinctions that differentiate *American Jurisprudence 2d 16(b) § 919.*

Thus, the District of Columbia is obligated by equity to adjudicate over 05-CV-01283 and 05-CV-01672. Jurisdiction is also mandated by RICO. West Law states that a complaint is a form of property and a conspiracy to deprive the fair litigation thereof is actionable under RICO. A conspiracy may be litigated against all participants in any district in which one conspirator is located.

The ABA claims that it does not understand the complaint. This is consistent with the undisputed 05-CV-01283 Facts 125 j "The defense claims that they could not understand plaintiffs' brief although they refuse to say what sentence(s) they didn't understand." The request from relief of judgment against the ABA is stated on page 2 #2. In the same week that the ABA claims no involvement with Sieverdings, it filed in Dane County, Wisconsin to attach Sieverdings' property for a $10,000 award from Magistrate Schlatter, thus Rule 54.

The defense counsel simply lie when they claim Sieverdings appealed the order about pro se litigation to the 10th Circuit. The plaintiffs didn't want to use up their word allocation on that and knew that the "words based on the same series of transactions" would allow them to litigate based on new events.

The ABA and the other 02-CV-1950 defendants showed so much bad faith that they are not entitled to relief. It is clear that the only reason they want to remand to Colorado is to obstruct justice.

The motions that the plaintiffs filed in the Tenth Circuit Court of Appeals have no determining value because the defendants chose not to answer the motions and the Circuit Court's Committee on the Merits didn't read any of plaintiffs' motions. As discussed in the complaint, the defendants lied in their reply brief and mislead the Circuit Court. The only document that there is any possibility that the Committee on the Merits read was the plaintiff's 04-1108 opening brief, which was filed before the defendants submitted their legal bill to the plaintiffs. It was these legal bills that provided evidence of collusion between the District Court and the defense council.

Rule 60 (b) (3) and the Administrative Procedures Act are designed for an evidentiary process that is simply unavailable through the Court of Appeals. That was the intent of Congress.

A motion for summary judgment requires a formal reply listing numbered facts as accepted or denied and an evidentiary hearing if facts are disputed. What the 02-cv-1950 defendants did is to substitute misstatements of the facts and to collude with the federal judges to break the laws of civil procedure. For instance, on page 3, the ABA states, "only that the magistrate judge's clerk informed council that a reply would not be necessary for one of plaintiff's numerous filings". This is a misrepresentation. The conversation was ex parte collusion violating Canon 3. The order was not in the record, nor did it comply with the non-discretionary laws of civil procedure. A motion with legal authority did not precede it. **The magistrate allowed the defense not to reply to all of plaintiffs' motions, to all of the plaintiffs' interrogatories and the plaintiffs' complaint without having to suffer the normal consequences of default judgment.**

8

The Colorado judges did this after the ABA requested that the <u>laws</u> of civil procedure be ignored, after the ABA requested that the judges commit a felony by denying honest services of the court and after the ABA requested Judge Nottingham violate Canon 3 by relaying messages through his clerk.

As discussed in the complaint undisputed fact 93, one of the defense attorneys, Lettunich, supplied the plaintiffs with evidence in the form of a bill. On the entry for 06-24-03 the bill itemizes, "telephone call from (defense attorney) Dave Brougham advising me that the clerk for magistrate Schlatter advised that no reply would be necessary. In a bill that David Brougham sent the plaintiffs the item for 06-23-03 is, "confer with (defense attorney) Van Pelt regarding reply issue. Telephone call to court regarding need for same."

The plaintiffs' complaints detailed why the 02-cv-1950 did not meet the conditions required to establish res judicata for 30 pages, none of which had been denied. The facts in the Colorado complaint and the DC complaints were not disputed because general objection is not allowed. In order to dispute, a formal reply complying with Rule 12 is required. In order to allege that plaintiffs' facts, as quoted, are false, under Rule 9(d), the defendants are required to state with particularity.

For a motion for summary judgment to be decided when facts are disputed requires an evidentiary hearing. This demands a statement of disputed and undisputed facts and discovery. If there was a question of causation, that would have been determined by discovery and the trier of fact, which in 02-cv-1950 included plaintiffs' jury demand made by civil cover sheet and by motion in January, 2003.

The defense cannot substitute an informal process, not complying with the rules of evidence, for the formal procedures set by Congress. The defense has the burden of proof that a decision was on the merits. In 02-cv-1950, plaintiffs' allegations against the ABA were supported both by detailed allegations based on 42 U.S.C. Section 1981 and to how the ABA acted to discourage lawyers from prosecuting claims against lawyers based on tort for third parties and for indicators of liability as listed by the Colorado Supreme Court. The ABA Colluded with the Colorado Judges to confer it immunity from duty to answer. That is unprecedented and has no basis in law. Courts cannot confer immunity. Under Colorado Law, even the government has to hold an evidentiary hearing if the facts establishing immunity are disputed. A motion to dismiss does not give the moving party a right not to Reply. If that were the case, all defendants would file motions to dismiss. All defendants would rely on vague paragraphs.

Plaintiffs' did cite several bases in law for their claims against the ABA, based on federal statutes and the legal authority of the Colorado Supreme Court as expressed in University of Denver v Whitlock. The Rule 12(b)(6) process was not meant to be a shortcut to judgment, skipping the formal process.

In 02-cv-1950, everything is suspect because of the document evidence or ex parte judge-defense collusion. Congress specifically meant for the Summary Judgment process to be a safeguard for plaintiffs. West Law's 2005 textbook on civil procedure clarifies that a motion to dismiss cannot legally be used by a judge to narrow the issues and limit the facts.

In 02-cv-1950, the judge and the defendants colluded to allow a boycott and prevent a decision on the merits, as detailed in the 05-cv-01283 complaint. The

defendants do not have a right to dispute the 02-cv-1950 claims because they failed to do so on a timely basis, as discussed below when plaintiffs filed for summary judgment. They cannot take an unlawful defense from the judge because they were bound by the rules of professional conduct to insist that Congress's laws, the Rules of Civil Procedure, were followed.

Justice Marshall wrote,

" ...The debates over the 1871 Act are replete with hostile comments directed at state judicial systems.".... Thus, the mere inquiry into good faith is deemed so undesirable that we must simply acquiesce in the possibility that ....officials will maliciously deprive citizens of their rights. For my part, I cannot conceive in this case how patent violations of individual rights can be tolerated in the name of the public good. "The very essence of civil liberty certainly consists in the right of every individual to claim the protections of the laws, whenever he receives an injury." Marbury v. Madison, 1 Cranch 137, 163 (1803). V BRISCOE ET AL. v. LAHUE ET AL. (03/07/83) SUPREME COURT OF THE UNITED STATES.

"The jurisdiction in civil . . . matters conferred on the district courts by the provisions of this [chapter and Title 18], for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States,... [Section 1988] expressly limits the authority granted federal courts to look to the common law, as modified by state law, to instances in which that law 'is not inconsistent with the Constitution and laws of the United States.", 1989 Supreme Court Case, JETT v. DALLAS INDEPENDENT SCHOOL DISTRICT

In a case involving due process of law, the Supreme Court wrote,

"    give the rule the effect which the plain meaning of its language and the legislative history require.... if the rule is to be amended...it must be done by those who have the authority to amend the rules, the Supreme Court and the Congress . . . . It is not for us as enforcers of the rule to amend it under the guise of construing it... civil litigants in federal court share equally the protections of the Fifth Amendment's Due Process Clause" GREEN v. BOCK LAUNDRY MACHINE CO. (05/22/89)

The Supreme Court in another case discussed the importance of legislative history. The court wrote,

11

" Section ...is derived from the Enabling Act of 1934, 48 ...gave this Court the "power to unite the general rules prescribed . . . so as to assure one form of civil action and procedure As emphasized by the Court of Appeals, the language ...was included "to assure that with such union ...the right ...would be neither expanded nor contracted. In other words, Congress used the language in question for the sole purpose of creating a statutory right coextensive with that under the Seventh Amendment itself." COLGROVE v. BATTIN (06/21/73)

Who could dispute that the right to trial under the federal rules of civil procedure

could be abridged, by denial of the summary judgment process, if the right to trial by jury

discussed above cannot?

