United States Court   District of Columbo

Sievending                              05-cv-~~~~~~ 01283
                                                        v
ABA et al.                              RMU

Plaintiff's affidavit, exhibit, and Requests
for Admission by STATE of COLORADO and CBA.
Affidavit    and other defendants
                                    ↑s
        Plaintiff Kay sievending ~~ disapproves
of government corruption and thinks that
government corruption is very costly to
society and should by systematically reduced.
Plaintiff is totally convinced that an
individual OR A FEW people CAN
change history.
        In 1981-1982, plaintiff (under
name Kay Anderson) worked as a
"senior systems analyst" in Regulation
& Surveillance at the NYSE. There she
worked with the FOCUS System, which
involved tracking Member cash to
Customer holdings positions. She
tried to convince department
management to use this data to
analyze the business patterns of
NYSE floor brokers but they refused.

①

Recently, there were articles in the Wall Street Journal about SCANDALs and indictments involving the NYSE floor brokers. As soon as she read about that, she thought that if the NYSE had followed her suggestions in 1982, these improprieties might have been deterred.

In 1994, Sieverding reported twice to the Steamboat police that three different parties had told her that defendant Kevin Bennett, her former neighbor and, at the time, a city council member, was a cocaine dealer. However, the police did not respond to her reports. She developed a theory, supported by additional heresay and facts, that the underlying Events affecting her in Steamboat were advanced and enabled by a local justice system involving selling of drug evidence, payoffs to the police, and cocaine-related blackmail.

Sieverding has now been in a county jail, with many federal prisoners on contract with the U.S. Marshalls, for

②

80 days. Sieverding has tried to use this time productively by studying law and the criminal justice system. She has talked to her fellow inmates extensively.

VANESSA Rohde was one of her fellow inmates for about one week. Miss Rohde approached Mrs. Sieverding and said that she had heard that Mrs. Sieverding was in jail for "Contempt of court."

Miss Rohde told Mrs. Sieverding that she thinks the Colorado judicial system is "totally corrupt". Miss Rohde said that she was saying this on the basis of what her parents had told her. She discussed this with Mrs. Sieverding on three different occasions and in front of other inmates.

Miss Rohde said that her father Bruce Rohde is a lawyer who sells cocaine to Colorado lawyers and judges. She said her father is very successful. She said her father went to Yale LAW School. She said her father had worked

③

for a firm called Davis and ——— which
was on 16th Street in Denver, and
that the firm was known as a legal
"Mafia" and that now her father is
independent but is a "silent partner"
in his old firm.

VANESSA Rohde told Mrs. Sieverding
that she wants to become a lawyer
herself and "change the system".

Ms. Rohde said that the reason
her mother divorced her father is that
she caught him with a large
container of cocaine. She said her
father sells cocaine to lawyers and
judges. She said that when her parents
had their property dissolution in court,
her father paid a woman judge to
get "pneumonia" for one day and that
a retired judge was brought in for
that day and that her father had
pre-arranged with him to get a
better deal.

Ms Rohde wrote down her
home address at 21645 Indian Springs
Conifer CO 80433 for Mrs Sieverding

④

and she saved it (see attached).

SIEVERDING first reported this conversation in "motion for special prosecutor". SIEVERDING thought that if she reported this anonymously to the CBI that they would arrange some sort of "sting" operation and catch some judge. However, the Colorado Bureau of Investigation had previously told the Sieverdings that they don't take reports directly from citizens.

SIEVERDING wrote twice to John Suthers Colorado Attorney General, once to CBI c/o Colorado Attorney General, and once to "Investigations" Colorado Attorney General and asked them to have the CBI contact her so that she could tell everything she knew about a lawyer who supposedly sells cocaine to judges but they never called or contacted her.

A different inmate told Sieverding on 1/20/05 that the current judge of Summett Cornty Co was arrested for purchase of cocaine but that the charges were dropped, or reduced, and now he is a judge.

