**RECEIVED**

AUG 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

U.S. Court District of Columbia

Sieverding et al.                                          05-01283/05-01672

v.                                                              Judge Urbina

American Bar Association et al.

---

Plaintiff's reply to Mr. Schaefer's objection to Plaintiff's motion for reconsideration.

The defense attorneys argued that there was a valid injunction-prohibiting plaintiff from representing herself in these actions, when they knew there was not. In related case 05-02122, Ms. Lamm and Mr. Schaefer claimed that attorney immunity applied to conspiracy to unlawfully restrain and deprive rights, when they knew it does not. In both 05-01283 and 05-01672, the defense argued that bar associations have no duty to the public, when it is well established that lawyers have a duty to the public based on their role as officers of the court.

These cases, and the related D. of Colorado case 02-cv-1950 (the plaintiff's first lawyer immunity suit) involve significant public policy issues, namely whether attorneys have immunity to commit violent and financial felonies on behalf of their clients. D of Colorado case 02-1950 and D of Columbia case 05-01283 alleged that an attorney Randall Klauser committed a federal violent crime, false restraint (U.S.C. Title 18 Part 1§ 1201) against the plaintiff and damages were sought as a result. They alleged that he and other lawyers knowingly conspired with a cocaine dealer who was in public office to deprive plaintiff of both property and liberty rights. These three cases (05-02122, 05-01283, and 05-01672) appear to have been dismissed by Judge Urbina solely to avoid setting a precedent that lawyers have no immunity to commit felonies when employed as

1



**O·B·M·S** O'Brien, Butler, McConihe & Schaefer PLLC.
*Attorneys and Counselors At Law*
*Washington D.C.*
*Since 1926*
home

firm overview | practice areas | attorneys | news | representative clients | contact us | links |

*Practice Areas*

Representing Business. Both
Non-Profit And For Profit For
Over 75 Years

Non Profit Organizations
Corporation Law
E-Commerce
Employment Law
Estate Planning / Probate
Intellectual Property
Insurance Law
Libel / First Amendment Law
Litigation
Real Estate

888 Seventeenth Street, N.W.
Suite 1000 Washington, D.C.
20006-3976

phone: (202) 298-6161
fax: (202) 293-1640
kkernan@obmslaw.com

Disclaimer

# Insurance Law

O'Brien, Butler, McConihe and Schaefer has provided Insurance law representation and consultation services to its clients for over 50 years, including litigation, claims management and administration. Since the 1930's, the Firm has developed, structured and administered insurance programs for a number of our association clients. Some of these programs operate through offshore corporations for more favorable tax and regulatory treatment. One such client is located in Hamilton, Bermuda and is a major provider of libel and defamation insurance to newspapers and other media in North America.

O'Brien, Butler, McConihe and Schaefer's insurance law services include:

- Conducting the initial review of claims for coverage problems
- Monitoring litigation and supervising defense strategy
- Making recommendations regarding appeal and, if necessary, pursuing cases through all appellate courts

O'Brien, Butler, McConihe and Schaefer also serves as General Counsel to a number of insurance related organizations, including association insurance trusts. As such, we provide legal advice regarding all aspects of their operations, including:

- the negotiation of insurance plans
- the development of new operating procedures
- review of all vendor contracts
- review and analysis of governance issues

Let O'Brien, Butler, McConihe and Schaefer provide knowledgeable and sound legal advice concerning your insurance law needs.

Our attorneys at O'Brien, Butler, McConihe & Schaefer welcome the opportunity to assist you with your legal needs. Please feel free to **Contact Us** by telephone at (202) 298-6161 or email with any of your legal questions or concerns.

 PRINT

firm overview | practice areas | attorneys | news | representative clients | contact us | links

From:  Kay Sieverding <sieverding.kay@slides.com>
Subject:  **filing in possession of U.S. Post office**
Date:  August 18, 2006 3:48:42 PM CDT
To:  jschaefer@obmslaw.com
Cc:  kkernan@obmslaw.com, aagmoore@yahoo.com, Clamm@whitecase.com, Kay
Sieverding <slides@slide.com>

📎  1 Attachment, 227 KB  ( Save ▼ )



05-01283_...r.pdf (227 KB)
Kay Sieverding
641 Basswood Ave
Verona, WI 53593
608 848 5721

# FAEGRE & BENSON LLP

3200 WELLS FARGO CENTER, 1700 LINCOLN STREET
DENVER, COLORADO 80203
TELEPHONE 303-607-3500
FACSIMILE 303-607-3600



January 6, 2005

Jerome C. Schaefer, Esq.                Suzanne Schlicht
O'Brien, Butler, McConihe & Schaefer    World West, LLC
888 17th St. N.W.                       P.O. Box 774827
Washington, DC   20006-3967             Steamboat Springs. CO  80477

                                        INVOICE:   870284
                                        TO:  FAEGRE & BENSON LLP
                                        EIN:  41-0244008

---

RE:  Steamboat Pilot/Sieverding
     Our File:  55789/293075

Through December 31, 2004

SERVICES:

| Date: | Name: | Hours: | Services: |
|-------|-------|--------|-----------|
| 12/09/04 | C. Beall | .30 | Attention to new filing by K. Sieverding with Tenth Circuit and e-mail to defense counsel on same (.5) |
| 12/16/04 | C. Beall | .10 | Attention to new filing in Minneapolis by K. Sieverding (.1); telephone message with K. Kernan on status of case (.0) |
| 12/17/04 | C. Beall | .20 | Telephone conference with K. Kernan on status of case (.2) |
| 12/21/04 | J. Borger | .00 | Quick review of new filings by Sieverdings (NO CHARGE) |
| 12/22/04 | J. Borger | .10 | Review C. Beall's status report to K. Kernan (NO CHARGE) |
| 12/22/04 | C. Beall | .50 | Draft e-mail memo to K. Kernan on status of both Minneapolis and Denver cases (.5); telephone conference with S. Schlicht on status of case, billings and exit strategy (.4) {NO CHARGE}; conference with T. Kelley on same (.2) {NO CHARGE} |

          Total Hours        1.20

TOTAL SERVICES:                                        $253.00

**EXHIBIT**

**A-11**

Case 1:05-cv-01283-RMU     Document 68     Filed 08/21/2006     Page 5 of 30
Case 1:05-cv-02122-RMU     Document 33     Filed 08/15/2006     Page 14 of 16
Case 1:02-cv-01950-EWN-OES     Document 755     Filed 12/30/2005     Page 21 of 23

