United States Court District of Columbia

Sieverding                                    05-cv- 01283
v.                                            RMU
A.B.A. et al.

---

Plaintiffs' motion for reconsideration of 11/28/06 order of dismissal (doc 71)

In Canady v. Erbe Elektromedizin, Judge Urbina allowed relief from judgment

under rule 60 b(3) based on defense misconduct after claims had already been rejected by

the D.C. Court of Appeals:

"Canady filed the instant action seeking declaratory judgment... Canady appealed
from the grant of summary judgment (which)...the U.S. Court of Appeals for the Federal
Circuit affirmed without opinion. See Canady v. Erbe, 1999 WL 319475 (Fed. Cir. 1999).
Plaintiff Canady filed a motion for relief from judgment pursuant to Federal Rule of Civil
Procedure 60(b). He seeks to vacate the portion of this court's September 1998 order,
which granted summary judgment...to the defendants... Mr. Canady contends that Erbe
wrongfully withheld non-privileged documents, which were clearly responsive to several
interrogatories and requests for production. The withheld documents, he contends, could
have supplied him with a meritorious response to (defendant's) motion for summary
judgment .... Specifically, Erbe failed to produce two types of documents, which are
relevant... the court concludes that the information not disclosed by (defendant) is
material to the... issue and might have enabled (plaintiff) to withstand (defendant's)
motion for summary judgment....Accordingly, the court will grant Mr. Canady's motion
for relief from judgment. The court will vacate that portion of its September 1998 Order
which granted summary judgment.... on the evidence before it in September 1998, the
court concluded that.... Federal Rule of Civil Procedure 60(b) specifies the circumstances
under which this court may grant a party relief from a final judgment. Rule 60(b)
provides, in pertinent part, 'Upon motion and upon such terms as are just, the court may
relieve a party . . . from a final judgment, order, or proceeding for the following reasons: .
. . (2) newly discovered evidence which by due diligence could not have been discovered
in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other
misconduct of an adverse party; . . . (6) any other reason justifying relief from the
operation of judgment. FED.R.CIV.P. 60(b).'
For the court to grant relief from judgment, Canady must meet four requirements,
which our cases have established to interpret and implement Rule 60(b): (1) The evidence
must have been in existence at the time of trial [in this case, at the time of the court's
September 1998 summary judgment decision]; (2) The evidence must be such that if was
not and could not by the exercise of due diligence have been discovered in time to present
it in the original proceeding; (3) It must not be merely cumulative or impeaching; (4) The
evidence must be admissible and credible, and of such a material and controlling nature
as will probably change the outcome... the court concludes that Canady has shown the
existence of new evidence he could not have discovered through reasonable diligence,
which warrants relief from this court's grant of summary judgment...under Rule 60(b)(2).

**RECEIVED**

DEC 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Alternately, the court holds that relief from judgment is also warranted under Rule
60(b)(3) on the ground of misconduct by the defendants... The court declines to consider
whether there might be "other reasons" justifying relief from judgment under Rule
60(b)(6).... the court concludes that the new evidence identified by the plaintiffs is
material... The court agrees with Canady that "[t]he improperly withheld documents here
. . . were clearly related... It is disingenuous to say, without more, that Erbe's still-
unexplained withholding of evidence should be excused ... Because the court has already
found that the new evidence is material and not wholly redundant of the existing
evidence, Canady has met the requirements for relief from judgment under Rule
60(b)(2).... As an alternate rationale for today's decision, the court notes that defendants'
still-unexplained withholding of clearly responsive, relevant and non-privileged
documents is consistent with the plaintiffs' allegation that the defendants engaged in
misconduct... the court is also justified in granting, and does grant relief from judgment
pursuant to Rule 60(b)(3) on the ground of "misconduct of an adverse party." Unlike
subsection (2) (newly discovered evidence), subsection (3) does not require the movant to
show that he exercised due diligence in seeking the evidence. Thus, even if the court held
that plaintiffs would have discovered the new evidence through the exercise of due
diligence — which the court does not — there is sufficient unrebutted evidence of
defendants' misconduct to justify relief from judgment under Rule 60(b)(3)." Canady v.
Erbe Elektromedizin GMBH, 99 F.Supp.2d 37 (D.D.C. 03/31/2000

.