This is the first case of the first footnote in the section in Chapter 8 called 2728 "Judicial Discretion in Deciding a Rule 56 Motion". "Discretion plays no role in the granting of summary judgment." National Screen Serv. Corp. V Poster Exchange Inc. CA 5th, 1962, 305 F 2 d. 647.

As the Supreme Court said above, UVEGES v. PENNSYLVANIA (12/13/48) "The basic question of this case is whether the petitioner was denied due process of law by reason of the fact.... The vital question to be decided, and, in our view of the case the only significant question, is whether the (litigant) under such facts as are properly before this Court, must be (not)(denial right to) (counsel) in order that the process ....may be deemed due process." Justice Reed in paragraph 27  wrote ".A finding that a ... court disregarded the Constitution of the United States should not be like a game of blind man's bluff."

On page 518 of chapter 8 Wright and Miller says "As a district court has no genuine discretion in determining whether to grant summary judgment, An appellate court must determine de novo that the strict standard to be applied by the district court has indeed been met." Lemelson v. TRW. Inc. CA Fed 1985, 760 F. 2d. 1254.

The plaintiffs in their motion for partial summary judgment assert that the ABA

and CBA had violated the plaintiffs' rights under section 1981 by their acts and

omissions interfering with them getting a lawyer to sue a lawyer for deterrence and

remedy, Defendants never asserted any substantive defense.

In fact, Lawrence W. Friedman, the Marion Rice Kirkwood Professor of Law at Stanford University and a member of the "Order of Coif" from the Association of American Law Schools says in his "American Law in the 20th Century" published in 2002 by the Yale University Press "The (defendant) approved (rules of professional conduct) in 1983..."""But whether these rules really work or whether they work in the

public interest—remains an open question…After all it is the bar itself that disciplines the bar and most citizen complaints end up going nowhere…The organized bar though seems to lack zeal for self policing." P 469.

Wright and Miller continues on page 523 in the Judicial Discretion section "evidence was not to be balanced to ascertain whether it weighed more heavily….but, rather, it was to be examined with a view to determining whether there was any evidence that if accepted by the fact finder after trial would justify a judgment for the defendants. Ash v. Brunswick Corp. D.C.Del. 1975, 405 F. Supp. 234.

Another case quoted by Wright and Miller on page 523 says "the responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try to issues himself" Jaroslawiez v. Seedman, C.A. 2d, 1975, 528 F. 2d 727, as quoted on page 523, chapter 8 "Judicial Discretion" subchapter of "Summary Judgment Proceedings".

In this lawsuit, the magistrate judge is clothed in the authority of the state and he

is misusing his power to deny plaintiffs use of the body of law governing methods and

practices used in civil litigation. That is why two different defense lawyers, Patricia

Larson at the ABA and James B.F. Oliphant, (the lawyer who wrote to plaintiffs in 1992

claiming that there was a Colorado law that allowed conversion of a street to private use

and threatening plaintiffs' business), both wrote to the magistrate and used the term "the

posture in this case".    There isn't supposed to be any posture. The rules are supposed to

be there as written and accessible to everyone equally.


Black's Law Dictionary quotes Polyvios J. Polyviouu as the source for this definition of "equality before the law". "The status or condition of being treated fairy according to regularly established norms of justice…the notion that all persons are subject to the ordinary law of the land administered by ordinary law courts that officials and others are not exempt from the general duty of obedience that the law discretionary government powers must not be abused and that the task of superintending the operation of law rests with an impartial independent judge."

Wright and Miller says in the next sentence on page 526 "Justice Rehnquist noted that Rule 56 must be construed…also in recognition of the moving party's right to demonstrate prior to trial that the opponent's claims and defenses have no factual basis.";

The Third Circuit ruled in 1999, In Taylor v. Phoenixville School District

13

"Because we find that the undisputed evidence in the record shows that …we believe that judgment should be entered in ….plaintiff's favor on this issue. The school district had a full opportunity to present its side on this question…Summary judgment ….has become an accepted method for an appellate court to expedite litigation... ". The U.S, Supreme Court said "a defendant who fails to submit affidavits creating a genuine issue of fact in response to a motion for summary judgment will suffer" (paragraph 42 ST. MARY'S HONOR CENTER v. MELVIN HICKS (06/25/93).

The 10th Circuit wrote:

"Under Rule 56(c), the moving party has the initial responsibility to show that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

If the moving party meets this requirement, the burden shifts to the nonmoving

party to make a showing sufficient to establish that there is a genuine issue of material

fact regarding

"the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552.

The nonmoving party may not rest upon "the mere allegations or denials of [her] pleading...." Panis v. Mission Hills Bank, N.A., 60 F.3d 1486(10th Cir. 07/31/1995) .

This quote is directly relevant because what the defendants are trying to do is

even less than this, they have no pleading, just a connection(s) to the judge(s).

In 1987, the third circuit showed how partial summary judgment is used to wipe out defenses. (Peters Township School District v. Hartford Accident and Indemnity Co., 833 F.2d 32 (3rd Cir. 11/13/1987) The third circuit explains "(27)        The United States Supreme Court has recently elucidated the varying burdens upon the parties in the context of motions for summary judgment. In Celotex Corporation v. Catrett, …., the Court established that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."….

"The Pennsylvania courts have clearly enunciated the principles that insurance contracts may be considered contracts of adhesion, and if ambiguous, are to be construed

strictly against the insurer." Mohn v. American Casualty Co., 458 Pa. 576, 326 A.2d 346 (1974).

Exclusions in an insurance contract will be effective if clearly worded and conspicuously displayed. ...We review as well pertinent (state) law touching upon the burdens the different parties must sustain in insurance actions. ....The burden of proof of the insurance company that a loss comes within the scope of an exception or an exclusion is an affirmative one. It is only when the existence of facts constituting an affirmative defense is admitted by the insured, or is established by uncontradicted testimony in the insured's case, that such burden is removed from the insurance company". Repeating then "The burden of proof of the insurance company that a loss comes within the scope of an exception or an exclusion is an affirmative one... or is established by uncontradicted testimony in the insured's case, that such burden is removed from the insurance company."

Because the ABA used its privilege to opt out of the summary judgment process, Hall and Evans did so also. Although the plaintiff showed exactly how plaintiffs damages are covered under the relevant public officials errors and omissions insurance and employee crime insurance policies, the insurance company will not send a claims form, process a claim, or even have the claims personnel return plaintiffs' calls, although no other procedure is available. So default judgment on Hall and Evans is made appropriate because they failed to establish their burden of real issue for trial as required by the summary judgment process.