⑤

The live-in fiance of Joel Thompson the judge in Steamboat Springs CO, who 1st issued a TRO on Sieverding, was accused by the Steamboat Police and the DEA of being a cocaine trafficker.

Sieverding applied to Colorado Federal Judge Nottingham for a special prosecutor to investigate the lawyer/judge cocaine report but he declined with no reason.

So Sieverding didn't manage to report the Rohde name to anyone except the jail staff.

One of Sieverding's fellow inmates told Sieverding that the only reason she is in jail is because she didn't report someone else who was selling cocaine. Another woman she shared a holding cell with said that the only reason she was detained is that someone who lived "down the hall" was dealing.

A write-in to a syndicated newspaper column asked whether they should report a neighbor who was dealing but was advised not to unless they were

(6)

selling to children.

So yesterday when Sieverding and her ~~est~~ fellow inmates were chatting about their ~~convictions~~ legal situations, Sieverding made a comment about how it seemed like class-based discrimination that cocaine use by lawyers and judges is ignored but poor people are jailed simply for not reporting. She said that she had tried to report Rohde and no one wanted to take the report.

Two of the woman started calling Sieverding a "snitch-bitch". One said she was going to tell on Sieverding ~~for~~ turning in Bruce Rohde and that Sieverding could get murdered ~~for~~ ~~it.~~ She knows Rohde's #.

So Sieverding is making this report on the record under penalty of perjury everything she knows about Bruce Rohde so that there will ~~be~~ no reason to murder her.

Under Penalty of Perjury

Kay Sieverding 11/20/05

Service by ECF
(see Attachments)

Clear Creek Jail
POB 518
Georgetown Co 80444

②

<u>Motion to ADMIT by STATE of COLORADO</u>
<u>and the COLORADO BAR ASSOCIATION + other defendants</u>

1.) Sieverding wrote to the Colorado Attorney
General three times about an unnamed
lawyer cocaine dealer judge- briber
3 times but they did not send the CBI or
write back.

2.) The girlfriend / fiance of Judge Joel Thompson
was accused by the DEA of being a
cocaine trafficker

3.) The Summitt county judge was
arrested for cocaine possession (a few years ago)

4.) Kevin Bennett, former Steamboat city
council president, is on the FBI's NCIC
list for possession of cocaine with intent
to sell.

5.) Colorado has an organization funded
by the STATE called "COLORADO Attorney
Regulation Counsel"

6) That organization has no direct public
input.

7) The COLORADO BAR ASSOCIATION is a
private organization with no formal
public input.

(8)

8.) The Colorado Judicial Review Board makes no public reports and has no public meetings.

9.) The Colorado Supreme Court made various requests to the Colorado Bar Association in 2002 which are still uncompleted.

10.) Colorado actively pursues tourism and external investment and publicity about government, judicial, and lawyer corruption might hurt that.

11.) Nearby South Dakota has received a petition for citizen referendum to remove judicial immunity and allow citizens to sue judges.

12.) Colorado does not allow pro se litigants to hire lawyers for specific tasks.

13.) The Colorado Bar Association does not acknowledge attorney liability in tort.

14.) The Colorado Bar Association advocates that Colorado lawyers have a right to deny service to anyone with no explanation even if they are advertising for service. They can refuse even an

9

evaluation at their normal hourly rate

15) "Lord Holt(s) ...qualification, exericising
a public calling, was part of a ~~public~~
~~system~~ protective system which has passed
away. One adversely inclined might say
that it was one of many signs that the
law was administered in the interest of
the upper classes... if a man was a
~~common~~ farrier he could be charged for
negligence without an assumpt... he could
be sued if he refused to shoe a horse
on reasonable request. Common carriers
and common innkeepers were liable in like
case, and Lord Holt stated the principle: "If
a man takes upon him a public employment,
he is bound to serve the public as far as
the employment extends, and for refusal
an action lies". P150 The Common Law.
Oliver Wendell Holmes Jr. Barnes & Noble
Books, New York © 2004

16) The enabling legislation for the
Colorado Attorney Regulation Counsel states
that any accusation that any attorney
engaged in obstruction of justice must

(10)

be promptly investigated even if the accusation is made by a private citizen.