IN ACCOUNT WITH

**O'BRIEN, BUTLER, McCONIHE AND SCHAEFER**

888 SEVENTEENTH STREET, N.W.

WASHINGTON, D.C. 20006-6161

$C$-2

Faegre & Benson LLP                                     September 16, 2005
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203                          File #:      0113-001
                                          Inv #:          131
**Attention:**

RE:     Sieverding v Faegre & Benson Et Al

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Aug-02-05 | Conference with JPC re: results of research. Reviewed and analyzed research. | 0.25 | 52.50 | KAK |
| | Telephone call with ABA counsel re: possible joint defense and strategy for handling. | 0.25 | 52.50 | KAK |
| Aug-03-05 | Receipt and review of correspondence from ABA counsel re: status of service and strategy for handling. | 0.25 | 52.50 | KAK |
| Aug-09-05 | Receipt and review of draft motion for extension of time from C. Bealle. | 0.25 | 52.50 | KAK |
| Aug-10-05 | Began preparing revisions to motion for extension of time. | 0.50 | 105.00 | KAK |
| Aug-12-05 | Continued drafting memo in support of motion, proposed order, review of local court rules, Telephone call to Sieverdings re: consent to motion. | 1.25 | 262.50 | KAK |
| Aug-15-05 | Telephone call with K. Sieverding re: motion for extension of time. | 0.25 | 52.50 | KAK |
| | Receipt and review of Sieverding's objections to motion for extension of time. Follow up correspondence with K. Sieverding. | 0.25 | 52.50 | KAK |
| | Telephone call with C Bealle re: motion for extension of time and discussions with K. Sieverding. | 0.25 | 52.50 | KAK |

| | | | | |
|---|---|---|---|---|
| | Drafted memo of points and authorities in support of motion. Conference with JCS re: pleadings. Revised pleadings pursuant to JCS remarks. Reviewed prior pleadings to confirm facts Placed pleadings in final form for filing. | 1.75 | 367.50 | KAK |
| | Drafted engagement letter for C. Bealle. | 0.25 | 52.50 | KAK |
| | Received and reviewed correspondence from P. Larson re: status of case. Drafted response. | 0.25 | 52.50 | KAK |
| | Prepared final revisions and filed electronically with US District Court for DC. | 1.00 | 210.00 | KAK |
| | Drafted correspondence to K. Sieverding re: Motion for Extension of Time. | 0.25 | 52.50 | KAK |
| | Telephone call from Judges Chambers re: Motion for Extension of Time. | 0.25 | 52.50 | KAK |
| Aug-16-05 | Receipt and review of e-mails from K. Sieverding re: motion for extension of time. | 0.25 | 52.50 | KAK |
| Aug-17-05 | Receipt and review of motion for extension of time from Routt County Court. | 0.25 | 52.50 | KAK |
| Aug-18-05 | Receipt and review of Sieverding's objection to Routt County's Motion to Extend. | 0.25 | 52.50 | KAK |
| | Received another e-mail from K. Sieverding with additional copy of objection to Motion. Prepared response. | 0.25 | 52.50 | KAK |
| | Receipt and review additional correspondence from K. Sieverding. | 0.25 | 52.50 | KAK |
| Aug-19-05 | Receipt and review of e-mail correspondence from K. Sieverding re: objection. Prepared response. | 0.25 | 52.50 | KAK |
| | Received additional e-mail from K. Sieverding re: filing of objection. Prepared response. | 0.25 | 52.50 | KAK |
| Aug-22-05 | Receipt and review of Order from Court granting motion for extension of time. | 0.25 | 52.50 | KAK |
| | Receipt and review of correspondence from P. Larson re: ABA responsive pleadings. Prepared response. | 0.25 | 52.50 | KAK |
| | Additional correspondence from counsel re: pleadings filed for motion for extension of time. | 0.25 | 52.50 | KAK |

Case 1:05-cv-01283-RMU    Document 68    Filed 08/21/2006    Page 7 of 30
Case 1:05-cv-02122-RMU    Document 33    Filed 08/15/2006    Page 16 of 16
Invoice Case 1:02-cv-01950-EWN-OES Pag Document 755    Filed 12/30/2005 September 26, 2003

| | | | | |
|---|---|---|---|---|
| | Drafted e-mail to counsel re: recent Order. Additional correspondence with P. Larson. Steps to set up file. | 0.25 | 52.50 | KAK |
| Aug-23-05 | Receipt and review of notice of perfection of service upon ABA and Judiciary from Court. | 0.25 | 52.50 | KAK |
| | Drafted correspondence to C. Beale re: status of Sieverding case. | 0.25 | 52.50 | KAK |
| Aug-24-05 | Receipt and review of correspondence from K. Sieverding re: injunctions. | 0.25 | 52.50 | KAK |
| | Telephone call with C. Beale re: strategy for handling. Drafted e-mail to all counsel re: strategy and engagement letters. Quick research on DC procedure. | 0.75 | 157.50 | KAK |
| | Receipt and review of correspondence from D. Brougham re engagement. | 0.25 | 52.50 | KAK |
| Aug-25-05 | Receipt and review of correspondence from K. Sieverding. Drafted correspondence to C. Beall re: same. | 0.25 | 52.50 | KAK |
| | Telephone call with ABA counsel re: Court's Order and strategy for handling. | 0.25 | 52.50 | KAK |
| | Follow up call with ABA counsel re: background and filing of motion for extension of time. | 0.25 | 52.50 | KAK |
| | Receipt and review of e-mails from K. Sieverding re Objections and injunctions to file lawsuits pro se. | 0.25 | 52.50 | KAK |
| | Receipt and review of pleadings and proposed Order filed by ABA with Court. | 0.25 | 52.50 | KAK |
| | Receipt and review of draft Orders from ABA to motion for extension of time. | 0.25 | 52.50 | KAK |
| | Totals | 13.25 | $2,782.50 | |

**Total Fee & Disbursements**                                        $2,782.50

**Balance Now Due**                                                  $2,782.50

TAX ID Number        52-1623745

an advocate and also to establish a principle that the media can intentionally and knowingly republish fraudulent and defamatory statements about a person on the Internet without liability.