In 05-01283, the following pieces of evidence meet the 4 criteria that Judge

Urbina listed as allowing relief from judgment under rule 60(b)(3): 1.) Mutual Insurance

through Jerome C. Schaefer and O'Brien, Butler, McConihie, and Schaefer managed the

02-1950 litigation 2.) An unregistered provider of attorney liability insurance through

White and Case managed the 02-1950 litigation. 3.) The defendants did not comply with

their initial obligations under Rule 26. 4.) The defendants had ex parte conference with

the D of Colorado Magistrate Schlatter and the 10th Circuit clerk's office.

In this case, the Sieverdings had no reason to know of the involvement of

undisclosed insurance companies. Congress and the Supreme Court in their wisdom have

decreed that plaintiffs are not responsible for discovery of insurance, the defendants

according to the 1993 amendment to rule 26 are obligated to disclose it. The Sieverdings

did not find out about the insurance until after 05-01283 was filed, after the 10th Circuit

decision in 04-1108. They didn't know about the defense bills for the ex parte contact

2

until after they were provided by the defense—in the case of the ex parte contact with the 10th Circuit's clerks, that was in Jan 2006; in the case of the ex parte contact with Magistrate Schlatter that was after they filed their brief with the 10th Circuit—the last document of plaintiffs that the 10th Circuit acknowledges consideration of. Defense counsel Brougham had advised the Sieverdings that the defense bills were not part of the 02-1950 record. Therefore, the plaintiffs met Judge Nottingham's four conditions for relief from the 02-1950 judgments.

The Sieverdings have substantial rights involved because a.) The undisputed sum certain amount of the 02-1950 complaint with interest is now about $19 million. b.) The Bennett v. Sieverding injunction is used to justify defamatory articles accusing Mrs. Sieverding of being dangerous to her neighbors and incompetent in basic city planning, the field in which she earned a bachelor's and master's degree from MIT, a reputable university, and c.) The order prohibiting the Sieverdings from further pro se litigation is published on the Internet and makes the entire Sieverding family look stupid and was used to justify the jailing of Mrs. Sieverding for over 4 months.

Judge Urbina was told by the defense counsel that the 02-1950 complaint was dismissed with prejudice, the Sieverdings were barred from self representation based on the same series of events, and the Bennett v. Sieverding injunction was allowed to stand because "Sieverding's complaint was "verbose, prolix, and impossible to understand". However, the Sieverdings had timely objected to the sua sponte incomprehensible defense in their objection to Magistrate's Schlatters' recommendation:

""All of the amended complaints were …equally impossible to understand" (p 2). If the Judge wants to make that claim, he should point to what he says he didn't understand. Plaintiffs have a letter from attorney William Hibbard saying that he read the 4/1/03 effective pleadings and thought they were interesting. He said that he read them

while on a fishing vacation and did not mention any questions about clarity, (p.11)… "a short and plain statement of the claim" p 3. "Short and plain is a matter of opinion. In fact intensive cases such as this including more detail in the pleadings saves time later because the defendants are supposed to deny anything they disagree with and that is more efficient than proving every point separately. In any case, any complaints about the pleadings should have been brought up in April and were not." (P. 11-12, Sieverding's objection to Magistrate Schlatter's report and recommendation)

The Sieverdings then on 10/21/03 filed document 210 in 02-1950:

"There is no evidence that plaintiffs' complaint is prolix, verbose, rambling, and incoherent, nor are almost impossible to discern or interpret. There is no page limit in the local rules nor in the federal rules." "Motion by plaintiffs for partial summary judgment that plaintiff's complaint is not prolix, verbose, rambling, and incoherent."

Thus, the plaintiffs objected a second time on 10/21/03 to the su sponte,

admission of evidence of "incomprehensibility", which was done without notice or

hearing. The defense did not respond.. Magistrate Schlatter then violated the

Magistrates' Act (which forbids magistrates to hear motions for summary judgment) as

well as rule 56 on 10/23/03 when he ordered that plaintiffs' document 210 be "stricken":

"all motions filed by plaintiffs for summary judgment or partial summary judgment will be received by Judge Nottingham as if they were entitled objections. Any motions filed by plaintiffs that are not entitled "objections" or do not seek relief which is appellate in nature are ordered "stricken" (see document 221 filed 10/23/03 02-1950 docket).

The Sieverdings then filed:

"Request by plaintiffs for ABA, CBA, and other defendants listed in motions for partial summary judgment to answer." (Document 239 filed 10/28/03).