In addition to their bad faith insurance claims, plaintiffs have claims of malicious transferred intent from fellow Steamboat citizen and previous CITY litigant David Criste to the plaintiffs. In that case, some of the same defendants were openly discussing bankrupting the private party who had sued the CITY and city council with legal fees while at the same time not providing him a polite claims agent. What is really sad is that Criste was lawfully entitled to use a certain city law for "hardship variances" to place necessary exterior supports on his property because an unrelated licensed civil engineer made a design mistake (easy to do according to MIT) and the building department didn't

see a problem with the proposed wall locations from a structural point of view. It was

basically unforeseen until the project was half completed that the planned structure would

crack if additional supports not used. That met the definition of the law for an entitled

variance, not discretionary, for a hardship needing a variance of less than 10% caused not

by the party. The defendants churned that to avoid compensating him for years of

bullying by some of the same CITY employees and also to generate about $150,000-

$200,000 legal fees.


Going back to the same 3rd Circuit due process of law case: " The ultimate issue
in this summary judgment case is, then, whether the defendant ....has sustained its burden
of proof that the loss at issue comes within the scope of the insurance exclusion. We find
no substantive evidence to support the defendant's contention ....as the district court
properly noted, the literal words cannot be given their most inclusive meaning, but must
be read in reference to the context and circumstances. To do otherwise would be to render
the exclusion effective to bar coverage for situations clearly intended to be covered under
the policy….."

Hall and Evans, LLC only written acknowledgement of claims on it directly are

"plaintiff is thin-skinned" and a motion in opposition to the plaintiff having a copy of the

insurance policy, even though that is also required by the F.R.C.P (7?).


The 3rd Circuit continues "    Upon return to the district court, the insurance company
will have full adversarial opportunity to demonstrate ...(other theory) .but it cannot
defend on the theory that ....falls within the exclusionary clause of the policy."

The U.S. Supreme Court wrote "the standard for summary judgment set forth in
Rule 56(c) of the Federal Rules of Civil Procedure. Under Rule 56(c), summary judgment
is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as a matter of law." In our view,
the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate
time for discovery and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial. In such a situation, there can be "no
genuine issue as to any material fact," since a complete failure of proof concerning an
essential element of the nonmoving party's case necessarily renders all other facts

he

immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[The] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ." Anderson v. Liberty Lobby, Inc., ante, at 250...

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, if any" suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "with or without supporting affidavits" (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.... as we have already explained, a motion for summary judgment may be made pursuant to Rule 56 "with or without supporting affidavits." In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial..... ... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred. ... .... Instead, as we have explained, the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case........

The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored

17

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 EF.R.D.F 465, 467 (1984). Before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient .... defenses ....could be... prevented from going to trial..."

This is an interesting point because in Sieverding et al. Pro se v. Colorado Bar Association, the defendants also had factually insignificant defenses. Just as the Supreme Court says those lawyers tried to use "motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient .... defenses ....could be... prevented from going to trial...". But, Congress found that that wasn't fair. Too many people must have complained to their congressional representative. So, in 1938, Congress changed it. But under the leadership of the ABA, these defendants and the magistrate judge tried to pretend that this pre 1938 unregulated procedure could be used here and now. But it can't!

. The Supreme Court continues "But with the advent of "notice pleading," the motion to dismiss seldom fulfills this function any more, and its place has been taken by the motion for summary judgment. Rule 56 must be construed with due regard not only for the rights of persons asserting claims ... for the rights of persons opposing such ...defenses to demonstrate in the manner provided by the Rule, prior to trial, that the ...defenses have no factual basis. " CELOTEX CORP. v. CATRETT (06/25/86)

The Supreme Court also said, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."...

"As we stated in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., at 322. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id., at 323.... Celotex made clear that Rule 56 does not require the moving party to negate the elements of the nonmoving party's case; to the contrary, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." 477 U.S., at 323.... ....We assume, since it has been uncontested, that the allegedly affected interests set forth in the affidavits -- "recreational use and aesthetic enjoyment" -- are sufficiently related to the purposes of respondent association that respondent meets the requirements of § 702 if any of its members do. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333 (1977).... [1]     SUPREME COURT OF THE UNITED STATES

The Supreme Court wrote.... " That is not the law. In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Cf. Anderson v. Leberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint'"), quoting First National Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 290 (1968). Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.... LUJAN v. NATIONAL WILDLIFE FEDERATION ET AL. (06/27/90)

U.S. code 28 title v chapter 131 sect 2072 gives the Supreme Court power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

This authority is given subject to "Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

U.S.C. Title 28 part V Chapter 131 sec 2071 says f.) "No rule may be prescribed by a district court other than under this section."

F.R.C.P. 83 says "Rule 83. Rules by District Courts; Judge's Directives(a) Local Rules. . Each district court, acting by a majority of its district judges, may, after giving appropriate public notice and an opportunity for comment, make and amend rules governing its practice. A local rule shall be consistent with -- but not duplicative of -- Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075"..

So therefore, Judge Schlatter does not have the right to suspend the summary judgment process both because to do so would conflict with the Federal laws of Civil Procedure specifically and because he didn't have a public notice and opportunity for comment. His previous orders suspending conference requirements mandated by the local rules and his 7/31/03 "order granting the city defendants' motion to enjoin the further filing of pleadings and order enjoining plaintiffs from contacting any defendant or counsel for defendant" similarly violated the due process of law. These orders simply delayed the plaintiffs filings of motions for partial summary judgment and resulted in more work for the court and various continued loss of liberty, continued loss of access to the funds from their home, continued subjection to defamatory articles posted on the Internet, etc.

In fact, on 7/28/03 two days before this order suspending some rules of civil procedure rights for 3 and 1/2 months was entered, plaintiffs had emailed defense counsel Brougham about a motion for summary judgment they were working on. They mailed a motion for partial summary judgment on defendant Wittymer to the Court, and the defense counsel, not knowing of this order. It was received by the court the beginning of August but never entered nor returned.

This whole case then took a strange turn when a stranger emailed to the plaintiffs that he had considered buying their property (the un-built lot adjoining their previous

20

home). While he was looking at it with his wife and three children aged 1-4, he

encountered one of the defendants, the corrupt politician who lived across the street.

    The email says "Interesting ordeal.... I have my own Bennett story...." The
stranger continues "I was looking at a vacant lot next door to Bennett to purchase. When
we were walking the property with our three kids, we noticed the property below us and
thought it was a wonderful view. Just then Bennett came out of his house and met us. In
short, he said if any of us attempted to step foot on the property he would shoot us. He
also mentioned that if we built a home on the property he would put up a privacy fence so
we couldn't see the property that went down to the river. He scared the hell out of my
wife and kids. Needless to say we never went back to the property"

    When plaintiffs received this and other communications from the same party, they

immediately "fedExed" to the Court for permission to report the shooting threat to the

Steamboat police (who were contacts forbidden by the Judge). The clerks mailed the

package back that the Court would not accept it. What would have happened if the

threatening defendant had shot someone? He's under more stress now than before...and

previously chased one plaintiff and a babysitter down the street, snuck up behind another

plaintiff (18 inches), ignored four no trespassing signs to go into plaintiffs' yard and look

through their windows and then tease plaintiff Ed Sieverding then 15. Plus police records

show that there was a bullet hole through the plaintiffs' window (adjoining area where

alleged shooting threat was made) and the origin was never identified. A new family has

now purchased that lot and there is no reason to believe that they are aware of the threat

(although plaintiffs reported it to the real estate agents, the property seller, an attorney,

and the sheriff). What happens if they get shot when visiting their land tomorrow or

building this spring?