7.) No format for complaint is defined. A complaint can be handwritten and can encompass more than one attorney.

8.) An investigation procedure is defined in the CRS. The accused attorney is supposed to respond to a numbered paragraph complaint. Document evidence can be supplied by the complaining party. The accused party must swear to the response. There is supposed to be an oral hearing before a panel of judges. The complaining party can attend, publicly accuse and cross examine the complained about attorney and address the courts. The record and results are supposed to be useable in other actions both criminal and civil.

19.) Under Colorado law, a prosecutor cannot prosecute without "probable cause".

20.) Under Colorado law, a citizen is not allowed to sign a summons and complaint. A paid licensed professional

(11)

trained insured employee - police officer
or sheriff - is required to say that
he witnessed a crime as defined by
the Colorado Revised Statutes. If
there is doubt and they are not stopping
a crime in progress, the officer is
supposed to get a WARRANT. An officer
is not supposed to START the criminal
process based solely on an unsubstantiated
accusation.

21) District Attorneys are paid to
supervise their employees, i.e.
prosecutors, to make sure they have "probable cause".

22) In the case of People v. Sieverding,
JANE Bennett signed the criminal
complaint - a short summons and
complaint as the "arresting officer"
with no professional signature. At that
time, JANE Bennett was a civilian
with no police training who was
married to Kevin Bennett, President of
the STEAMBOAT SPRINGS city council.
In that position the police pay was
highly influenced by Kevin Bennett.

12

23) In People v Sieverding there was no WARRANT.

24) In the police report about 8/26/00, no crime WAS indicated and the police did not call Sieverding, leave a note or make any attempt to contact her or find witnesses.

25) The record shows that a couple of days later, June Bennett went to the police station and, with no additional evidence, demanded they issue a summons and complaint.

26) Both the police and the district attorneys' office were aware at that time that Bennetts had barricaded and converted the road in front of Sieverding's home, pressured them to sell their land for $1, built on the former road bed in violation of the zoning and that there were many rumors about Bennetts cocaine connections.

27) Both the D.A and the police had access to the NCIC list on which Bennett was listed as a cocaine with intent to sell conviction.

13

28) The ~~police~~ district attorney received testimony under oath from Jane Bennett that Sieverding had not touched her, had not been following her, hadn't called her for years etc.

29) Sieverding in August 2000 brought a note to the district attorneys' office that Kirby Blackman former Steamboat police officer (active at that time) had come to warn her that Bennett would get a restraining order on her and that the D.A. was "in on it".

30) The Routt County D.A's office had 4 or 5 prosecutors it could have assigned but it knowingly assigned P. Elizabeth Wittemyer whose husband was a real estate developer.

31) Kevin Bennett helped the Wittemyers get a permit to put a ski area on VACANT land (the Stagecoach ski AREA) which Wittemyer tried to sell for $20 million.

32) Wittemyer kept the bogus criminal accusation/prosecution open for over 6 months even though she knew it wasn't COLORABLE.

33) Wittemyer altered the standard state dismissal form to say there was

14

probable cause, and that Jane Bennett was Steverding's victim,

34.) The D.A's office knew this was/is printed in the paper and on the Internet.

35.) The DA's office, including Kerry St. James and Paul McLimans who were Wittemyer's supervisors, has known for years that their office participated in a financially motivated malicious prosecution and defamation and has actively participated in covering that up.

36.) The State of Colorado employs or employed Paul McLimans, Kerry St James, P. Elizabeth Wittemyer, local Judge James Garrecht, and Colorado Attorney Regulation Counsel John Gleason and his assistant Matt Samuelson.

37.) Colorado Law says specifically that a restraining order such as the one Routt County Judge James Garrecht issued on Kay Steverding at the request of Jane Bennett and

15

her lawyer Randall Klauzer can only be issued if there is an attempted murder, a beating, or a sexual molestation.