The defense argued that 02-1950 caused res judicata even though there was not a final judgment as defined by the State of Colorado and the litigation was resolved through criminal ex parte collusion including over 25 ex parte conferences, the defense reviewing orders that had not yet been issued, and a magistrate deciding to strike plaintiff's motions for summary judgment, although plaintiff had not agreed to his adjudication. They claimed that they could plead an affirmative defense of res judicata as a motion when it requires a formal reply with stipulations of fact. The illegal dismissals of all these cases sought to prevent the issue of lawyer functional immunity from suit for crimes of property and violence from being discussed. They did this because the ABA's official position as shown in their pleadings in these cases and 05-01283 is that bar associations have no duty to the public and that lawyers can commit violent and property crimes with impunity.

The D. of Columbia 05-01283 and 05-01672 actions, as well as the related actions, were not conducted in compliance with the national and local rules. Plaintiff has an Undeniable 14th amendment right to have the case conducted in compliance with the national and local rules.

Plaintiff filed motions for summary judgment and noted that none of the facts were in dispute. The local rules say:

"An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. Each such motion and opposition must also contain or be accompanied by a memorandum of points and authorities required by

2

sections (a) and (b) of this Rule. In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."   Local Rule 7 h p 31

The defense did not controvert plaintiffs' statements of fact.

The local rules say:

"Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."

The defense filed various motions but did not confer with any of the Sieverdings. Kay Sieverding called and wrote all the defense counsel and told him or her that if they called her at Clear Creek County Jail, she would be able to call them back. Plaintiff was not legally a prisoner, according to the definition of the U.S. code- a person convicted of a crime or in violation of conditions of parole.   The defense had her jailed in order to deprive her of her rights including her right to conference on motions. She was not a captive when the action was filed. They made no attempt either to confer the remaining family members including Ed Sieverding who is over 18 and never filed a motion to dismiss.

Rule 16 c requires a conference. Plaintiff has been out of jail for over 8 months and made requests for an oral hearing and conferences. The defense counsel has not returned her phone calls or emails. These matters were not discussed as required:

MATTERS TO BE DISCUSSED BY THE PARTIES.
At the conference required by this Rule, the parties must confer to discuss the following matters:
(1) Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to

3

the court that discovery or other matters should await a decision on the motion.
(2) The date by which any other parties shall be joined or the pleadings amended,
and whether some or all the factual and legal issues can be agreed upon or
narrowed.
(3) Whether the case should be assigned to a magistrate judge for all purposes,
Including trial.
(4) Whether there is a realistic possibility of settling the case.
(5) Whether the case could benefit from the Court's alternative dispute resolution
(ADR) procedures (or some other form of ADR); what related steps should be
taken to facilitate such ADR; and whether counsel have discussed ADR and
their response to this provision with their clients.  In assessing the above,
counsel shall consider:
(i) the client's goals in bringing or defending the litigation;
(ii) whether settlement talks have already occurred and, if so, why they did
not produce an agreement
(iii) the point during the litigation when ADR would be most appropriate,
with special consideration given to:

(aa) whether ADR should take place after the informal exchange or
production through discovery of specific items of information; and
(bb) whether ADR should take place before or after the judicial
resolution of key legal issues;
(iv) whether the parties would benefit from a neutral evaluation of their case,
which could include suggestions regarding the focus of discovery, the
legal merits of the claim, an assessment of damages and/or the potential
settlement value of the case; and
(v) whether cost savings or any other practical advantages would flow from
a stay of discovery or of other pre-trial proceedings while an ADR
process is pending.
(6) Whether the case can be resolved by summary judgment or motion to dismiss;
dates for filing dispositive motions and/or cross-motions, oppositions, and
replies; and proposed dates for a decision on the motions.
(7) Whether the parties should stipulate to dispense with the initial disclosures
required by Rule 26(a)(1), F.R.Civ.P., and if not, what if any changes should be
made in the scope, form or timing of those disclosures.
(8) The anticipated extent of discovery, how long discovery should take, what
limits should be placed on discovery; whether a protective order is appropriate;
and a date for the completion of all discovery, including answers to
interrogatories, document production, requests for admissions, and depositions.
(9) Whether the requirement of exchange of expert witness reports and information
pursuant to Rule 26(a)(2), F.R.Civ.P., should be modified, and whether and
when depositions of experts should occur...
(11) Whether the trial and/or discovery should be bifurcated or managed in phases,
and a specific proposal for such bifurcation.
(12) The date for the pretrial conference (understanding that a trial will take place
30 to 60 days thereafter).

4

REPORT TO THE COURT AND PROPOSED ORDER.
Not later than 14 days following the conference required by this Rule, the attorneys of record and all unrepresented parties that have appeared in the case shall submit to the court a written report outlining the discovery plan and including a succinct statement of all agreements reached with respect to any of the 14 matters set forth in paragraph (c), a description of the positions of each party on any matters as to which they disagree, and a proposed scheduling order. The report shall be submitted jointly, but the parties may submit alternative proposed orders that reflect any disagreements. The plaintiff shall have the duty to ensure timely filing of the report. If, by the time the report is due, any defendant has not responded to the plaintiff's proposed report or declines to join in the report, the plaintiff shall certify in the report that efforts were made to secure that defendant's participation.
If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may require the written report outlining the discovery plan be filed fewer than 14 days after the conference between the parties, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference as per Rule 26(f), F.R.Civ.P.

LCvR 16.4
SCHEDULING ORDERS
SCHEDULING CONFERENCE AND ORDER.
After receiving the report of the parties pursuant to LCvR 16.3(d) of these Rules, the court will hold a scheduling conference unless it determines, on the basis of the report, that a conference is unnecessary. At or after the scheduling conference, or after receiving the report of the parties where no scheduling conference is held, the court will issue a scheduling order governing future proceedings in accordance with Rule 16(b), Federal Rules of Civil Procedure. The Scheduling Order will include the limits if any on the number of interrogatories, the number and duration of depositions, and the use of other forms of discovery. The court may modify the scheduling order at any time upon a showing of good cause. Objections made to the discovery plan during the Rule 26(f) conference are to be ruled on by the court in the scheduling conference or order. In its ruling on the objection, the court must determine what disclosures if any are to be made and set the time for disclosure.

None of the categories for exempted cases listed on page 45 apply. Plaintiff

indicated her willingness and ability to go to the D of Columbia for the conference.

Under Rule 26 the defendants were required to disclose

(A) The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;

(B) A copy of, or a description by category and location of, all documents, data

compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

They did not do so even though plaintiff was not a captive when she brought the action, has not been a captive for more than 8 months, and was only held captive at the request of the defendants' agents. They were not allowed to create an exception to this rule by having the plaintiff kidnapped and unlawfully restrained.