Magistrate Schlatter then ordered:

"Order to Show Cause…why recommendations should not be made to Judge Nottingham that he strike all motions and matters not entitled "objections". (Document 246, 10/31/03)

The Sieverdings then filed:

"The magistrate judge …has requested justification as to why he cannot "strike" plaintiffs motions for partial summary judgment and other motions nor reclassify them as objections…A motion for summary judgment is not the same thing as an objection to magistrate judge's recommendation anymore than a boat is the same as a car. Plaintiffs

did turn in an objection to the magistrate judge's recommendation for dismissal…The motions for summary judgment are completely different in their content, purpose, procedure and litigation rights…. A motion for summary judgment mandates that it be found true if the defendants cannot disprove either the fact or the law.  Plaintiffs have submitted a number of motions for partial summary judgment that are building blocks to the case and are confident that the defendants will not be able to defend against any of them…. Rule 56 –c says "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law."… The United States Supreme Court wrote in June of 2002 in National Railroad Passenger Corporation v. Morgan "The mandatory "shall" . . . normally creates an obligation impervious to judicial discretion"… The United States Code authorizing the U.S. Supreme Court to develop Rules of Civil Procedure specifies that Courts cannot refuse to enforce them, or suspend them…. The magistrate judge has given the plaintiffs many reasons to distrust his judicial discretion.  These include… g.) his repeated representation that plaintiffs' pleadings could not be understood when they are clearly adequate and defense attorneys with the exception of Oliphant did not ask for clarification….. j.) his issuing an immediate order that plaintiffs could file nothing, not waiting for them to object, only a few days after they had told his apparent friend, defense attorney David Brougham, that they were planning on filing motions for partial summary judgment… l.) his refusal to respond to plaintiffs' July motion for verification of all pleadings…""Response to Order to Show Cause" (02-1950 document 256, 11/5/03)

"plaintiffs' report and recommendation objection will be the only documents considered objection to the magistrate's recommendation" (Magistrate Schlatter doc 257, 11/7/03).

"defendants are to file no response to plaintiff's motions for summary judgment or any other motions" (Magistrate Schlatter document 365 12/2/03)

"In the 1989 Supreme Court Case, JETT v. DALLAS INDEPENDENT SCHOOL DISTRICT, the court says "The jurisdiction in civil . . . matters conferred on the district courts ….for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States… the Supreme Court wrote
'give the rule the effect which the plain meaning of its language and the legislative history require…. if the rule is to be amended…it must be done by those who have the authority to amend the rules, the Supreme Court and the Congress . . . . It is not for us as enforcers of the rule to amend it under the guise of construing it"…. "civil litigants in federal court share equally the protections of the Fifth Amendment's Due Process Clause" GREEN v. BOCK LAUNDRY MACHINE CO. (05/22/89)…
On page 518 of chapter 8 Wright's federal procedure treatise says "As a district court has no genuine discretion in determining whether to grant summary judgment, An appellate court must determine de novo that the strict standard to be applied by the district court has indeed been met.'…"the responsibility of the district judge on a motion

for summary judgment is merely to determine whether there are issues to be tried, rather than to try to issues himself"...

Polyvios J. Polyviou... "The status or condition of being treated fairly according to regularly established norms of justice...the notion that all persons are subject to the ordinary law of the land administered by ordinary law courts that officials and others are not exempt from the general duty of obedience that the law discretionary government powers must not be abused and that the task of superintending the operation of law rests with an impartial independent judge."...

The U.S, Supreme Court said "a defendant who fails to submit affidavits creating a genuine issue of fact in response to a motion for summary judgment will suffer" (paragraph 42 ST. MARY'S HONOR CENTER v. MELVIN HICKS (06/25/93).... "the burden shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding "the existence of an element essential to that party's case... The nonmoving party may not rest upon "the mere allegations or denials of [her] pleading...." ANDERSON V. LIBERTY LOBBY... "The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact." Celotex..."The burden of proof of the insurance company that a loss comes within the scope of an exception or an exclusion is an affirmative one... or is established by uncontradicted testimony in the insured's case, that such burden is removed from the insurance company"... the plaintiff showed exactly how plaintiffs damages are covered under the relevant public officials errors and omissions insurance and employee crime insurance policies, the insurance company will not send a claims form, process a claim, or even have the claims personnel return plaintiffs' calls, although no other procedure is available.  So default judgment on Hall and Evans is made appropriate because they failed to establish their burden of real issue for trial as required by the summary judgment process.... standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ." ANDERSON V. LIBERTY LOBBY..."Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action... the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." CELOTEX...