    Plaintiff emailed to the ABA defense counsel Patricia Larson "It is not as if he

(the magistrate judge) gave you an extension until after your grandmother's funeral. He

is trying to deny us our right to the summary judgment process. ....since I don't believe

that it would have come up if you hadn't used the ABA's clout to influence the judge, and

you haven't cited any legal basis for your claimed relief from responsibility to respond.  I

spent hours on the Supreme Court database and couldn't find any basis"

Wright and Miller says on page 248 of chapter 8 in summary judgment section 2714 "The purpose of the rule is to preserve the court from frivolous defenses and to defeat attempts to use formal pleading as means to delay the recovery of just demands….Certainly a salutary purpose, and hardly less essential to justice than the ultimate means of trial"

Wright and Miller says on page 254 of Chapter 8 in summary judgment section 2715 "According to Rules 56(a) and 56(b) both the claimant and the defending party may obtain a summary judgment upon all claims, cross-claims, or counterclaims or any parts thereof"

On page 246 Wright and Miller says on page 246 of the summary judgment in general section on page 246 "if none (disputed fact issues) appear….there is no reason to require a trial on the off-chance that one will develop."

In this case it has been 11 months since most of the defendants were served not

only with the initial complaint but also with a box of evidence some 780 pages in length

with a table of contents (see below).  No defendant has advanced any factual dispute.

Part of the evidence sent to each defendant (and the magistrate judge who refused

it see status conference 1/30/03) includes the following:

Table of Contents

From pleadings deemed "too long"

| | |
|---|---|
| Letter from KAY SIEVERDING to KEVIN MICHAEL BENNETT and JANE BENNETT 10/14/92 | E1 |
| Letter from JAMES B.F. OLIPHANT to the SIEVERDINGS dated 11/5/1992 | E2 |
| Letter from KAY SIEVERDING to Dick Buccino, CITY OF STEAMBOAT SPRINGS, 11/20/92 | E4 |
| Letter from Dick Buccino to KAY SIEVERDING (re 11/19/92) | E5 |
| Photo of barricade end of Princeton Ave and old street bed | E6 |
| Two photos showing end of Princeton Ave barricade and parking | E7 |
| Three photos showing trucks blocking visibility on Princeton Ave and Pahwintah | E8 |
| Photo showing SIEVERDING'S house on Princeton Ave pre 1977 and KEVIN MICHAEL BENNETT'S truck parked in front of it on the grass | E9 |
| Letter from KAY SIEVERDING to the BENNETTS, 10/11/93 | E10 |
| Letter from Ron Stock, City Attorney, CITY OF STEAMBOAT SPRINGS, dated 1/31/94 | E11 |
| Photo of Steitz house from SIEVERDING lot | E12 |
| Letter from KAY SIEVERDING to Kirk Madsen, CITY OF STEAMBOAT SPRINGS, 7/18/94 | E13 |
| Photo SIEVERDING'S circular drive—de facto street terminus | E13 |
| CITY OF STEAMBOAT SPRINGS police report, certified, dated 10/17/94 | E14 |
| Letter from KAY SIEVERDING to ANTHONY LETTUNICH dated 10/18/94 | E15 |
| Letter from KAY SIEVERDING to the BENNETTS dated 10/18/94 | E16 |
| Letter from KAY SIEVERDING to the BENNETTS dated 11/6/94 | E18 |
| Letter from KAY SIEVERDING to ANTHONY LETTUNICH, CITY OF STEAMBOAT SPRINGS, photocopy of handwritten original dated 11/7/94 | E19 |
| Letter from KAY SIEVERDING to City Council, CITY OF STEAMBOAT SPRINGS, dated 12/2/94 | E21 |
| Police report, CITY OF STEAMBOAT SPRINGS, CASE 95-2402, dated 05/10/95 | E23 |
| Two photos of fence owned by KEVIN MICHAEL BENNETT and JANE BENNETT between SIEVERDING'S property and the city row, about 60 feet from BENNETT'S property line | E35 |
| Letter from JAMES WEBER, public works director, dated 12/4/97 | E36 |
| Open records request regarding notes and letters between the CITY OF STEAMBOAT SPRINGS and KEVIN MICHAEL BENNETT concerning his fencing—(no records exist) | E37 |
| Photos of Princeton Ave winter 1999-2000 | E38 |
| CITY OF STEAMBOAT SPRINGS certified copy Public Works Correspondence to homeowners dated 4/6/99 | E39 |
| CITY OF STEAMBOAT SPRINGS police report dated 4/17/99 | E41 |
| Letter from KAY SIEVERDING to DANIEL FOOTE, assistant City Attorney, CITY OF STEAMBOAT SPRINGS dated 4/17/99 | E43 |
| Letter from KAY SIEVERDING to CITY ATTORNEY, Steamboat Code Enforcement | E44 |

| | |
|---|---|
| and Steamboat Police dated 4/18/99 | |
| Certified copy letter from Assistant City Attorney DANIEL FOOTE cc PAUL W. HUGHES, city manager, ANTHONY LETTUNICH, city attorney, and LORI CLARK, code enforcement regarding KAY SIEVERDING'S stated wish to landscape in front of her house dated 4/20/99 | E45 |
| Letter from KAY SIEVERDING to PAUL W. HUGHES dated 4-28-99 | E47 |
| Pictures of landscaping by neighbors on Princeton Ave. and Pahwintah | E49 |
| Pictures of landscaping by KAY SIEVERDING on Princeton Ave. | E51 |
| Letter from KAY SIEVERDING to PAUL W. HUGHES re landscaping dated 4/29/99 | E52 |
| Certified copy letter from PAUL W. HUGHES, city manager, to KAY SIEVERDING regarding gardening cc Lori Clark and DANIEL FOOTE, dated 05/06/99 | E53 |
| Certified copy of "trimming permit issued by the City Manager" | E55 |
| Response by the CITY OF STEAMBOAT SPRINGS to request for a "trimming permit issued to anyone other than KAY SIEVERDING" dated 12/13/2000 | E57 |
| Certified copy of letter from PAUL W. HUGHES to KAY SIEVERDING concerning citation for unauthorized trimming, cc JD HAYS, Lori Clark, DANIEL FOOTE dated 6/15/99 | E58 |
| Two photos of Princeton Ave in Spring 1999 (crabapple tree in bloom) showing parked cars and lack of turning facility | E60 |
| Two photos comparing the branches that KAY SIEVERDING trimmed with the branches that KEVIN MICHAEL BENNETT, or his agent, trimmed on same or neighboring trees | E61 |
| Two photos of trimmed trees from different angles | E62 |
| Two photos of intersection of Princeton and Pahwintah | E63 |
| Original copy of summons for unauthorized tree trimming showing mandatory court appearance no fine or penalty payment option | E64 |
| Memo from KAY SIEVERDING to PAUL W. HUGHES re landscaping dated 6/29/99 | E65 |
| Draft stipulation and order for deferred prosecution CITY OF STEAMBOAT SPRINGS case #24280—offense of trimming permit required faxed from 9708798851 8/3/99 | E66 |
| Response from CITY clerk CITY OF STEAMBOAT SPRINGS for open records request for written communication between the City and property owners concerning trimming trees dated 08/13/99  (no records on file) | E70 |
| Response from CITY clerk CITY OF STEAMBOAT SPRINGS for open records request for 5 locations of city property in residential areas that city has maintained in last year dated 8/13/99 | E71 |
| Letter from KAY SIEVERDING to PAUL W. HUGHES dated 8/6/99 regarding Siberian Pea, weeding and landscaping | E72 |
| Certified copy of letter from PAUL W. HUGHES to KAY SIEVERDING on 08/09/99 | E73 |
| First draft "Arrested for Gardening" flyer distributed on Princeton Ave outside JANE BENNETT'S yard sale submitted by JANE BENNETT to Routt County Court 00c180 | E76 |
| Original copy newspaper article Steamboat Pilot Newspaper "City spends $4,000 to mediate" dated 6/28/2000 with advertisement by TOM SIEVERDING'S friend Jonus's mother (Steamboat Blueprint) | E77-E79 |
| Memo from KAY SIEVERDING to CITY manager re prosecution dated 8/17/99 | E80 |
| Letter from Mary Hayes, municipal court clerk re trial | E81 |
| Contracts sent from city mediator Bridget O'Rourke to KAY SIEVERDING and DAVID | E83-A-E9 |