38.) Nevertheless, Colorado employee Routt County Judge GARRECHT issued one anyway in violation of Colorado Law.

39.) Kevin Bennett said on the record that he paid $8,000 in legal fees

40.) BENNETTS' LAWYER RANDALL KLAUZER knowingly subordened perjury against Sieverding and refused to correct it.

41.) The State of Colorado Attorney General's office and the Colorado Attorney Regulation office has known these numbered facts since 2001 but refuses to acknowledge them and that they were obstruction of justice and crimes against Sieverding. They actively participated in and endorsed a coverup.

43.) Colorado Attorney Regulation Counsel Employee MATT SAMuelson refused to use the statutory procedure

16

of complaint style # response followed
by hearing. as required by STATE LAW.
44.) In a 1958 case with the C.B.A.,
included in the printed ColorAdo Raised Statutes,
it is stated that only the Director can
speak for the office.
45.) In the attached letter, John Gleason
implies that he has the authority
to override the statutory policies
and procedures by informal office
policy, that MATT Samuelson can
represent the office, and that an
informal evaluation by Samuelson can
replace the formal Statutory procedure.
46.) The C.B.A. has been aware of
this departure from the statutory
procedures which were designed to
protect the public including Sieverding.
47.) The jailing of Sieverding to
pressure her to withdraw from this
lawsuit were for and the threatening
of David Sieverding were federal criminal
acts described by U.S.C. Title 18
§ 241, §242. and § 1504. As shown on page 26
the ColorAdo Judge refuses to say when or under what
terms Sieverding will be released from jail and

(17)

Obstruct DAVID SIEVERDING's testimony in this court.

48) The State of COLORADO has known for over 2 months that Sieverding is illegally jailed and the COLORADO Attorney Regulation Counsel helped to cover this up.

49.) The State of COLORADO has self insurance that would compensate Sieverdings for their losses caused by STATE of COLORADO employees GARRECHT, Wittemeyer, St James and McLimans, and Gleason, and Samuelson.

50.) Even so, The State of COLORADO hired HALL and EVANS to defend against payment of Sieverding's claim.

51.) The STATE of COLORADO knows that the lawyer they hired, David Brougham, a Hall and EVANS PARTNER, called MAGISTRATE Schlatter 27 times, pretended that malicious prosecution extortion etc. WAS covered by government immunity, pretended that Rule 41 causes claims preclusion, pretended that Rules 36, 54, 56 and 65 were optional, and pretended that Sieverding was

18

"guilty" of something in order to cover up the obstruction of justice by their own employees.

53) Brougham is also paid by Lloyds of London and CIRSA (Colorado Intergovernmental Risk Sharing Agency).

54.) CIRSA is not registered in Colorado as a government, government agency, corporation, partnership, sole proprietorship or charity.

55.) CIRSA does not divulge its form of organization, review, or the names of its directors, nor the names of who did its "audit."

56.) CIRSA has had the same director since it was formed in the mid-80's. (Tim Greer)

57.) CIRSA does not divulge the compensation of its director, nor his compensation from Lloyds or other reinsurers.

58.) CIRSA does not divulge its relationship with Lloyds of London or why Lloyds paid to defend 02-cv-1950.

59) CIRSA sold public officials errors and omissions insurance and employee crime insurance to Steamboat Springs Co where Sieverding was extorted to benefit Kevin & Jane Bennett.



60.) BASIC insurance principles dictate that the victim must be compensated.

61.) In civil rights non-violent cases and other cases describable as public officials errors and omissions, CIRSA doesn't pay victims only lawyers.

62.) The State of Colorado has aided and abetted obstruction of justice and bad-faith insurance claims in order to cover up for its employees and avoid bad publicity for the state.

63.) The State of Colorado is even willing to risk Sieverding's life in jail or from someone associated with cocaine dealing in order to cover-up for its employees and the corruption of its judicial system.

Under penalty of perjury.