The State of Colorado has two insurance policies that should pay part of the damages. One is a self insurance policy. The other is a malpractice insurance policy contracted for when the State of Colorado hired Hall and Evans to defend Wittemyer, McLimans and St. James. Neither have been provided to plaintiff although they are required by Federal Rules of Civil procedure 26 d:

"(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."

World West LLP AKA The World Company AKA The Steamboat Pilot also has an insurance policy for newspaper defamation, which has paid O'Brien, Butler, McConihie and Schaefer employees Hammond, Kernan, and Schaefer to manage the defense litigation since 2003. However, the defense did not supply a copy of the agreement as required by Rule 34 d.

Attorneys appearing before the court are required to swear:

"I do solemnly swear (or affirm) that I will support the Constitution of United States; that I will respect courts of justice and judicial officers; that I will well and faithfully discharge my duties as an attorney and as an officer of the court; and in the performance of those duties I will conduct myself with dignity and according to both the law and the recognized standards of ethics of our profession."

6

However, Mr. Kernan engaged in a 15 minute ex parte discussion with Judge
Urbina on 8/15/05 while supervised by Mr. Schaefer. Mr. Kernan, Mr. Schaefer, Ms.
Lamm and Ms. Moore all ratified the suspension of the U.S. Judiciary Act as it applies to
plaintiff Kay Sieverding and her being jailed for doing something expressly legal
(petitioning the courts while representing herself) and the suspension of the Rules of
Criminal Procedure and the Colorado Rules of Remedial Contempt (Rule 107.)
Furthermore, they all knew about and ratified the extensive ex parte communications
with Colorado Federal Magistrate Schlatter and other judges and Faegre and Benson's
conference with ex civil service employees, former clerks of Federal Judge Tunheim,
regarding a matter then before Judge Tunheim.

The defense counsel violated:

"We will not seek court sanctions or disqualification of counsel unless reasonably
justified by the circumstances after conducting a reasonable investigation, which
includes attempting to confer with opposing counsel."

They sought to have plaintiff disqualified and sanctioned without justification.

The defense counsel repeatedly violated claiming, for instance, that an injunction
does not require a duty established by statute and can be valid without the Rule 65
safeguards and that a judgment can be on the merits even if not a single fact is stipulated
or disputed, the claims stated recognized causes of action, and the defense offered no
affidavits or evidence, and there was no jury trial or hearing on summary judgment
motions:

"We will not knowingly misrepresent, mischaracterize, misquote, or miscite facts or
authorities."

The defense violated this rule:

"We will not degrade the intelligence, ethics, morals, integrity or personal behavior of others, unless such matters are legitimately at issue in the proceeding."

They argued that plaintiff could not be a witness (violating the Rules of Evidence).

The defense counsel violated this rule:

"We will avoid ex parte communications with the court, including the judge's staff, on pending matters in person (whether in social, professional, or other contexts), by telephone, and in letters and other forms of written communication, unless such communications relate solely to scheduling or other non-substantive administrative matters, or are made with the consent of all parties, or are otherwise expressly authorized by law or court rule"

Kevin Kernan had a 15 minute ex parte conversation with Judge Urbina's chambers

on 8/15/05, which, in conformance with the first admitted motion to admit facts in the

10th circuit court of appeals related hearing 06-1038, was apparently followed by at least

one other ex parte communication.

"In all civil or agency cases where a corporation is a party or intervenor, counsel of record for that party or intervenor shall file a certificate listing any parent, subsidiary or affiliate of that party or intervenor which, to the knowledge of counsel, has any outstanding securities in the hands of the public. Such certificate shall be filed at the time the party's first pleading is filed."

An insurance company from Bermuda is a party to the suit. The insurance

company has securities sold to the public. That was not disclosed by O'Brien, Butler,

McConihie and Schaefer.

The rules were not observed where they say:

"A CM/ECF password may be used only by the person to whom it is assigned, or, in the case of an attorney, by that attorney or an authorized employee or agent of that attorney's law office or organization." (p 27, rule 5.4)

Daniel Moore used Kevin Kernan's ECF account. This also shows that she

coordinated her defense with him.

The factual situation underlying these two cases has changed since the cases were stayed at the defendant's request in Dec. 2005. The motion to stop collection of attorneys' fees has become irrelevant. Any collection attempt of attorneys from related litigation is fraudulent. In Jan 2006, the 10th Circuit has officially stated its opinion that there is no final award of attorney bills. After that, the defense counsel made an oral request to have Colorado Judge Nottingham award attorney bills. Plaintiffs objected and Judge Nottingham never finalized an award of attorney bills. The defense supplied plaintiffs with a defense bill that showed them discussing the fact that the attorney bills had not been awarded as a final order and discussing whether they should motion for finalization. Plaintiffs could not appeal the attorney bills to the 10th Circuit because the Court of Appeals does not have jurisdiction when there is not a final judgment. As with any bill, the party claiming that a bill is owed has the burden of proof that a bill is owed. The magistrate who claimed that the plaintiff owed the defense for the attorney bills was the one with whom defense attorney Brougham had some 25-27 ex parte conversations with including a three-way long distance ex parte conversation with defendant attorney Anthony Lettunich. Plaintiffs had not agreed to have the case decided by a magistrate and the magistrate himself had stated that he did not have authority to issue any orders. Any attempt to collect the attorney bills is wire fraud. Furthermore, the U.S. Supreme Court ruled in 2001 that attorney bills, other than under rule 11, cannot be awarded when there is no final judgment and there was no final judgment in the attorney immunity suit, 02-1950, according to the laws of the forum state, Colorado.

Likewise, the issue as to whether plaintiff has the right to represent herself in court has become moot. After Judge Urbina stayed this case, plaintiff appealed the order

9

against pro se litigation to the 10th Circuit. Plaintiff adequately argued that cases based on U.S.C. Title 28 Section 1915, the broke prisoner law, does not apply to people who pay filing fees or non prisoners. The law itself defines prisoners as people who are convicted of a crime or violate parole. Plaintiff has never been convicted of a crime. Even though the U.S. Marshals kidnapped plaintiff and held her illegally for over 4 months at the request of Mr. Schaefer's clients, plaintiff was never legally a prisoner according to U.S. law. Judge Nottingham's first ambiguous order against pro se litigation based on the same series of events was incorporated into his 2nd order against all pro se litigation. The defendants had the opportunity to respond to plaintiff's reply in the 10th Circuit, because the rules of appellate procedure were changed to allow that, and they did not. The defendants were unable to supply any applicable statute or case law supporting their position. Furthermore, the ABA refuses to state any law or fact that would support an injunction against plaintiff's litigation while self represented. The right to represent oneself in court was expressly incorporated into the Judicial Act when Congress first met in 1787 and has been constant since then. It is expressly guaranteed in most state constitutions including Colorado and Wisconsin and is part of the common law underlying the Privileges and Immunities Clause. It has been common law since the 13th Century. It is recognized in U.S. Judiciary publications and programs supporting pro se litigation are funded by congress. There cannot be an injunction to make something legal illegal or to deny one citizen a right that others have.