"the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."..." regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."...."We assume, since it has been uncontested, that the allegedly affected interests set forth in the affidavits".... HUNT V. WASHINGTON STATE APPLE ADVERTISING COMM'N, 432 U.S. 333 (1977) U.S. Supreme Court

..."Rule 56(e) provides that judgment 'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.' The object of this provision is not to replace conclusory

allegations of the complaint or answer with conclusory allegations of an affidavit. Cf.
ANDERSON V. LIBERTY LOBBY... the purpose of Rule 56 is to enable a party who
believes there is no genuine dispute as to a specific fact essential to the other side's case
to demand at least one sworn averment of that fact before the lengthy process of litigation
continues".... LUJAN v. NATIONAL WILDLIFE FEDERATION ET AL...
        "Rule 83.  Rules by District Courts; Judge's Directives(a) Local Rules. .  Each
district court, acting by a majority of its district judges, may, after giving appropriate
public notice and an opportunity for comment, make and amend rules governing its
practice.  A local rule shall be consistent with -- but not duplicative of -- Acts of
Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075"..... U.S.C. Title 28 part
V Chapter 131 sec 2071 says f.) "No rule may be prescribed by a district court other than
under this section." .... "The purpose of the rule is to preserve the court from frivolous
defenses and to defeat attempts to use formal pleading as means to delay the recovery of
just demands ...According to Rules 56(a) and 56(b) both the claimant and the defending
party may obtain a summary judgment upon all claims, cross-claims, or counterclaims or
any parts thereof formal pleading as means to delay the recovery of just
demands....Certainly a salutary purpose, and hardly less essential to justice than the
ultimate means of trial."...Wright Summary Judgment Section 2714 p. 248—254
        "As originally adopted, Rule 56(a) provided that a party seeking to recover upon a
claim, counterclaim, or cross-claim or to obtain a declaratory judgment might move for a
summary judgment at any time after a responsive pleading had been served.  As a result,
plaintiff could not seek summary judgment until after defendant had served an answer.
This gave defendants a tactical advantage since they could move for summary judgment
before answering, but plaintiffs could not pursue the same course until after the answer
was served.  In addition, a considerable period might pass before the responsive pleading
was served if defendant interposed one or more preliminary motions or secured a
stipulation extending the time to answer.  The 1948 amendment changed Rule 46(a) to
allow a claimant to move for summary judgment at any time after the expiration of 20
days from the commencement of the action....The Advisory Committee Note to the
amendment states that this change was made "in the interest of more expeditious
litigation" and that 'the 20 day period...gives the defendant an opportunity to secure
counsel and determine a course of action.'
        "In summary then, not only does the magistrate judge not have the right to order
the defendants not to respond to summary judgment, but they, being lawyers of great
education and competence, never believed that he did." document 370, 12/18/03,
objection by Sieverdings to Magistrate Judge's order (365-1) (see attached appendix one)

        As the 02-1950 docket shows, during these interchanges, the Sieverdings broke

their complaint down into subcomponent verified motions for partial summary judgment

none of which were disputed by the defense.  These motions established that Bennetts did

violate the zoning and development laws.  The Sieverdings filed notices of 30-day default,

60-day default, and various summarizing motions.  Their attached doc. 370 included a 20-

page list of document evidence Sieverdings supplied. Judge Nottingham did not rule on Magistrate Schlatter's order to suspend rule 56, nor acknowledge Sieverding's objection, nor acknowledge the document evidence. There were no oral evidentiary hearings.

All of the pleadings in 02-1950 were written with personal knowledge and verified under penalty of perjury. When the Sieverdings responded to the defendants' motions to dismiss, the first portion of each reply was a statement of the facts all being undisputed and a partial listing each one starting out "UNDISPFACT" and listed as written in the effective complaint, surrounded by quotation marks. Furthermore, in Jan 2003, the Sieverdings had filed a motion, document 22, asking if there were any procedures not listed on the web site. There was no response from the court to that question. Therefore, the Sieverdings were entitled to assume that all the rules of civil procedure would be followed exactly as written.

The defense counsel tried to overwhelm the pro se plaintiff with work, expense, inconvenience, stress, defamation, violence, and unlawful imprisonment. The plaintiffs filed about 1,000 pages of affidavits in the form of complaint, amended complaints, motions, objections, motions to admit facts, and motions for summary judgment, etc. These were all consistent and supported with law. Both the facts and the laws were presented in quotations citing the record or high level authorities such as the U.S. Code, U.S. Supreme Court, Colorado Revised Statues, Colorado Constitution, Wisconsin Constitution, Colorado Supreme Court, Wisconsin Supreme Court, Colorado Court of Appeals, Wisconsin Court of Appeals, 10th Circuit Court of Appeals, etc. The defense did not submit any evidence nor any affidavits challenging any facts, nor did they maintain any rule 11 motions challenging statements of law. Instead what they did was

8

"spin". The defense frequently misrepresented the laws and referred to an authority without quoting it. Similarly, they continually misstated the facts. And they refused to stipulate to any fact. There was no evidentiary hearing, oral or written.