| | |
|---|---|
| SIEVERDING on10/6/99 | |
| Certified copy of letter from Bridget O'Rourke to PAUL W. HUGHES and an invoice for mediation services dated 10/24/99 | E93-E96 |
| CITY OF STEAMBOAT SPRINGS Project location map for Vacation of 701 Princeton | E97 |
| Emerald Mountain Survey showing "Legal D" land to be sold by DAVID SIEVERDING and KAY SIEVERDING to KEVIN MICHAEL BENNETT and JANE BENNET for $1 | E98 |
| Court certified copy of check for $1 from JANE BENETT to DAVID and KAY SIEVERDING for Legal D | E99 |
| Building permit application S-00-106 BENNETT SUBDIVISION dated 5/1/00 | E100 |
| "Letter of Responsibility" signed by KEVIN MICHAEL BENNETT on 5/25/2000 from Routt County building permit file # S-00-106 dated 5/25/00 | E101 |
| Photocopy portion of letter from Lois Macfarlane, 815 Pahwintah Street sent to SCOTT WOODFORD, CITY OF STEAMBOAT SPRINGS dated 5/29/00 saying "Today when Mr. And Mrs. Bennett were over to see me…whatever Mrs. Sieverding wants, she gets, and she doesn't care who she hurts" | E102 |
| Memo re parking hanging out of BENNETT'S drive | E103 |
| Photos re parking hanging out of BENNETT'S drive | E104 |
| Letter from KAY SIEVERDING to City council president dated 6/10/00 | E105 |
| Letter from CITY clerk re contract for legal services with ANTHONY LETTUNICH | E106 |
| Letter from KAY SIEVERDING to RICHARD TREMAINE dated 6/19/00 | E107 |
| Memo from KAY SIEVERDING to J.D. HAYS dated 6/21/00 | E108 |
| Letter from Diana Margolin dated 7/3/00 | E109 |
| Email from KAY SIEVERDING to Tom Ross (Steamboat Pilot Newspaper) 7/12/00 | E110 |
| Email from Edward Serr to KAY SIEVERING dated 7/19/00 | E111 |
| Certified copy of public correspondence received by the Steamboat Springs Planning Department from Georgia A. Taylor | E112 |
| Certified copy of letter from SCOTT WOODFORD to KAY SIEVERDING dated 7/21/2000 E115 Letter from CITY clerk re pull down staircase dated 3/15/01 | E118 |
| Certified copy of email from KAY SIEVERDING to various city council members dated 7/26/200 | E119 |
| Plaintiff's exhibit 00c180 email from KAY SIEVERDING to SCOTT WOODFORD, WENDIE SCHULENBURG, PAUL W. HUGHES  dated 7/13/00 | E127 |
| Email from KAY SIEVERDING to WENDIE SCHULBURG re info request 7/19/00 | E128 |
| FAX from KAY SIEVERDING to the CITY OF STEAMBOAT dated 6/26/00 | E123 |
| Plaintiff's exhibit 00c180 email from KAY SIEVERDING to ARIANTHE STETTNER Dated 7/19/00 | E129 |
| Letter from KAY SIEVERDING to BENNETT'S dated 7/25/00 | E130 |
| Injunctive relief requested dated 7/25/00 | E131 |
| Entry of appearance and motion to dismiss oocv83 KLAUZER & TREMAINE | E135 |
| Newspaper article "City council president, neighbor going to court" 7/27/2000 | E137 |
| Exhibit 11 Municipal code sold by CITY OF STEAMBOAT SPRINGS | E138 |
| Minute order oocv83 dated 7-27-00 | E139 |
| Certified copy email dated 7-24-00 from KAY SIEVERDING to KEN BRENNER | E140-143 |
| Note and photo to Code Enforcement SANDY FIEBING dated 7/25/00 | E144 |
| Email from KAY SIEVERDING to SCOTT WOODFORD dated 7/26/00 | E145 |

| | |
|---|---|
| Memo from KAY SIEVERDING to code enforcement dated 7/28/00 | E146 |
| Letter from CITY clerk regarding an example of a location where Planning has classified 2nd floor Space with no ramp or direct access as garage | E148 |
| Request for special prosecutor by KAY SIEVERDING | E149 |
| Denial of request for special prosecutor by RICHARD P. DOUCETTE | E150 |
| Two emails from KAY SIEVERDING to ART FIEBING et al dated 8/1/00 | E151 |
| Police department trespass warning | E153 |
| Handwritten note from KAY SIEVERDING to SANDY FIEBING dated 7/26/00 | E154 |
| First page Marbury V. Madison downloaded from Internet on 8/2/00 | E154B |
| Improvements to non-conforming shed | E155 |
| Formerly overhang area used for wood storage | E156 |
| Plaintiff's Exhibit 3C Case Number 00C180 | E157 |
| KEVIN MICHAEL BENNETT'S building permit application | E158 |
| Code Enforcement log | E159 |
| Plaintiff's Exhibit 3D Case Number 00C180 | E160 |
| Letter from CITY OF STEAMBOAT SPRINGS regarding certified copy of email dated 8-11-00 to Bud Romberg | E161-163 |
| Plaintiff's Exhibit 3D Case Number 00C180 | E164 |
| Leaflet circa August 2000 | E165 |
| Letter from CITY OF STEAMBOAT SPRINGS regarding certified copy of email dated 8-25-00 to Sandy Fiebing | E166-168 |
| Letter from CITY OF STEAMBOAT SPRINGS regarding Collette Erickson job description | E169 |
| 1ST page Marbury v. Madison downloaded 8/2/00 | E170 |
| Letter from CITY OF STEAMBOAT SPRINGS regarding certified copy of Candice Noriega construction request and Scott Woodford's answer. | E171-174 |
| Police Report for incident on August 29, 2000. | E175-180 |
| JANE BENNETT'S parking location 8-26-00 and BENNETT wood storage on KAY SIEVERDING'S side of Princeton Ave | E181 |
| Email to HUD 8-30-00 | E182 |
| Email to SANDY FIEBING dated 8/2/00 | E183 |
| Email to KEN BRENNER dated 8/8/00 | E184 |
| Email to Lauren Mooney dated 8/9/00 | E185 |
| Email to KATHY CONNELL dated 8/21/00 | E186 |
| Email to KEVIN MICHAEL BENNETT dated 8/30/00 | E187 |
| Receipt from District Attorney office re Kirby Blackmun | E188 |
| Photograph of Merritt Street where JANE BENNETT accused KAY SIEVERDING of trying to hit as they both drove down Merritt Street to their respective homes. | E190 |
| Picture of BENNETT woodpile in front of KAY SIEVERDING'S yard and picture of BENNETT guest drive where JANE BENNETT parked on August 26, 2000. | E191 |
| BENNETT'S garage on August 26, 2000. | E192 |
| Summons for harassment signed only by JANE BENNETT and delivered to KAY SIEVERDING by officer Paul Timmons on September 2, 2000. | E193 |
| Altered summons. | E194 |
| Letter from J.D. Hays that accompanied exhibit E194 | E195 |