Kay Sieverding

Service by ECF

Kay Sieverding 11/20/05
Clear Creek Jail

POB 518 405 Argentine St.
Georgetown Co 80444



Express Mail
ED 08 717 6927
Exhibit

10-25-05
Clear Creek Jail POB 518
Georgetown CO 80444

Kerry St. James
Routt County District
Attorney's office
P.O.B 770129
Steamboat Springs CO 80477

641 Basswood Ave
Verona WI 53593

Dear Mr. St. James
                                              for 5 years
        As you know, I have been trying to get
either (a) a statement as to what the probable
cause was to believe that I criminally harassed
Jane Bennett on 8/29/00 or (b) a statement that
there was no probable cause to charge me
me with harassment. This matter is urgent
to me because The Steamboat Pilot AKA The
World Company is continuing to publish on the
Internet that I criminally harassed and abused Jane Bennett.
Even though we fled Steamboat to get away
from Kevin and Jane Bennett, the Steamboat Pilot
defamations have followed us on the Internet
and interfere with my reputation, peace of mind,
and professional opportunities. Please send
either the probable cause or a statement that
there was none.      Kay Sieverding
cc John Gleason, Colorado Attorney Regulation Comicl

21

**COLORADO SUPREME COURT**
**ATTORNEY REGULATION COUNSEL**

Regulation Counsel
John S. Gleason

Chief Deputy Regulation Counsel
Nancy L. Cohen

Deputy Regulation Counsel
James C. Coyle



Attorneys' Fund for Client Protection
Unauthorized Practice of Law

Assistant
Regulation Counsel

Stephen R. Fatzinger
Lisa E. Frankel
Luain T. Hensel
Kim E. Ikeler
Cynthia D. Mares
Charles E. Mortimer, Jr.
Matthew A. Samuelson
April M. Seekamp
Louise Culberson-Smith
James S. Sudler
Douglas S. Timmerman

November 17, 2005

Kay Sieverding
P.O. Box 518
Georgetown, CO 80444

Re: Request for investigation of Matthew A. Samuelson, #2005-3533

Dear Ms. Sieverding:

Mr. Samuelson forwarded your October 25, 2005 letter for my review. In your letter, you seek an investigation of Mr. Samuelson specifically as it relates to his handling of several requests for investigation that you filed with this office. I reviewed those matters and spoke with Mr. Samuelson about your allegation that he obstructed justice by not properly investigating those matters.

The investigations Mr. Samuelson conducted were in accordance with the Colorado Rules of Procedure Regarding Attorney Discipline and Disability Proceedings, and the policies of this office. No further investigation is warranted.

Sincerely,

John S. Gleason
Regulation Counsel

JSG/rsl

22



**COLORADO SUPREME COURT**
**ATTORNEY REGULATION COUNSEL**

Regulation Counsel
John S. Gleason *

Chief Deputy Regulation Counsel
Nancy L. Cohen

Deputy Regulation Counsel
James C. Coyle

Attorneys' Fund for Client Protection
Unauthorized Practice of Law

Assistant
Regulation Counsel

Stephen R. Fatzinger
Lisa E. Frankel
Luain T. Hensel
Kim E. Ikeler
Cynthia D. Mares
Charles E. Mortimer, Jr.
Matthew A. Samuelson
April M. Seekamp
Louise Culberson-Smith
James S. Sudler
Douglas S. Timmerman

November 17, 2005

Kay Sieverding
P.O. Box 518
Georgetown, CO 80444

Re: Request for investigation of the Honorable Paul R. McLimans, #2005-3534

Dear Ms. Sieverding:

On October 28, 2005, we received your one-page request for investigation of Judge McLimans. Your letter indicates that, at the time of the conduct at issue in the request for investigation, Judge McLimans was the elected district attorney for the 14th Judicial District. As such, this request for investigation falls under the jurisdiction of this office.

You assert that Mr. McLimans was the supervisor of other deputy district attorneys who prosecuted cases in which you were the named defendant. You assert that Mr. McLimans, as the elected District Attorney, failed to properly supervise the deputy district attorneys in your cases, and that he failed to take action that you requested in an effort to "fix [your] reputation."