The remaining issues in these two cases then are 1.) Whether the unlawful restraint applied by the State of Colorado in the form of County Judge Garrecht towards plaintiff in violation of the Colorado Rules of County Procedure Rule 365 can be

10

sustained? 2.) Whether the World Company AKA WorldWest LLP AKA the Steamboat Pilot can or cannot publish the offending articles that claim that plaintiff is a criminal, dangerous to her neighbors, deserving of a domestic restraining order based on a finding of physical assault or molestation, and incompetent in the field of city planning as understanding basic zoning statutes? 3.) Whether 02-1950 can be considered to be res judicata to 05-01672 even though a jury trial was specified by plaintiff but not given, the defense supplied no formal reply, no affidavits other than their bills, no evidence other than their bills and refused to answer plaintiff's motions for summary judgment, the defense had extensive ex parte conversations with the adjudicators and reviewed orders before they were issued (as shown by their own bills), and the order dismissing the case did not meet the legal standard of the forum case for a final judgment, res judicata, or a finding that the statute of limitations had passed? 4.) Whether summary judgment in the undisputed amount must be awarded because the claims stated recognized causes of action and supported them as legally required and the defense did not Reply nor dispute the amount of plaintiff's claims?

Mr. Schaefer quotes various cases saying that a motion to reconsider is not always justified. He makes no argument as to how this situation is similar to the cases he quotes. Also, at least one of his case citations seems inaccurate and when plaintiff emailed him, 48 hours ago, asking to check the citation, he refused to supply it. Also, Mr. Schaefer does not claim that any of the legal authorities plaintiff supplied are over ruled, misquoted, or not applicable to this situation. Since plaintiff quoted the U.S. Supreme Court and the District of Columbia Court of Appeals and Mr. Schaefer has not addressed

11

her arguments with any particularity or argued that she violated Rule 11, plaintiff sees no reason why she should not rely on what she has already filed.

Plaintiff wants to believe the best of Judge Urbina. Unfortunately, O'Brien Butler and McConihie and Schaefer have compromised his reputation and the presumption that he is impartial in this case. They did this by billing for a 15 minute ex parte conversation between Mr. Schaefer's assistant, Kevin Kernan, and Judge Urbina on August 15, 2005 (see attached). Furthermore, it appears that O'Brien Butler had more than one ex parte conversation with Judge Urbina that they put in their bills. The reason that plaintiff believes that is that she recently submitted to the 10th Circuit a motion to admit facts. This was in an appeal that the District of Colorado in plaintiff's lawyer immunity suit, 02-1950 (which argued that attorneys don't have immunity for fraud, malicious prosecution, extortion, defamation and unlawful restraint) did not have the authority to suspend the Judiciary Act and make self-representation a crime punishable by jail. The defendants in that case were all of the same parties that are defendants in 05-01283 and 05-06172. They let the time lapse on plaintiff's first motion to admit facts and did not dispute them and all those facts are now admitted. Those admitted facts include these facts, which should be admitted also in this case:

A.)"It is customary practice for these defense counsel hired and supervised by these defendants when litigating with this plaintiff to have unrecorded ex parte conferences. Apparently they think that the bar associations and law firms cannot defend themselves without criminal collusion. This is admissible under Rules of Evidence 406"

B.) "Evidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

C. "It is supported by defense attorney bills showing that David Brougham had over 25 unrecorded ex parte conferences, defense bills from Faegre & Benson discussing ex parte

12

conferences with the District of Columbia, a letter from Faegre & Benson soliciting an unrecorded ex parte conference call with Minnesota Federal Judge Tunheim, a bill from Faegre & Benson for a meeting with Judge Tunheim's former clerks, letters from defense counsel Patricia Larson and attorney James B.F. Oliphant soliciting ex parte conferences with Colorado Federal Judge Nottingham, oral statements by Christopher Beall that he had called every court plaintiff has appeared in and orally requested dismissal, and bills by David Brougham for reviewing three District of Colorado orders that he could only have obtained through ex parte conference as two had not even been issued when he billed to review them and one he could not have received through the mail when he billed to review it."

D. "The defendants record in forcing plaintiff to move from Steamboat, defaming plaintiff, attacking her financially, threatening to shoot someone who wanted to buy her property, and having her put in jail based on fraudulent representations of law suggests that they are willing to engage in all sorts of crimes."

E. "Even though the ABA knew that Kansas Federal Judge John Lungstrum was adjudicating Sieverding v. WorldWest LLP and that the outcome of that case could affect Sieverding v. ABA et al., since there were overlapping facts, the ABA hired Judge Lungstrum as a speaker in April 2006. Previously the ABA had never hired Judge Lungstrum."

F. "Plaintiff has lived in Wisconsin since August of 2001. Since 02-1950 had no trial and was decided on the basis of written filings by plaintiff from Wisconsin and by defense counsel from Illinois and Colorado and ex parte conferences some of which were interstate, and the defense strategy was advised by Jeffrey Schaefer from D.C. who represented the insurer for the Newspaper and by a representative of Lloyd's of London in Chicago, who represented the reinsurer for Kevin Bennett and the City of Steamboat defendants, the 02-1950 litigation can be properly characterized as an interstate activity."

G. "In 02-1950, David Brougham knew that the case would be transferred to Judge Nottingham, and wrote to his clients about this, two days before the order appeared in the docket."

H. "The 02-1950 litigation did not result in a final judgment as defined by Colorado State Law because there was no summary judgment and plaintiff had specified a jury trial when she filed her civil complaint and by motion in Jan 2003. Colorado state law was controlling because 02-1950 was a case under diversity. Because there was no final judgment, plaintiff has a statutory right to continue to press those claims, since she initiated them within the statute of limitations. Therefore, there can be no legal finding of res judicata. Also, the defendants have no recourse to the All Writs Act because there was no final judgment."