In 02-1950, the Sieverdings presented the claims that they had been extorted in Steamboat and their rights deprived. They detailed both economic and personal damages and supported punitive and joint and several damages based on criminal and civil conspiracy. They presented a case that all the Steamboat defendants were acting in conspiracy to promote the financial interests of the city council president and that they were doing so in pursuit of perceived possible raises, real estate favors, job security, finding new jobs, etc. They presented a case that Hall and Evans and the Bar Associations were proximate causes to the multi-year multi-step extortion in the resort community of 10,000 people. They argued that their damages were predictable by the bars and Hall and Evans and that those parties acted to advance their financial interests.

The defendants did not dispute the very detailed evidence, nor summary evidence, provided by the plaintiffs. They did not dispute the basic damage statements, which were itemized in a pleading the defense received in Jan 2003. A decision on negligence or proximate cause is supposed to be made by a jury, as timely requested by plaintiffs see document 22 and civil cover sheet. However, the defendants did not dispute the evidence, statements of law, and detailed theories exposed by plaintiffs.

These arguments were presented to the 10th Circuit in 3 related appeals:

"Summary of argument against dismissal and finding that no triable issues remain:
1.) The effective pleadings (Docket 83) meet the standard of Swierkiewicz v. Sorema, U.S. Supreme CT, 2002.
2.) There was only one motion for clarification and that was supplied.
3.) There is also extensive support in case law, statutes, and accepted text books for all of the family's claims.

4.) No factual disputes have been identified.
5.) Thus not only is there not a basis for dismissal of the entire case, and no basis for sanctions under Rule 11B, there is no basis for dismissing a single claim." Sieverdings' verified brief 04-1108 p. 4.

"Summary of underlying facts:
1.) The case revolved around events involving intentional torts by attorneys and decisions by government attorneys not to enforce laws including the zoning and development laws and criminal laws (including extortion).
2.) The city policy makers chose not to enforce the laws and participated, with the politician and his wife, in defamation, obstruction of justice, abuse of process, and extortion.
3.) By their publications, the bar associations gave the family a false sense that there were protections for them against lawyers acting improperly.
4.) The bar associations by their acts and omissions interfered with tort protection of the family, recklessly endangering the family by attorneys acting whose arrogance suggests that they believed that they could commit torts, felonies, and misdemeanors with impunity.
5.) The newspaper knowingly printed falsities, defamed the mother, contributed to devaluation of family's property, refused to correct false information printed, and participated in a civil conspiracy." 04-1108 Sieverdings' verified brief p. 3.

The 10th Circuit ruling did not state laws. The 10th Circuit local rules make it difficult for a pro se appellant because they aren't allowed an appendix. Because they were in a fact intensive situation, the Sieverdings filed three appeals, which the clerk told them was allowable. The defense convinced the court to combine the three appeals and allow only one reply. The defense lied in their reply brief. The Sieverdings tried to file an overlong reply brief and ended up with no reply brief being considered. Because the defense caused the pleadings to be expanded by not stipulating to anything, a big communications burden was put on the Sieverdings. If there was ECF, communication may have been easier. The 10th ended up with one hard to access copy of a big box on the bottom shelf. If considered a defective pleading, then federal 30 day equitable tolling applies and was met. The misrepresentations in the defense reply briefs caused the 10th Circuit to underestimate the importance of the matter to the Sieverdings.

The Sieverdings verify this under penalty of perjury under U.S. and Canadian law. Executed on 12/12/06.

David Sieverding

Kay Sieverding

Edward Sieverding

Thomas Sieverding

641 Basswood Ave., Verona, Wi 53593 608 848 5721.

Service by ECF

Attachment:

Appendix One 02-1950 document 370 12/18/03 "objection to magistrate's recommendation, listed in court on 12/2/03, that plaintiffs be indefinitely denied use of the partial summary judgment process to expedite this litigation.

Order

The Court reverses its 11/28/06 dismissal of 05-01283

Judge Ricardo Urbina_____