| | |
|---|---|
| Letter from KAY SIEVERDING to JUDGE JOEL THOMPSON dated 8-30-00 regarding restraining order 00C180. | E196-197 |
| Letter from KAY SIEVERDING to JUDGE JOEL THOMPSON dated 9-01-00 regarding restraining order 00C180. | E198-201 |
| Email to Steamboat Springs City Council regarding ethics conference | E202 |
| Photo September 5,2000 City Council meeting where KEVIN MICHAEL BENNETT called for bailiff to stop DAVID SIEVERDING from speaking out on "rule of law". | E203 |
| KEVIN MICHAEL BENNETT building plan descriptions | E204-205 |
| Application for restraining order signed by JANE BENNETT (gap in numbering from 202-307) | E206-207 |
| Letter from CITY clerk about no records of ANTHONY LETTUNICH'S qualifications or oath | E208 |
| Letter from CITY clerk about freedom of information act requests | E209 |
| Yellow page listing for attorneys Steamboat Springs | E210 |
| Colorado Bill of Rights footnotes | E211-215 |
| Transcript 00c180, August 31, 2000 | E216-E22 |
| Transcript 00c180, September 6, 2000 | E229-415 |
| First page of Steamboat Today newspaper article dated September 7, 2000 entitled "Restraining order issued against Sieverding" | E416-417 |
| Letter from KAY SIEVERDING to the police department requesting the investigation of KEVIN MICHAEL BENNETT, COLLETTE ERICKSON AND PAUL W. HUGHES for possible felonies in conjunction with land for dropped charges deal. | E418-E42 |
| Photographs of KEVIN MICHAEL BENNETT'S construction send to city council on 9-12-00 | E421 |
| Police report on possible restraining order violation on 9/12/00, no action taken | E422-426 |
| Letter from DIETZE AND DAVIS, P.C. declining to represent KAY SIEVERDING | E427-428 |
| Information on shortening of road | E429-E43 |
| Email re Schulenburg job description | E432 |
| Email to WENDIE SCHULENBURG dated 10-14-00 | E433 |
| Letter for CITY clerk saying that there is no record of response by city to evidence submitted showing that the shed at 701 Princeton Avenue is being expanded. | E434 |
| Letter from United States attorney referring our case to the FBI | E435 |
| Police report requesting BENNETT trespass warning | E436 |
| Photos completed BENNETT buildings | E437 |
| Photos Princeton Ave winter post Bennett construction | E438 |
| Letter from Thomas Strickland office re can't help | E439 |
| Letter from CITY clerk re technical assistance to council members | E440 |
| Letter from City Clerk re police entry | E441 |
| Letter from City Clerk re BENNETT multi building sewer permission | E442 |
| Letter from City Clerk re non investigation | E443 |
| Letter from State of Colorado Office of Attorney General | E444 |
| Letter from State of Colorado Office of Attorney General to PAUL MCLIMANS | E445 |
| Letter from KAY SIEVERDING to City Clerk, copy to Attorney General | E446 |
| Letter from KAY SIEVERDING to KEN SALAZAR and local justice system | E447 |
| Letter from J.D. HAYS to DAVID SIEVERDING | E448 |

| | |
|---|---|
| Email exchange KAY SIEVERDING and Colorado Office of Attorney General | E449 |
| Email exchange KAY SIEVERDING and WENDIE SCHULENBURG | E450 |
| Letter from JANE BENNETT to district attorney's office | E451-E45 |
| Letter from SANDRA H. GARDNER to ELIZABETH WITTEMEYER (Wittemeir) dated 11/13/2000 | E453 to E456 |
| Letter from PAUL MCLIMANS' office/KERRY ST. JAMES | E457 |
| Letter from WENDIE SCHULENBURG dated 7/13/00 annotated by KAY SIEVERDING and sent to city council on 12/1/01 | E458-E46 |
| Colorado Statute First Degree Official Misconduct | E465 |
| City Planning communication form signed by WENDIE SCHULENBURG | E466-E46 |
| Mailing receipts ANTHONY LETTUNICH | E469 |
| Certified copy of notice of intent to sue | E471-E48 |
| Amendment of notice of intent to sue 12/13/00 | E484 |
| Letter from Colorado Attorney General's office | E485 |
| Email KAY SIEVERDING and WILLIAM HIBBARD re police | E568 |
| Certified copy Colorado traffic code related to parking in front of drive | E487-490 |
| Letter from CITY clerk re measurement of BENNETT'S driveway (33 feet does not cover 15 foot plow easement plus one parking space | E491 |
| Letter from city planning office re comments about replat (no mention of any driveway problem) | E492 |
| City technical advisory committee | E493 |
| Letter re Copy of driveway permit requested | E494 |
| Certified copy job description code enforcement | E495-E49 |
| Letter from CITY clerk re no records of code inspections | E500 |
| Certified copy job description for public works | E501-E50 |
| Letter from CITY clerk re driveway location regulation | E508 |
| Letter from CITY clerk re letters concerning KAY SIEVERDING | E509 |
| Letter from CITY clerk re example requested of location where city has exempted an apartment from calculation of open space | E510 |
| Letter from CITY clerk re response to problem of shed expansion and conversion to dwelling unit | E511 |
| Letter from CITY clerk re special dispensation to City council members to violate | E512 |
| Letter from CITY clerk re amendment to job descriptions | E513 |
| Letter from WILLIAM C. HIBBARD re driveway | E514-515 |
| Letter from neighbor, Jan Serafy, to city planning re driveway should be allowed | E516 |
| Letter from CITY clerk re no record of investigation | E517 |
| Letter from CITY clerk re legal authorization to interpret or apply code contrary to what is written | E518 |
| Letter from CITY clerk re authorization of Chief of Police to interpret traffic regulations differently than what is written | E519 |
| Letter from CITY clerk re no record of variance possibility at 701 Princeton | E520 |
| Letter from Gary Gurney, LPC re ski pass refund | E521-522 |
| Newspaper article "Woman in harassment case gets trial" | E523 |
| Letter from CITY clerk re no public record of law regarding driveway access | E524 |
| Letter from CITY clerk re FOOTE communications | E526 |