For this office to discipline an attorney, we must prove the attorney's misconduct by clear and convincing evidence. The information you provided does not demonstrate evidence that Judge McLimans acted unethically in his capacity as the elected District Attorney for the 14th Judicial District at the time of your cases. Neither the District Attorney nor his office had any obligation "to issue a statement that there was no probable cause" in one of your cases in order to allow you to "fix [your] reputation." Additionally, although you may have disagreed with statements the deputy district attorneys made about you or your cases, Mr. McLimans had no ethical obligation to intervene simply because you asked him to do so. Finally, whether a specific deputy district attorney should or should not have handled the prosecution of a case against you, and any possible role Mr. McLimans played in assigning that deputy district attorney to the case, is not an ethical issue subject to review by this office.

For the above reasons, this office has determined that the information you



I, Kay Sieverding, wrote on many occasions to CO. Routt County District Attorney's Office and asked what "probable cause" they had to prosecute me at the sole request of JANE Bennett, but they have refused to provide the "probable cause" even though they kept the charges open for 6 months. I repeatedly complained to the Colorado Attorney Regulation Counsel that Routt County Prosecutor P. Elizabeth Wittemyer continued to prosecute me with no evidence I committed a crime even after contradictory sworn testimony by JANE BENNETT that I had not followed her, touched her or called her in years. Although she knew of the testimony, Mrs. Wittemyer and the Routt County District Attorney's Office allowed reports by the STEAMBOAT PILOT Newspaper / Internet Advertiser that JANE BENNETT was my "victim" who needed police protection from me and that there was probable cause to prosecute me for harassment of JANE Bennett. Mrs. Wittemyers' husband received help from JANE Bennetts' husband, Kevin BENNETT, STEAMBOAT city council president, in getting ski resort permitting for VACANT land which he tried to sell for $20 million as the 'STAGECOACH' ski AREA. Both Wittemyer and Bennetts' lawyer, Randall Klauzer, knew that JANE BENNETT was financially motivated to prosecute me because she wanted to cover up her familys' building in violation of the zoning and development code and their extortion from us of our rights to the road in front of our former home on Princeton Ave in Steamboat Springs, CO. BENNETTS' lawyer, Randall Klauzer, knowingly presented and refused to correct perjured testimony from STEAMBOATS planning services director, Wendy Schulenburg, to the effect that BENNETT'S construction "100% complied with STEAMBOAT'S zoning and development code, when in fact, it was grossly noncompliant in both volume and location.

Kay Sieverding – Under penalty of perjury

Subscribed & sworn to me this 18ᵗ November 2005 by Kay Sieverding

My commission expires 1-3-09

notary public

JEFFREY W. SMITH
NOTARY
PUBLIC
STATE OF COLORADO

Vanessa Rohde
21645 Indian Springs
Conifer Co 80433,

Exhibit

# C.C.S.O. DETENTIONS INMATE REQUEST FORM
## REGULAR KITE

Inmate
Name: _Kay Srowding_

Date: _10-5_    Block/Cell: _____

## TYPE OF REQUEST

LAW LIBRARY: _____    PROPERTY RELEASE: _____    DETENTION PROGRAMS: _____
COMPLAINT: _____    SPECIAL REQUEST: _____    OTHER: _____

INMATE REQUEST:

Inmate

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 02–cv–01950–EWN–OES

KAY SIEVERDING, *et al.*,

      Plaintiffs,

v.

COLORADO BAR ASSOCIATION, *et al.*,

      Defendants.

---

## MINUTE ORDER

---

EDWARD W. NOTTINGHAM, Judge
Jamie L. Hodges, Secretary

The "Repeated Motion for Court to State When and Under What Terms Sieverding Will be Released for Jail" (#639, filed November 8, 2005), the "Motion to Allow David Sieverding to Rejoin 05-cv-01283" (#640, filed November 8, 2005), and #643, filed November 8, 2005, are DENIED.

Dated: November 10, 2005