I. "In 02-1950, the defense counsel conspired to conduct an illegal defense. They emailed each other and made interstate and local phone calls and used the U.S. Mail. The illegal defense included overt criminal acts such as unrecorded ex parte conferences with

13

the judge(s), solicitation of unrecorded ex parte conferences with the judge, and defense violation of the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Federal Rules of Evidence, and Colorado Procedures for Indirect Contempt (Rule 107)

J. "Judge Nottingham and the defense counsel sought to exclude evidence by denying plaintiff proper oral hearings, proper hearings on her motions, formal replies to her civil court actions and even this reply, and a right to self-representation."

K. "This violated Federal Rules of Evidence Rule 103.   Plaintiff timely objected and also offered evidence but the court admitted (by relying on) evidence plaintiff had contradicted and excluded evidence she had offered."

L. "Judge Nottingham refused to take judicial notice as required by Rule 201 (d) and the defense attorneys did not object as they were required to as officers of the court"

M. "License to practice law assures public that the lawyer who holds the license will perform basic legal tasks honestly."

N. "The public has a right to expect that one who engages in professional misconduct will be disciplined appropriately.... for discipline is required ...to protect the public."

O. "Suspension for one year and one day appropriate when attorney neglected to file response to motion for summary judgment."

P. "Each member of our society is entitled to have his or her conduct judged and regulated in accordance with the law; to seek any lawful objective through legally permissible means; and to present for adjudication any lawful claim, issue or defense."

Q. "Attorney's effort to cause suppression of relevant evidence ...in a manner not authorized by statute or other law constitutes conduct prejudicial to administration of justice."

R. "An attorney has a high duty as an officer of the court to never participate in any scheme to obstruct the administration of justice or the judicial process."

S. "Our legal system is based on an adversary system that has three elements:  (1) the right of parties to present evidence to a judge and a jury (2) the need for the judge and jury to be 'neutral and passive' (deciding only on the basis of the parties' evidence) and (3) the use of procedural rules and professional codes of conduct to govern the collection, presentation, and testing of such evidence."

T. "The largest latitude consistent with the words employed is uniformly given in construing such statutes and constitutional provisions as are meant to protect and defend and give remedies for their wrongs to all the people."

14

U. "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay"

V. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (a) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;(b) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent; (c) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;(d) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights".

W. "In the determination of any criminal charge against him, or of his rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law."

X. "The articles broadcast by the defendants imply that plaintiff is guilty of crime and moral turpitude. Thus they violate plaintiff's right to presumption of innocence and protection of her reputation and are criminal under Kansas and Colorado law."

Y. "The  (02-1950 defense counsel) confessed to a felony when they submitted a verified bill for an unrecorded ex parte conference call with Colorado Federal Magistrate Schlatter and billed to review orders they could only have received through ex parte conferences."

Z. "The conspiracy by the defense and the judges match the definition of "obstruction of justice" for which Congress has specifically granted a right to sue."

AA. "Plaintiff is entitled to the protection of the laws against criminal acts and professional misconduct by the defendants and their counsel."

BB.  "The 02-1950 defense counsel greatly violated The Rules of Professional Conduct."

CC. 10th Circuit undisputed first motion to admit facts #157 "The defense counsel engaged in a criminal conspiracy designed to deprive plaintiff of rights and they violated U.S. criminal statutes"

Thus, by the facts already admitted by Mr. Schaeffer's clients and the ABA itself,

plaintiff has already proven that the 02-1950 defendants engaged in a civil conspiracy

15

and that the events were interstate. Because the ABA is located in Washington D.C., the
ABA agent, assistant general counsel Patricia Larson, knew about ratified and
participated in the civil conspiracy, and O'Brien Butler McConihie and Schaeffer in its
capacity as the representative of the libel and defamation insurance participated in the
planning of the civil conspiracy in 2003, 2004 and 2005 through the persons of a Mr.
Hammond, Kevin Kernan, and Jeff Schaeffer, long before these actions were filed,
jurisdiction in the District of Columbia is established on all the defendants.

The State of Colorado was explicitly involved in this civil conspiracy because it
hired David Brougham to represent the 02-1950 State of Colorado defendants. Mr.
Brougham's bills itemize his conversations with the State of Colorado insurance
commissioner, the State of Colorado attorney general (Salazar), and the Colorado Bureau
of Investigation. The Colorado Attorney Regulation Counsel knew about and allowed
the illegal defense. They failed to use the procedures to handle complaints that are part
of the Colorado Revised Statutes and the organization's director delegated matters, which
the C.R.S. explicitly says` he cannot delegate. Procedural due process requires that an
agency designed to protect the public be funded by the public and answer to the public
but the Colorado Attorney Regulation Counsel is funded exclusively by the attorneys it is
supposed to regulate.

The web site of Mr. Schaefer's employer says

"O'Brien, Butler, McConihe and Schaefer has provided Insurance law representation and
consultation services to its clients for over 50 years, including litigation, claims
management and administration. Since the 1930's, the Firm has developed, structured and
administered insurance programs for a number of our association clients. Some of these
programs operate through offshore corporations for more favorable tax and regulatory
treatment. One such client is located in Hamilton, Bermuda and is a major provider of
libel and defamation insurance to newspapers and other media in North America.
O'Brien, Butler, McConihe and Schaefer's insurance law services include: Conducting

16

the initial review of claims for coverage problems, Monitoring litigation and supervising defense strategy, Making recommendations regarding appeal and, if necessary, pursuing cases through all appellate courts". (see attachment B, web page printout)

Thus, it is undisputable that since 02-1950 defense counsel Mr. Beall identified O'Brien Butler as the agent for the insurance and since their own web site identifies their services as "supervising defense strategy", and Mr. Schaeffer and Mr. Kernan did not deny plaintiff's repeated allegations that his firm that in fact, O'Brien Butler, did supervise the defense strategy in Colorado from Washington D.C. establishing jurisdiction in D.C. Furthermore, their own web site acknowledges that the reason that the insurance company is located in Bermuda is that their practices would be illegal if they were located in the U.S.

Plaintiff also filed a motion to admit facts D54 on 11/25/05. The defendants have not disputed any of the facts listed and they are now admitted. These admitted facts further support both jurisdiction in the D of Columbia and summary judgment for plaintiffs in the amount of $15 million plus 12% interest since 3/1/04, a voiding of the restraining order illegally issued for the benefit of Jane Bennett, and an injunction against further publication of the fraudulent articles by WorldWest LLP AKA The World Company AKA the Steamboat Pilot.