| | |
|---|---|
| Letter from CITY clerk re letter from JAMES WEBER re Sieverding driveway | E527 |
| Email from JAMES WEBER re Sieverding driveway | E528 |
| Letter from WILLIAM C. HIBBARD re Sieverding driveway | E529 |
| Letter from CITY clerk re communications with BENNETTS re code violations | E530 |
| Letter from CITY clerk re correspondence with BENNETTS or various people regarding code violations at BENNETT'S residence | E531 |
| Email to ART FIEBING re BENNETT'S trespass | E532 |
| Letter from CITY clerk re compliance by BENNETT'S with ordinance 17-62(1) | E533 |
| Letter from KAY SIEVERDING to BRIAN BAVOSI re code violations | E534 |
| Letter to LETTUNICH delivered to city hall (page 1, same letter brought to office) | E535 |
| Letter to ANTHONY Lettunich re secret SIEVERDING driveway meeting and ED SIEVERDING and receipt from LETTUNICH's Office | E536, E536-537 |
| Photo BENNETT garage building dumping snow, location of SIEVERDING lot drive | E538 |
| Photo SIEVERDING house from Princeton Ave post landscaping (2001) | E539 |
| Photo Princeton Ave 2001 | E540 |
| Letter from CITY clerk re water and sewer deed language required for SIEVERDING's Lot but not for BENNETT's Lot | E541 |
| Motion to dismiss People v. SIEVERDING | E542-543 |
| Email from KAY SIEVERDING to ANTHONY LETTUNICH re attempted extortion | E544 |
| FAX from ANTHONY LETTUNICH to WILLIAM B. HIBBARD re complaint that KAY SIEVERDING should not be allowed to deliver documents to his office | E545 |
| Form from JUDGE JAMES H. GARRECHT re probable cause information not received | E546 |
| Newspaper article "Harassment charges dismissed" | E547 |
| Letter from P. ELIZABETH WITTEMEYER responding to request for probable cause | E548 |
| Certified copy letter from JANE BENNETT requesting that Sieverding's not be allowed a driveway permit | E549-551 |
| Certified copy letter from BRIAN BAVOSI to JANE BENNETT | E552 |
| Photos showing BENNETT's lot line which he claimed KAY SIEVERDING crossed | E556 |
| Letter from CITY clerk re code inspections at Princeton Ave. (ordinance 17-154-1) | E557 |
| Letter from CITY clerk re code inspections at Princeton Ave (ordinance 26-188 4B) | E558 |
| Letter from CITY clerk re code inspections on Princeton Ave (ordinance 17-163-2, 17-155(2) and 17-156 (2) | E559 |
| Letter from CITY clerk re code inspections on Princeton Ave (ordinance 26-148 and 26-147C) | E560 |
| Letter from CITY clerk re code inspections on Princeton Ave (ordinance 26-149B) | E561 |
| Letter from CITY clerk re code inspections on Princeton Ave (ordinance 25-127 and 15-128) | E562 |
| Letter from CITY clerk re no oath of office for Planning Commission members | E563 |
| Email from KAY SIEVERDING to BRIAN BAVOSI dated 4/7/01 | E564-565 |
| Photo SUV turning in BENNETT's "guest driveway" | E566 |
| Letter from BRIAN BAVOSI to KAY SIEVERDING | E567 |
| Letter from CITY clerk re BENNETT floor plans copy request | E568 |
| Certified copy annotated copy of city ordinances submitted by KAY SIEVERDING to CITY council on 5/1/01 | E569-E58( |
| Letter from CITY clerk re no record of variance on Driveway angle given to | E591 |

| BENNETTS | |
|---|---|
| Letter from CITY clerk re amendments to job description Planning service director or code enforcement officer. | E592 |
| Letter from CITY clerk re no record of dual access driveway permit at Boulevard and Yahmonite | E593 |
| Letter from CITY clerk re no record of dual access driveway permit at 701 Princeton | E594 |
| Copy of U.S.C. 42 sections 1983, 1985 and 1986 distributed by KAY SIEVERDING to city policy makers on 5/29/01 | E595-597 |
| Letter from KAY SIEVERDING to city council on 5/15/01 | E598-599 |
| Letter from CITY clerk re code compliance at 701 Princeton | E600 |
| Letter from CITY clerk re document relied on by KATHY CONNELL | E601 |
| Letter from CITY clerk re record relied upon by BRIAN BAVOSI | E602 |
| Certified copy blank drivewa permit (non existent) | E603 |
| Letter from CITY clerk re follow up to complaints re perjury | E604 |
| Letter from CITY clerk re gardening ordinance—no revisions | E605 |
| Letter from CITY clerk re investigation insider real estate trading | E606 |
| Certified copy email exchange TRACEY HUGHES and KAY SIEVERDING | E607 |
| Copy of Certified copy Email exchange from TRACEY HUGHES to KAY SIEVERDING | E613 |
| Email from KAY SIEVERDING to TRACEY HUGHES | E614 |
| Text read by KAY SIEVERDING to city council on 9/19/2000 | E614B E614 c |
| Letter from KAY SIEVERDING to city policy makers 6/25/01 with signature by city receptionist | E615 |
| Letter from Tim McHARG to KAY SIEVERDING | E616 |
| Email from KAY SIEVERDING to TIM MCHARG | E617-618 |
| Flyer "End government corruption in Steamboat" distributed at 4th of July parade | E619 |
| Letter from KAY SIEVERDING to JUDGE JAMES H. GARRECHT 7-11-01 | E620-621 |
| Letter from KAY SIEVERDING to CHARLES LANCE and PAUL MCLIMANS | E622-E62 |
| Letter from KAY SIEVERDING to JUDGE JAMES H.GARRECHT 7-14-01 | E625 |
| Letter from KAY SIEVERDING to JUDGE JAMES H. GARRECHT 7-19-01 | E626 |
| Certified copy "city page" re landscaping | E627-628 |
| Letter to KAY SIEVERDING from JOHN D. MERRILL | E629 |
| Motion to deny change in restraining order dated 7/26/01 | E630-e631 |
| Certified copy letter from KAY SIEVERDING to the City of Steamboat dated 7/24/01 | E631-632 |
| Letter from CITY clerk re driveways at BEAUREGARD residence | E633 |
| Letter from CITY clerk re administrative changes re driveways | E634 |
| Cover letter certified copy tape recording city council meeting public comment on 7/13/01 | E635 |
| Cover letter certified copy tape recording city council meeting public comment on 5/1/01 | E636 |
| Amendment of notice of intent to sue dated 5/11/01 | E638 |
| Letter from CITY clerk re research dated 9/26/01 | E639 |
| Text KAY SISEVERDING read to CITY COUNCIL on 10/16/01 | E640-641 |
| Letter from KAY SIEVERDING to city policy makers on 10/8/01 | E643-645 |
| Letter from KAY SIEVERDING to city policy makers on 11/1/01 | E646 |

| | |
|---|---|
| Notice of intent to sue dated 11/3/01 | E647-649 |
| Advertisement for lawyer | E650 |
| Photos of BENNETT garage building | E651 |
| Letter from KAY SIEVERDING to Colorado Commission on Judicial Discipline | E652-653 |
| Followup 12/6/01 on Letter from KAY SIEVERDING to Colorado Commission on Judicial Discipline | E654-655 |
| Letter from KAY SIEVERDING to Wendy Dubord | E656 |
| Letter from KAY SIEVERDING to JUDGE JAMES H. GARRECHT | E657 |
| Email from KAY SIEVERDING to DAVE BROUGHAM | E658-659 |
| Letter from KAY SIEVERDING to Governor BILL OWENS dated 12/26/01 | E660-662 |
| Table of contents CITY revised ordinances | E663-665 |
| Email from KAY SIEVERDING to JAMES WEBER 8/27/01 | E667 |
| Email from KAY SIEVERDING to JAMES WEBER 8/28/01 | E668 |
| Email from KAY SIEVERDING to JAMES WEBER dated 8/30/01 | E669 |
| Response to Motion to Modify Restraining Order | E670-672 |
| Letter from KAY SIEVERDING to JUDGE JAMES H. GARRECHT 9/21/01 | E673--678 |
| Letter from KAY SIEVERDING to City policy makers faxed from BENNETT, submitted to court | E679-679c |
| Letter from KAY SIEVERDING to city 10/8/01 | E679D-679F |
| Response to second motion to modify restraining order | E679G-I |
| Letter from KAY SIEVERDING to PAUL W. HUGHES dated 11/14/01 | E679L |
| Letter from PAUL W. HUGHES re research request | E680 |
| Letter from KAY SIEVERDING to PAUL W. HUGHES dated 12/1/01 | E681-684 |
| Email from KAY SIEVERDING to CITY clerk dated 12/12/01 | E685-687 |
| Letter from KAY SIEVERDING to PAUL L. MCLIMANS dated 12/21/01 | E688-689 |
| Email from KAY SIEVERDING to DAVID BROUGHAM at Hall and Evans 1/5/02 | E670-673 |
| Letter from KAY SIEVERDING to J.D. HAYS dated 1/11/02 | E674 |
| Letter from J.D. HAYS to KAY SIEVERDING re permanent record | E675 |
| Email from KAY SIEVERDING to J.D. HAYS | E676 |
| Letter from KAY SIEVERDING to CHARLES LANCE | E677 |
| Harrassment statute annotated | E678 |
| Fax from CHARLES LANCE re probable cause | E679-700 |
| Email from KAY SIEVERDING to attorney general | E701 |
| Email from KAY SIEVERDING to "stop.fraud@state.co.us | E702 |
| Email from KAY SIEVERDING to "governorowens@state.co.us" | E703 |
| Letter from KAY SIEVERDING to PAUL MCLIMANSand CHARLES LANCE 7/11/01 re P. Elizabeth WITTEMYER (A.K.A. Elizabeth Windemere) | E704-705 |
| Letter from CITY clerk re entire file on 701 Princeton | E706 |
| Real estate listing Sieverdings' former lot | E707 |
| Real estate listing SIEVERDINGS' former home | E708 |
| Wall Street Journal Ad for ski resort to be sold by ELIZABETH WITTEMYER's husband | E709 |
| SIEVERDING report to police on falsification of records 8/21/02 | E710 |
| Excerpts file on Subry variance | E711-722 |