FACTD54-1 "Sieverding wrote to the Colorado Attorney General three times about an unnamed lawyer/cocaine dealer/judge briber 3 times but they did not send the CBI nor write back"

FACTD54-2 "The girlfriend/finance of Judge Joel Thompson was accused by the DEA of being a cocaine trafficker"

FACTD54-4 "Kevin Bennett, former Steamboat city counsel president, is on the FBI's NCIC list for possession of cocaine with intent to sell"

FACTD54-13 "The Colorado Bar Association does not acknowledge attorney liability in

17

tort"

FACTD54-14 "The Colorado Bar Association advocates that Colorado lawyers have a right to deny service to anyone with no explanation even if they are advertising for service. They can refuse even an evaluation at their normal hourly rate"

FACTD54-16 "The enabling legislation for the Colorado Attorney Regulation Counsel states that any accusation that any attorney engaged in obstruction of justice must be promptly investigated even if the accusation is made by a private citizen"

FACTD54-17 "No format for the complaint is defined in the C.R.S. The accused attorney is supposed to respond to a numbered paragraph complaint. Document evidence can be supplied by the complaining party. The accused party must swear to the response. There is supposed to be an oral hearing before a panel of judges.

FACTD54-18 "An investigation procedure is defined in the C.R.S. The accused attorney is supposed to respond to a numbered paragraph complaint. Document evidence can be supplied by the complaining party. The accused party must swear to the response. Three is supposed to be an oral hearing before a panel of judges. The complaining party can attend, publicly accuse, and cross-examine the complained about attorney and address the court. The record and results are supposed to be useable in other actions both criminal and civil."

FACTD54-19 "Under Colorado law, a prosecutor cannot prosecute without probable cause"

FACTD54-20 "Under Colorado law, a citizen is not allowed to sign a (criminal) summons and complaint. A paid licensed professional trained insured employee—police officer or sheriff is required to say that he witnessed a crime as defined by the Colorado Revised Statutes. If there is doubt and they are not stopping a crime in progress, the officer is supposed to get a warrant. An officer is not supposed to start the criminal process based solely on an unsubstantiated accusation"

FACTD54-22 "District attorneys are paid to supervise their employees, i.e. prosecutors, to make sure they have "probable cause".

FACTD54-22 "In the case of People v. Sieverding, Jane Bennett signed the criminal complaint—a short sums and complaint as the "arresting officer" with no professional signature. At that time, Jane Bennett was a civilian with no police training who was married to Kevin Bennett, President of the Steamboat Springs city council. In that position, the police pay was highly influenced by Kevin Bennett."

FACTD54-23 "In People v. Sieverding there was no warrant"

FACTD54-24 "In the police report about 8/26/00, no crime was indicated and the police did not call Sieverding, leave a note, or make any attempt to contact her or find witnesses."

FACTD54-25 "The record shows that a couple of days later, Jane Bennett went to the police station and, with no additional evidence, demanded they issue a summons and complaint"

FACTD54-26 "Both the police and the district attorneys' office were aware at that time that Bennetts had barricaded and converted the road in front of Sieverdings' (former) home, pressured them to sell them land for $1, built on the former road bed in violation of the zoning, and that there were many rumors about Bennett's cocaine connections"

FACTD54-27 "Both the D.A. and the police had access to the NCIC list on which Bennett was listed as a cocaine with intent to sell conviction".

FACTD54-28 "The district attorney received testimony under oath from Jane Bennett that Sieverding had not touched her, had not been following her, hadn't called her in years"

FACTD54-29 "Sieverding in August 2000 brought a note to the district attorneys office that Kirby Blackmun, former Steamboat police officer, (active at that time) had come to warn her that Bennett would get a restraining order on her and that the d.a. was "in on it"

FACTD54-30 "The Routt County d.a.'s office had 4 or 5 prosecutors it could have assigned but instead it knowingly assigned P. Elizabeth Wittemeyer, who husband was a real estate developer"

FACTD54-31 "Kevin Bennett helped the Wittemyers get a permit to put a ski area on vacant land (the Stagecoarch ski area) which Wittemyer tried to sell for $20 million"

FACTD54-32 "Wittemyer kept the bogus criminal accusation/prosecution open for over 6 months even though she knew it wasn't colorable"

FACTD54-33 "Wittemyer altered the standard state dismissal form to say there was probable cause and that Jane Bennett was Sieverding's 'victim'".

FACTD54-34 "The D.A. knew this was/is printed in the paper and on the Internet"

FACTD54-35 "The D.A.'s office, including Kerry St James and Paul McLimans who were Wittemyer's supervisors, has known for years that their office participated in a financially motivated malicious prosecution and defamation and has actively participated in covering that up".

FACTD54-36 "The State of Colorado employs or employed Paul McLimans, Kerry St. James, P. Elizabeth Wittemeyer, Local Judge James Garrecht, and Colorado Attorney Regulation Counsel John Gleason and his assistant Matt Samuelson.

FACTD54-37 "Colorado law says specifically that a restraining order such as the one Routt County Judge James Garrecht issued on Kay Sieverding at the request of Jane Bennett and her lawyer Randall Klauzer can only be issued if there is an attempted murder, a beating or a sexual molestation."

FACTD54-38 "Nevertheless, Colorado State employee Routt County Judge Garrecht issued one anyway in violation of Colorado law."

FACTD54-39 "Kevin Bennett said on the record that he paid $8,000 in legal fees" (in 2000)

FACTD54-40 "Bennett's lawyer Randall Klauzer knowingly subordened perjury against Sieverding and refused to correct it".

FACTD54-41 "The State of Colorado Attorney General's Office and the Colorado Attorney Regulation Office has known these numbered facts since 2001 but refuses to acknowledge them and that there were obstruction of justice and crimes against Sieverding. The actively participated in and endorsed a cover-up."

FACTD54-43 "Colorado Attorney Regulation Counsel employee Matt Samuelson refused to use the statutory procedure of complaint style, # response, followed by oral hearing as required by state law".

FACTD54-44 "In a 1958 case with the Colorado Bar Association, included in the printed Colorado Revised Statutes, it is stated that only the Director can speak for the Office (of Attorney Regulation)."