| | |
|---|---|
| Wall Street Journal article "Criminal background Checks stir Disputes as Parents are Barred from Classroom" | E723 |
| Return of service earlier draft law suit 6/17/02—MCLIMANS and WITTEMYER | E724 |
| Return of service earlier draft law suit 4/26/02 DAN FOOTE | E725 |
| Return of service earlier draft law suit 6/17/02 JUDGE JAMES H. GARRECHT, | E726 |

Anyone seeing this list must know that use of the partial summary judgment process will greatly simplify this case.

Wright and Miller says on page 245, chapter 8 section 2713 that supposedly "summary judgment comes at a relatively early stage in the litigation".

In this case, plaintiff made their first summary judgment motion as early as they could.

Wright and Miller says on page 232-233 Chapter 8 section 2713 "A Rule 56 motion may be made by plaintiff before the responsive pleading is interposed"...The ruling on a motion to dismiss for failure to state a claim for relief is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint".

On page 218 Chapter 8 section 2712 Wright and Miller says "This court (2nd circuit) has frequently cautioned against use of summary judgment procedure in cases for which that procedure is not designed...it has been equally insistent, however, that in the kind of case defined in Rule 56, where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgments are looked upon with favor". Freeman v. Continental Giv Co, 1967.

Wright and Miller is a multi-shelf leather bound treatise on the law of federal procedure. It actually has a chapter entitled "When a Summary Judgment Motion May Be Made". This is in Chapter 8 section 2717 starting on page 296.

This discussion addresses the current situation in which the judge, after the defense wrote a "letter motion in lieu of formal motion" without citing a legal basis, as required by the FRCP, for permission to avoid the summary judgment response requirement and asked the Court to "call" giving a direct dial phone number.

"As originally adopted, Rule 56(a) provided that a party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment might move for

a summary judgment at any time after a responsive pleading had been served. As a result, plaintiff could not seek summary judgment until after defendant had served an answer. This gave defendants a tactical advantage since they could move for summary judgment before answering, but plaintiffs could not pursue the same course until after the answer was served. In addition, a considerable period might pass before the responsive pleading was served if defendant interposed one or more preliminary motions or secured a stipulation extending the time to answer. The 1948 amendment changed Rule 46(a) to allow a claimant to move for summary judgment at any time after the expiration of 20 days from the commencement of the action….The Advisory Committee Note to the amendment states that this change was made "in the interest of more expeditious litigation" and that "the 20 day period…gives the defendant an opportunity to secure counsel and determine a course of action." Wright and Miller

In summary then, not only does the magistrate judge not have the right to order the defendants not to respond to summary judgment, but they, being lawyers of great education and competence, never belied that he did.

Because plaintiffs met their burden in 02-cv-1950 of establishing both defendants' liability and the sum certain amount of their damages, the $15,000,000 plus 12% interest became their property. Defendants, essentially, stole the judgment from them by their criminal collusion, therefore by the doctrine of replevin, it must be returned.

"An action in replevin lies to recover possession of personal chattels that are unlawfully detained… there is a tortuous taking whenever there is an unlawful meddling with the property…without any pretense of authority or right" *American Jurisprudence Volume 66 Section 24*

"A cause of action is a form of property. A plaintiff may bring an action under RICO for interference with another lawsuit." (Proper RICO standing is adequately pled where plaintiffs have established expense delay and inconvenience.) West Lawyers Edition 10:158

The 02-cv-1950 defendants' defense was a form of their real property, however, they failed to defend on the merits and voluntarily waived that property:

"As a general thing, it is well settled that a holder on an interest in real xx property who fails to disclose his interest pertaining thereon... or a proceeding involving it is pending, may be estopped to impugn the validity... of the proceedings." *American Jurisprudence Second 28 Section 102.*

Because the rules of evidence were violated, Magistrate Schlatter's misstatements

of the evidence must be disregarded. The defendants caused and ratified the illegal

litigation conduct and have unclean hands.

"Waiver or estoppel results if the grantor itself causes or joins in the breech of a condition or prevents performance of the thing required... if he consents to the act of the breech or to things done in contemplation of the breech and in direct relation thereto" *American Jurisprudence Second 28 Section 167.*

"He who has committed inequity shall not have equity." *American Jurisprudence Second 28 Section 1.*

"A suit in equity may be sustained in favor of a who will be the plaintiff in a prospective action in law, in order to enjoin the defendant in such prospective action from setting up a threatened defense upon the ground that the prospective defendant is equitably estopped from setting up such defense where the remedy at law of the plaintiff will not be plain, adequate and neat." *American Jurisprudence Second 28 Section 134 referencing United States Supreme Court Davis v Wakellee and Sprigg v Bank of Mount Pleasant.*

Almost three years have lapsed since the defendants should have contested the evidence

if they had wanted to. During that time defendants have broadcast fraudulent statements

to the prospective witnesses. Sieverding cannot be expected to dispute defenses' new

objections to evidence at this time. That would be inequitable.

"Estoppel may arise either from objection to the introduction of evidence or from failure to object... A litigant may not complain of the admission of testimony over his objection where like testimony had previously been admitted without objection." *American Jurisprudence Second 28 Section 75.*

In every litigation with plaintiffs, the defense has induced the judges to illegally

rely exclusively on the magistrate's fraudulent Report and Recommendation, knowing

that the Supreme Court cannot make a judgment based only on that.

Under Rule 60 (b) (3), adjudicative relieve must be grated by the non-rendering court when an action is brought alleging, "fraud… defiled the court itself or… perpetuated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases… shows an unconscionable plan or scheme which is designed to improperly influence the courts decision… and exist… where there has been the most egregious conduct involving a corruption of the judicial process itself." *American Jurisprudence Second 47 Section 886, page 362.*

The 60 (b) (3) process is a safeguard applicable in all situations in which the court's litigation process has been corrupted. Not only are the plaintiff's fundamental rights at stake, but also are the general public's right to fair litigation.

Verification: The plaintiffs hereby declare under penalty of perjury that to the best of their knowledge and belief everything included in this document, and all other documents filed with the Court, is true and correct.

Kay Sieverding

Ed Sieverding

Tom Sieverding

Service by ECF

36