FACTD54-45 "In the attached letter, John Gleason implies that he has authority to override the statutory policies and procedures by informal office policy, that Matt Samuelson can represent the office, and that an informal evaluation by Samuelson can replace the formal statutory procedures which were designed to protect the public including Sieverding".

FACTD54-46 "The Colorado Bar Association has been aware of this departure from the statutory procedures which were designed to protect the public including Sieverding"

FACTD54-47 "The jailing of Sieverding to pressure her to withdraw from this lawsuit and the threatening of David Sieverding were federal criminal acts described by U.S.C. Title 28 section 241, 242, and 1504. As shown on page e6 (D 54), the Colorado judge refuses to say when and under what terms Sieverding will be released from jail and obstructs David Sieverding's testimony in this (D of Columbia) court."

FACTD54-48 "The State of Colorado has known for over 2 months that Sieverding is illegally jailed and the Colorado Attorney Regulation Counsel helped to cover this up."

FACTD54-49 "The State of Colorado has self insurance that would compensate Sieverdings for their losses caused by State of Colorado employees Garrecht, Wittemeyer, St. James, McLimans, Gleason and Samuelson."

FACTD54-50 "Even so, the State of Colorado hired Hall and Evans to defend against payment of Sieverding's claim".

FACTD54-51 "The State of Colorado knows that the lawyer they hired, David

20

Brougham, a Hall and Evans partner, called (Colorado Federal) Magistrate Schlatter 27 times, pretended that malicious prosecution, extortion, etc. was covered by government immunity, pretended that Rule 41 causes claims preclusion, pretended that Rules 35. 54, 56 and 65 were optional, and pretended that Sieverding was 'guilty' of something in order to cover-up the obstruction of justice by their own employees".

FACTSD54-53 "Brougham is also paid by Lloyds of London and CIRSA (Colorado Intergovernmental Risk Sharing Agency)"

FACTSD54-54 "CIRSA is not registered in Colorado as a government, government agency, corporation, partnership, sole proprietorship, or charity"

FACTSD54-55 "CIRSA does not divulge its form of organization, review, or the names of its directors nor the names of who did its 'audit'"

FACTSD54-56 "CIRSA has had the same director since it was formed in the mid-80's (Tim Greer)"

FACTSD54-57 "CIRSA does not divulge its relationship with Lloyd's of London, nor his compensation from Lloyd's or other reinsurers."

FACTSD54-58- "CIRSA does not divulge its relationship with Lloyds of London or why Lloyds paid to defend 02-cv-1950"

FACTSD54-59 "CIRSA sold public officials errors and omissions insurance and employee crime insurance to Steamboat Springs, CO where Sieverding was extorted to benefit Kevin and Jane Bennett"

FACTSD54-60 "Basic insurance principles dictate that the victim must be compensated".

FACTSD54-61 "In civil rights non violent cases and other cases describable as public officials errors and omission, CIRSA doesn't pay victims only lawyers"

FACTSD54-62 "The State of Colorado has aided and abetted obstruction of justice and bad faith insurance claims in order to cover up for its employees and avoid bad publicity for the state".

FACTSD54-63 "The State of Colorado is even willing to risk Sieverding's life in jail or from someone associated with cocaine dealing in order to cover-up for its employees and the corruption of its judicial system".

In summary:

a.) The federal and local rules of civil procedure were violated in the handling of this

case.

21

b.) Judge Urbina's ability to adjudicate impartially were compromised when Mr. Schaefer's assistant Kevin Kernan had a 15 minute conversation with his chambers on 8/15/05 (see attached verified bill from Kevin Kernan).

c.) An insurance company based in Bermuda acting through O'Brien Butler McConihie and Schaefer and specifically connected to Kevin Kernan (according to O'Brien Butler's web site and Kernan's and Faegre's bills) has been specifically directed the defense litigation strategy of 02-1950 and related cases since 2003 and provides acts from the D of Columbia.

d.) The ABA was actively involved in a conspiracy including criminal acts and designed for a criminal purpose, to deprive plaintiff of constitutional and statutory rights.

e.) All of the defendants including the State of Colorado, as shown by the undisputed facts from both D. 54 (filed 11/25/05 and undisputed), the complaints and plaintiff's motions and objections, and the undisputed facts from 06-1038 the 10th Circuit hearing, were actively involved in a conspiracy including criminal acts and designed for a criminal purpose, to deprive plaintiff of constitutional and statutory rights.

Therefore, the District of Columbia cannot dismiss this action and must award summary judgment to plaintiff in the undisputed amount of $15 million plus 12% interest from 3/1/04. An appropriate proposed order is attached.

I swear under penalty of perjury that the above statements are true. Executed

22

*Kay S*

on 8/18/2006. S./_____Kay Sieverding, 641 Basswood Ave. Verona, WI 53593, 608 848 5721

Service by ECF when scanned and docketed by the clerks and also by email attachment on 8/18/06 and paper copy mailed on 8/16/06 to O'Brien Butler McConihie and Schaefer and White and Case and The Colorado Attorney Generals office. S./ *Kay S*_____ Kay Sieverding

Attachments: A.). Proposed Order B.) O'Brien Butler McConihie and Schaefer public statement on their web site that they monitor litigation and supervise defense strategy for a major provider of libel and defamation insurance to newspapers and other media in North America located in Bermuda because of its lack of regulation. C.) Kernan bill for ex parte conference with Judge Urbina's chambers.

23

A

## UNITED STATES COURT DISTRICT OF COLUMBIA

## ORDER

The Court reverses its previous dismissal of 05-cv-01283 and 05-cv-01672 and awards damages to plaintiffs, David, Kay, Edward and Tom Sieverding from the defendants

American Bar Association, Jane Bennett, Kevin Bennett,    Ken Brenner, David Brougham, Colorado Bar Association, City of Steamboat, CO, Kathy Connell, James Engleken, Art Fiebing, Sandy Fiebing, Daniel Foote, J.D. Hays,    Hall and Evans LLP, James Sandy Horner,  Paul Hughes, Klauzer & Tremaine, LLC, Randall Klauzer, Charles Lance, Anthony Lettunich, Paul R. McLimans, Wendie Schulenburg, Melinda Sherman, Kerry St. James, James B.F. Oliphant, Suzanne Schlicht, Steamboat Pilot & Today, Arianthe Stettner, Paul Strong,Richard Tremaine, James Weber, and P. Elizabeth Wittemeyer  on a joint  and several basis the amount of $15 million plus interest at the rate of 12% from 3/1/04.

DATE:_____

BY:_____

24