UNITED STATES COURT DISTRICT OF COLUMBIA

Sieverding                                        05-cv- 01283/05-01672
v.                                                RMU                    RECEIVED
A.B.A. et al.

JAN 3 - 2007

NANCY MAYER WHITTINGTON, CLERK
U S. DISTRICT COURT

Plaintiffs' underline:edited memorandum of opposition to 05-01283 documents 73 and 74.
(additions are underlined)

Local rules allow only 5 days for filing a reply to a memorandum in opposition.

Judge Urbina states that he will not allow pro se litigants to whom he has denied ECF

access the normal extra three days for mailing. The defendants did not email their

memorandum to the Sieverdings even though they had previously made email contact.

They sent it by first class mail over the Christmas holidays in an apparent attempt to

make sure that the Sieverdings would miss their opportunity to respond. The plaintiffs

had to write their first document in only one afternoon and almost missed getting it to

FEDEX. If they had had ECF, they would have received notice that the document was

filed on 12/22 instead of 12/28 and they could have efiled it 30 hours later than the

FEDEX cutoff. On rereading it, they noticed some typos, which they correct within this.

The sole basis asserted as a defense in documents 73 and 74 is lack of personal

jurisdiction. This was not discussed in plaintiffs' document 72 addressing opinion

document 71 because the judge did not bring up the subject of jurisdiction in his most

recent ruling. Since the plaintiffs had addressed the subject of jurisdiction in document

65 and 68 and the judge did not discuss geographical jurisdiction in document 71 (order

dismissing) but ruled on other matters, which he would not have had authority to do if he

did not have jurisdiction, the plaintiffs believe that the judge accepted their previous

arguments establishing jurisdiction in the D of Columbia. The judge did not state

anything in fact and law regarding his decision on jurisdiction to hear the case after the

1

plaintiffs filed document 65. Therefore, documents 73 and 74 should be construed as a request for the court to state reasons in fact and law related to the acceptance or denial of jurisdiction.

**Discussion of filing times for determination under Rule 59:** The original order document 62 was entered 7/17/06 but there was no certificate of mailing. Apparently because of anti-pro se policies, the Sieverdings were denied an ECF account and are dependant on the mail for service. There is no certificate of service of document 62 and that violated:

"A separate certificate or other proof of service showing that a paper copy was served on a party or counsel is required when that party or counsel does not receive electronic notification of filings". LCVR 5.4

"any party may request the judge to reconsider a magistrate judge's ruling under paragraph (a) by filing a motion to reconsider within 10 days after being served with the order of the magistrate judge, unless a different time is prescribed by the magistrate judge or the judge." Local Rule 72.3

Judge Urbina's web site does not specify any different time for filing a motion to reconsider or special service times for paper filers or pro se litigants. Therefore, the 10 days cannot begin to run until after service and that must be assumed to be at least three days when ECF is not available.

The Sieverdings are paper filers having been denied an ECF account. Therefore they have technical problems preventing them from electronic filing. Therefore:

"The inability to complete an electronic filing because of technical problems may constitute "cause" for an order enlarging time or "excusable neglect" for the failure to act within the specified time, within the meaning of F.R.Civ.P 6(b)" LCVR5.4g(3).

The Sieverdings' document 65 motion was received by the court on 8/1/06 in the D of Columbia. It was delivered to U.S. Express Mail on 7/30/06 and was verified on that date also (see document 65 p. 15.) If the plaintiffs had been allowed an ECF

account they could have uploaded the same document on 7/30 or 7/31 as they sent the

paper document off on 7/30. Furthermore, document 65 p 18 shows that they emailed a

draft to the defendants for conference on July 21. Furthermore, on page 56 there is a

handwritten note under penalty of perjury that Mrs. Sieverding had emailed the document

on 7/29/06.  The Equal Protection Act applies in litigation.  Since the Sieverdings were

unable to upload electronically on 7/31/06 due to a court policy of treating pro se litigants

as having less rights than represented litigants, under the equal protection Act they cannot

be disadvantaged by being given less time to respond and file to an order than the defense

counsel in the same case was. <u>Furthermore, the ridiculousness of having such short reply

times, 5 days for these memorandums, and then not allowing mailing times, therefore

allowing only one day for response, shows that mailing times must be allowed when

there is no ECF account allowed.</u> Therefore, their motion for reconsideration must be

construed as having been filed within the 10 days allowed for a rule 59 motion and both

that and the other responses requesting reconsideration must be treated as a rule 59

motions.

**Record on pleading personal jurisdiction:** The Sieverdings objection to the defendants'

motion to dismiss states:

> "**this action could be brought under RICO and RICO further expands the
> jurisdictional options.** The underlying defendants, the plaintiffs and the decision
> makers about the defense strategy are in UK, Illinois, Washington D.C. Wisconsin,
> Colorado, New Jersey, Kansas and California. **Specifically, litigation conduct (of 02-
> 1950) was directed by O'Brien, Butler, Lloyds of London and the ABA, as was
> shown in the defense counsel bils.  O'Brien, Butler, is based in the District of
> Columbia…. The head of ABA's Washington office, R.D. Evans was consulted….
> The court also has an obligation to accept the case because the district (of Colorado)
> made clear its animus toward the plaintiff when it jailed Kay Sieverding for filing a
> lawsuit that was allowed by the U.S. Judiciary with no restriction, without an
> evidentiary hearing to find bad faith on part of plaintiffs.  It is obvious that the**

**Sieverdings cannot get a fair Rule 60 (b)(3) hearing in Colorado so the District of Columbia is bound to accept the plaintiff's case. (document 29, p-3-4)...**The ABA is specifically involved because they were defendants and they benefited from….the finding of Res Judicata…the plaintiffs believe that the ABA set the standard of conduct for the 02-1950 case when they refused to stipulate to the facts, solicited ex parte contact as shown by their letter to Judge Nottingham and asked to have rule 56 suspended. The ABA knew that the Summary Judgment process was suspended, the pleadings were closed (to) plaintiffs and the facts misquoted and they ratified this conduct, making it more difficult to correct because of the ABA's overwhelming Washington-based status. (p.7.) …If the District of Columbia does not accept this case, the plaintiffs…will not be able to get jobs because of the ongoing Internet defamation" (05-01283 document 30, plaintiffs' objection to defendants motion to dismiss).

The "personal jurisdiction defendants" represented by O'Brien Butler did not reply or otherwise dispute those verified statements. Their "opposition to plaintiffs' motion for summary judgment" (document 39) did not address the issue of jurisdiction nor present any facts or evidence.

By referring to RICO, plaintiffs brought up the subject of criminal conspiracy as a basis for jurisdiction on all of the 020-1950 defendants. This was difficult for the plaintiffs to plead because Kay Sieverding was put in jail per request of the defense counsel so she could not go to the law library. **The following order by the court does not acknowledge that the plaintiffs' already plead personal jurisdiction on the basis of conspiracy and the role of the Washington D.C. firm O'Brien Butler McConihie and Schaefer in managing the 02-1950 litigation.** The plaintiffs are entitled to an evidentiary hearing on the basis of jurisdiction. They did not have to anticipate the jurisdiction defense and refute it in their complaint. Although Mr. Beall had provided the Sieverdings with an 02-1950 defense bill referring to "O'Brien Butler" the Sieverdings could not have known that he meant "O'Brien, Butler, McConihie and Schaefer" until the D.C. firm appeared in this case. The Sieverdings were entitled to discovery on

4

jurisdiction and jurisdiction is required if an alternative forum is not established.

**Furthermore, the 02-1950 defendants were bound by Rule 26 to make an initial disclosure that Mutual Insurance of Bermuda, whose president and CEO is Jerome C. Schaefer of the District of Columbia, had sold insurance to the World Company and that Lloyds' of London, <u>which</u> had sold attorney liability insurance to the majority of the 02-1950 defendants, were the real parties of interest in the action, ~~and~~ that O'Brien Butler and White and Case were managing the 02-1950 defense strategy from Washington D.C., and that Mr. Hammond of O'Brien Butler and various White and Case personnel were actively involved in drafting documents filed in 02-1950.**

Congress and The Supreme Court amended Rule 26 to require the disclosure of all insurance policies that may pay or reimburse to avoid problems such as happened in 02-1950. They thought that the burden was on the defense to disclose and did not place on plaintiffs the burden to discover the insurance.

The plaintiffs also filed an annotated copy of the ABA's motion to dismiss. On page 1 the ABA writes "Plaintiffs' criticism or challenge of the Magistrate Judge's recommendations was to the District Court—which they lost...10[th] Circuit...which they lost" and plaintiffs responded:

"because defense interfered with presentation of facts, ex parte collusion, 10th didn't understand, didn't read (Sieverdings' reply brief), procedure not considered...60(b)(3) offers relief according to American Jurisprudence and Standard Oil v. U.S. Interstate... Litigation directed in Washington...Judge Nottingham's & 10th Circuit orders did not discuss facts nor the ABA's duty...was not spontaneous because Chris Beall said he talked to the court about it...(the ABA) caused summary judgment procedure not to be available in (02-1950) case ...(ABA) prevented from consideration on the merits...Rule 60(b)(3) offers alternative evidentiary review...ABA situation not litigated because summary judgment procedure suspended...behavior of counsel facts and billing

statements adequate for new hearing…stems from litigation conduct….ABA claims to be discussed in 05-cv-01672…Litigation (strategy) comes from Washington…All of the events did not take place in Colorado." (only some did)

The Sieverdings also attached a letter from the ABA to Colorado Judge Nottingham about the 02-1950 case, asking that Rule 56 be suspended, and highlighted:

"If your Honor prefers that this request be presented by formal motion, or has any questions or needs further information concerning this request, I respectfully ask that your Honor's clerk call me at (312) 988-6684 or email me at larsonp@staff.abanet.org"

This is prima facie evidence of conspiracy and involves the ABA with the other defendants in making sure that no facts were formally admitted in 02-1950 except the defense bills. Rule 56 was amended in 1946 allowing plaintiffs to submit a motion for summary judgment with required hearing even if the defendants had previously submitted a motion to dismiss. In 02-1950 the plaintiffs tried to file their first motion for summary judgment before Magistrate Schlatter issued his Report and Recommendation but the clerks refused to docket it although there is a FEDEX receipt of delivery in August 2003. The reason that the clerks didn't docket it is because Magistrate Schlatter violated the Magistrate's Act by closing the pleadings without the three-day advance notice required. He also violated due process by closing the pleadings to the Sieverdings only while allowing the defendants to continue to file. The Magistrate closed the pleadings in response to a request from defense counsel Brougham (Hall and Evans). Mr. Brougham did not confer with the Sieverdings about this and did not state a legal basis for closing the pleadings. Mr. Brougham filed his request to close the pleadings after the Sieverdings had emailed him a draft of their motion for summary judgment. That was obstruction of justice and a conspiracy to avoid the admission of facts.



The Sieverdings filed document 50 motion for hearing regarding [p]laintiffs' motion for summary judgment and defendants' motions to dismiss. However, instead the D.C. court stayed the hearings and on 12/7/05 "leave to file denied plaintiff's letter re motion for oral hearings." Thus the D of Columbia Court refused to allow the Sieverdings an evidentiary hearing on the subject of personal jurisdiction.

Judge Urbina's order document 63 on July 17 addressed the issue of jurisdiction did not acknowledge the pleadings above but said:

Jane Bennett, Feagre & Benson LLP, Hall and Evans LLC, The World Company, McConnell Siderious Fleischner Houghtaling & Craigmile LLC and White & Steele, PC ("the Personal Jurisdiction Defendants") move to dismiss the claims against them for lack of personal jurisdiction….Because the plaintiffs fail to plead facts establishing personal jurisdiction over the Personal Jurisdiction Defendants, the court grants those defendants' motion to dismiss…(p.2.)..The plaintiffs also seek an injunction against defendant The World Company from further publishing articles regarding the Sieverding-Bennett property dispute on the Internet. (p.4.)…The Personal Jurisdiction Defendants move to dismiss the claims against them for lack of personal jurisdiction. (p. 4.) …The Personal Jurisdiction Defendants argue that the plaintiffs fail to plead sufficient facts to establish personal jurisdiction…In response, the plaintiffs state that defendants Faegre and Benson LLP and The World Company have contacts with the District of Columbia…The plaintiffs do not allege any facts concerning personal jurisdiction for defendants James B.F. Oliphant, White & Steele, McConnell Siderious Fleisherner Houghtaling & Craigmile or Routt County Court" p. 10…On a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(2), the plaintiff has the burden of establishing a prima facie case that personal jurisdiction exists…A prima facie case in this context means that the plaintiff must present evidence sufficient to defeat a motion for judgment as a matter of law…(p. 10.) …To determine if a basis for personal jurisdiction exists, the court should resolve factual discrepancies in the complaint and affidavits in favor of the plaintff…However, the court need not treat all of the plaintiff's allegations as true…(p.11.)…To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry. …Personal jurisdiction exists over a person acting directly or by an agent for a claim for relief arising from the person's transacting any business in the District of Columbia (p.11.)…**Though the plaintiffs argue that most of the fraud occurred through Inter-state mail, they do not argue that any of it occurred in the D of Columbia or arose from the defendants activities in the District of Columbia."** (p.13-14.)

That contradicts the record at the time.

The plaintiffs' document 65 discusses venue saying:

"a civil action wherein jurisdiction is founded only on diversity of citizenship may…be brought ..in (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…or a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced". Title 28 Part IV Chapter 87 Section 1391 (document 65 p.4)

"Because the defendants reside in IL, DC,CA, and NJ, there is no state in which all the defendants reside. Plaintiff resides in WI and the 02-1950 litigation was all long distance with no trial so there is no state where all the acts and omissions were committed. The ABA is based in D.C. so # 3 also applies to give the D of Columbia long arm jurisdiction in 05-01283 and 05-01672 because evidence shows that in 2003-2005, the malicious defense, RICO, abuse of process, obstruction of justice, etc. originated and was guided from D.C. by (Jerome) Schaeffer, Kevin Kernan, and a Mr. Hammond who all were employed by an insurer who was liable for the $15 million plus interest undisputed in 02-1950. The ABA participated directly in the litigation misconduct, writing to Judge Nottingham and requesting ex parte conference and the special favor of refusing to hear plaintiffs' summary judgment motions…The ABA had special responsibilities to intervene in the litigation misconduct because it authored the model code of professional conduct and the litigation code and represents that as an organization it is committed to those codes. R.D. Evans, Director of the ABA Washington D.C. (p.4.) office ratified Patricia Larson's misconduct, which he was aware of. Lloyd's of London also participated in a conspiracy to deprive rights by paying for unrecorded ex parte conferences through an agent in Chicago." (document 65 p. 5)…

"The State of Colorado hired David Brougham through his employer Hall and Evans to cause the 02-1950 litigation to be terminated without a decision on the merits. The Colorado Attorney General and Colorado Insurance Commissioner conferred with David Brougham about this as did the director of the Colorado Bar Association and representatives of the ABA. There is prima facie evidence showing that all of the parties acted in conspiracy. This prima facie evidence includes the U.S. Judiciary Rulemaking because they refused to appear in this case after they were properly served and an appearance was due. The administrative branch of the U.S. Judiciary is aware that there was extensive ex parte unrecorded conferences in the related litigation but has refused to properly administer its departments so as to provide a remedy for citizens in such situations. Since they act as a conspiracy, jurisdiction on one is jurisdiction on all": (document 65 p. 5)

"Persons who enter the forum and engage in conspiratorial acts are deemed to "transact business" there "directly", coconspirators who never enter the forum are deemed to "transact business" there "by an agent"…[T]he general rule…that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts" applies to conspiracy-based jurisdiction…To prevail on its jurisdictional theory…make a prima facie showing of civil conspiracy" Second Amendment Foundation et al. v. U.S.

Conference of Mayors U.S. Court of Appeals D. C. Circuit 00-7188 348 U.S., 238, 274
F. 3d, 521, 2001 CDC 0000215 12/21/01 (document 65 p. 5)

"The Court cannot change the jurisdiction by dismissing defendants:

'...whether destruction or perfection of jurisdiction is at issue, the policy goal of
minimizing litigation over jurisdiction is thwarted whenever a new exception to the time-
of-filing rule is announced, arousing hopes of further new exceptions in the
future...DRETKE v. HALEY...We decline to endorse a new exception to a time-of-
filing rule that has a pedigree of almost two centuries. Uncertainty regarding the question
of jurisdiction is particularly undesirable, and collateral litigation on the point is
particularly wasteful...our time-tested rule weighs heavily against the approval of any
new deviation" GRUPO DATAFLUX, PETITIONER v. ATLAS GLOBAL, L.P.
(document 65 p. 6) (U.S. Supreme Court 02-1689 5/17/04)

"Under Rule 19(a), joinder of defendants is required:

"A person who is subject to service of process and whose joiner will not deprive the court
of jurisdiction over the subject matter of the shall be joined as a party in the action if (1)
in the person's absence complete relief cannot be accorded among those already parties."
Fed. Rules of Civil Procedure 19 (a)" (document 65 p.6)

"The DC Court of Appeals says plaintiff is entitled to an evidentiary hearing and
discovery if faced with a motion to dismiss for lack of personal jurisdiction:

Certainly, '[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is
entitled to reasonable discovery'. El-Fad v. Central Bank of Jordan quoted in Second
Amendment Foundation v. U.S. Conference of Mayors" (document 65 p.6)

"To establish jurisdiction, only a prima facie showing of jurisdiction is required:

'The court acknowledged that when ruling upon personal jurisdiction without an
evidentiary hearing, a court ordinarily demands only a prima facie showing of
jurisdiction by the plaintiff...safeguards plaintiffs 'when the adversary process has been
halted...In the absence of an evidentiary hearing, although the plaintiffs retain "the
burden of proving personal jurisdiction [they] can satisfy that burden with a prima facie
showing." Edmond v. United States Postal Service...Moreover, to establish a prima facie
case, plaintiffs are not limited to evidence that meets the standard of admissibility
required by the district court. Rather, they may rest their argument on their pleadings,
bolstered by such affidavits and other written materials as they can otherwise obtain."
Ocilla Mutual Main v. Osaka Bin Laden and Afghanistan (document 65, p 6.) (U.S. Court
of Appeals for District of Columbia No 04-5266, 417 F. 3d 1, 2005 CDC 0000177

"The SPR argues that it lacks the requisite 'minimum contacts' because it had no
contact at all with, and has no property in, the United States, let alone the District of
Columbia....We therefore reject the SPF's attempt to condition the jurisdiction of the

courts of the United States upon the "minimum contacts" purportedly required under customary international law…The SPF argues that, even if the district court had personal jurisdiction, upon considering the public interest and the interests of the litigants, it should have dismissed this enforcement action under the doctrine of forum non conveniens, and remitted the plaintiff to a more appropriate forum… The district court need not weigh any factors favoring dismissal, however, if no other forum to which the plaintiff may repaid can grant the relief it may obtain in the forum it chose. See El-Fadl v. Cent Bank of Jordan…the defendant…has the burden of showing there is another forum adequate…TMR Energy Ltd. V. State Property Fund of Ukraine" (document 65, p. 7.) 244 F.T.R. 1; 2003 FC 1517 D of Columbia Court of Appeals 03-7191 decided 6/17/05

In this situation, the defendants have requested that the 10th Circuit deny the Sieverdings a forum for any action involving these defendants (06-1038). The defense counsel have repeatedly filed unsupported allegations in the 10th Circuit that the Sieverdings' writing is not understandable and that their affidavits are somehow fraudulent. (The defendants did not plead fraud with particularity nor file motions for more definite statement.)   Furthermore, agents of the defense have extensively published fraudulent statements about the Sieverdings and their litigation in Colorado thereby prejudicing any Colorado jury pool.  The D of Colorado is the forum where the defendants had previously suggested as an alternative forum.  Therefore, no alternative forum has been identified so the D of Columbia is required to accept jurisdiction.

It is not reasonable to say that the restrictions can be overcome by the Sieverdings hiring an attorney.  The U.S. Judiciary Act has acknowledged that self-representation is a fundamental right.  The Sieverdings are not required to present evidence as to their ability to pay a lawyer nor their interactions with potential legal agents.  It is well established in history that one risk of hiring a lawyer is that he or she will collude with the other side. It is also established that the defendants had previously contacted the Sieverdings' former lawyer, William Hibbard, and intimidated him.  It was also alleged by Kay Sieverding, and undisputed by the defense counsel, that they contacted a public defender appointed to

represent Kay Sieverding, Edward Harris in Colorado, so as to influence his defense in a
way to make it adverse to the Sieverdings. Furthermore, the public statements about the
case would discourage any lawyer from accepting the case. Furthermore, the defense
violated Rule 11, knowing that the 10th Circuit issued a statement that pro se litigants
cannot receive Rule 11 sanctions. The defense Rule 11 violations resulted in such an
expansion of the record that it is impractical for a new attorney to claim to have read
everything filed by the plaintiffs. Mrs. Sieverding can more effectively deal with the
expanded record than a lawyer can because she previously read the defense filings and
because she can use search utilities on the Sieverdings' computers to search the
Sieverdings' filings.

"Fed. R. Civ P. 4(k)(2) permits the court to exercise personal jurisdiction.

'thus permits a federal court to exercise personal jurisdiction over a defendant (1)
for a claim arising under federal law...(3) if the defendant is not subject to the
jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction
is consistent with the Constitution (and laws) of the United States...A defendant who
wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit
could proceed. Naming a more appropriate state would amount to consent to personal
jurisdiction there (personal jurisdiction, unlike federal subject matter jurisdiction, is
waivable). If, however, the defendant contends that he cannot be sued in the forum state
and refuses to identify any other where suit is possible, then the federal court is entitled to
use Rule 4(k)(2)...." Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan.
(document 65 p. 7)

"'If the defendant challenges only the legal sufficiency of the plaintiff's
jurisdictional allegations, then the district court should take the plaintiff's factual
allegations as true and determine whether they bring the case within any of the exceptions
to immunity invoked by the plaintiff'...the plaintiffs have satisfied their burden of
showing that the district court can properly exercise personal jurisdiction over those
defendants'" Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan (document 65,
p.7.)

"we have applied abstention principles to actions 'at law' only to permit a federal
court to enter a stay order that postpones adjudication of the dispute, not to dismiss the
federal suit altogether...superseded by statute...the question presented in terms of the

power of a federal court of equity to abstain from exercising its jurisdiction…Burford permits 'a federal court sitting in equity'…to dismiss a case only in extraordinary circumstances…a federal court cannot….dismiss or remand an action when the relief sought is not discretionary…Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the Burford doctrine." QUACKENBUSH V. ALLSTATE INSURANCE CO (document 65, p.7.) (U.S. Supreme Court No 95-244 U.S. 06/03/1996)

"[The] plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of the defendant's contacts"….Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan (document 65, p. 8.)

Document 65 p 19 shows the second and third service of the U.S. government so

they were properly served and jurisdiction cannot be thwarted by dismissing them.

In document 65,  the Sieverdings further supported jurisdiction in Washington

D.C. for all defendants in their attachment Affidavit C. "plaintiff's motion to admit facts"

which was filed in the 10th Circuit 06-1038 and undisputed.

Undisputed 10th Circuit Motion to Admit Facts 2.) "It is customary practice for the defense counsel  hired and supervised by these defendants when litigating with this plaintiff to have unrecorded ex parte conferences.  Apparently they think that the bar associations and law firms cannot defend themselves without criminal collusion.  This is admissible under Rules of Evidence 406:" document 65 p 21

Undisputed 10th Circuit Motion to Admit Facts 3.) "'Evidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." document 65, p 21

Undisputed 10th Circuit Motion to Admit Facts # 4.) "It is supported by defense attorney bills showing that David Brougham had over 25 unrecorded ex parte conferences, defense bills from Faegre & Benson discussing ex parte conferences with the District of Columbia, a letter from Faegre & Benson soliciting an unrecorded ex parte conference call with Minnesota Federal Judge Tunheim, a bill from Feagre & Benson for a meeting with Judge Tunheim's former clerks, letters from defense counsel Patricia Larson and attorney James B.F. Oliphant soliciting ex parte conferences with Colorado Federal Judge Nottingham, oral statements by Christopher Beall that he had called every court plaintiff has appeared in and orally requested dismissal, and bills by David Brougham for reviewing three District of Colorado orders that he could only have obtained through ex parte conference as two had not even been issued when he billed to

review them and one he could not have received through the mail when he billed to review it". document 65, p 21

Undisputed 10th Circuit Motion to Admit Facts # 41.) "Plaintiff has lived in Wisconsin since August of 2001. Since 02-1950 had no trial and was decided on the basis of written filings by plaintiff from Wisconsin and by defense counsel from Illinois and Colorado and ex parte conferences some of which were interstate, and the defense strategy was advised by (Jerome) C. Schaefer from D.C. who represented the insurer for the Newspaper and by a representative of Lloyd's of London in Chicago....the 02-1950 litigation can be properly characterized as an interstate activity." Document 65 p. 29

Undisputed 10th Circuit Motion to Admit Facts #63.) "In 02-1950, the defense counsel conspired to conduct an illegal defense. They emailed each other and made interstate and local phone calls and used the U.S. Mail. The illegal defense included over criminal acts such as unrecorded ex parte conferences with the judge(s), solicitation of unrecorded ex parte conferences with the judge." Document 65 p. 35

In order to deter presentment in Court, the defendants for 05-01283/05-01672 had their agents in Colorado, Christopher Beall, David Brougham, Brett Huff, and Traci Van Pelt request Colorado Judge Nottingham put Mrs. Sieverding in jail. The ABA conferred with Christopher Beall about this, as shown in Mr. Beal's bills. She was jailed from 9/2/05 to 1/4/06. This was the entire time available for her to serve motions or other pleadings in 05-01283 and 05-01672 since in December Judge Urbina stayed these actions and the docket shows that further filings by the Sieverdings were refused.

Undisputed 10th Circuit Motion to Admit Facts #71.) "...Plaintiff had repeatedly claimed to the court that she was limited in her ability to defend herself because through the jail law library, she only had access to American Jurisprudence and the Colorado Revised Statues. Furthermore, Christopher Beall threatened to have plaintiff's husband put in jail if he did legal research for her." Document 65 p. 17-18

Undisputed 10th Circuit Motion to Admit Facts # 80-83_ "Judge Nottingham and the defense counsel sought to exclude evidence by denying plaintiff proper oral hearings, proper hearings on her motions, formal replies to her civil court actions...This violated Rules of Evidence Rule 103. Plaintiff timely objected and also offered evidence but the court admitted (by relying on) evidence plaintiff had contradicted and excluded evidence she had offered...Judge Nottingham refused to take judicial notice as required by Rule 201(d) and the defense attorneys did not object as they were required to as officers of the court." Document 65 p39

Undisputed 10th Circuit Motion to Admit Facts #105-110.)… "License to practice law assures public that the lawyer who holds the license will perform basic legal tasks honestly. The public has a right to expect that one who engages in professional misconduct will be disciplined appropriately…for discipline is required…to protect the public. When a lawyer know that a client expects assistance not permitted b y the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyers' conduct. In representing a client, a lawyer shall not engage in conduct that exhibits or is intended to appeal to or engender bias against a person on account of that person's…socioeconomic status, whether that conduct is directed to …parties, or any persons involved in the legal process. Overriding concern in discipline proceedings is to protect the public through the enforcement of professional standards of conduct. Suspension for one year and one day appropriate when attorney neglected to file response to motion for summary judgment." Document 65 p. 44-45.

Undisputed 10th Circuit Motion to Admit Facts #111. "In 02-1950, none of the defendants responded to plaintiffs' motions for summary judgment with stipulations of fact. " Document 65 p. 47

Undisputed 10th Circuit Motion to Admit Facts #115-6 "Each member of our society is entitled to have his or her conduct judged and regulated in accordance with the law; to seek any lawful objective through legally permissible means; and to present for adjudication any lawful claim, issue or defense. The advocate has…a duty not to abuse legal procedure." Document 65 p. 47

Undisputed 10th Circuit Motion to Admit Facts #118.) "Attorney's effort to cause suppression of relevant evidence…in a manner not authorized by statute or other law constitutes conduct prejudicial to administration of justice." Document 65 p. 47

Undisputed 10th Circuit Motion to Admit Facts # 120-124.) "It is unprofessional and dishonorable to deal other than candidly with the facts in drawing affidavits and other documents. By filing false documents, an attorney perpetuates a fraud upon the court. The public has a right to expect that one who engages in professional misconduct will be disciplined appropriately. An attorney has a high duty as an officer of the court to never participate in any scheme to obstruct the administration of justice or the judicial process. Fabricating documents to justify conduct breaches attorney's ethical obligations to his client and to the bar." Document 65 p. 48.

Undisputed 10th Circuit Motion to Admit Facts # 131-135.) "A lawyer shall not (a) unlawfully obstruct another party's access to evidence…in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused. A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the

conduct involved. A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate professional authority. A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority. Our legal system is based on an adversary system that has three elements: (1) the right of parties to present evidence to a judge and a jury (2) the need for the judge and jury to be 'neutral and passive' (deciding only on the basis of the parties' evidence) and (3) the use of procedural rules and professional codes of conduct to govern the collection, presentation and testing of such evidence." Document 65 p. 49-50

Undisputed 10th Circuit Motion to Admit Facts # 137-.) "The largest latitude consistent with the words employed is uniformly given in construing such statutes and constitutional provisions as are meant to protect and defend and give remedies for their wrongs to all people. Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character, and right and justice should be administered without sale, denial, or delay. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person (a) to recover damages for injury to his person or property or because of the deprivation of any right or privilege of a citizen of the United Sates by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42 (b) To recover damages from any person who fails to prevent or aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent (c) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States (d) to recover damages or to secure equitable relief or other relied under any Act of Congress providing for the protection of civil rights." Document 65, pages 50-51.

Undisputed 10th Circuit Motion to Admit Facts # 145.) "The articles by the defendants imply that the plaintiff is guilty of crime and moral turpitude. Thus they violate plaintiff's right to presumption of innocence and protection of her reputation and are criminal under Kansas and Colorado law." Document 65 pages 53.

Since in 05-01283 Mrs. Sieverding requested an injunction against continued

publication that she is guilty of crime and moral turpitude and relief from Bennett v.

Sieverding and because these are requests for equitable relief the D of Columbia has

original jurisdiction.

Undisputed 10th Circuit Motion to Admit Facts # 149- "The defendants confessed to a felony when they submitted a verified bill for an unrecorded ex parte conference call with Magistrate Schlatter and billed to review orders they could only have received through ex parte conferences. The conspiracy by the defense and the judges match the definition of 'obstruction of justice' for which Congress has specifically granted a right to sue. Unrecorded, ex parte telephone conferences between the defense counsel and the judge clearly fall into the category of 'corruptly endeavoring to influence an officer of the court". So do letters requesting conversations such as sent by Patricia Larson to Judge Nottingham." Document 65 p. 54

Undisputed 10th Circuit Motion to Admit Facts #156 "The (02-1950) defense counsel greatly violated The Rules of Professional Conduct." Document 65 p. 55

The defendants that Judge Urbina then dismissed for lack of personal jurisdiction then filed document 66 on 8/10/06:

"this court did not commit an error of law in finding that plaintiffs failed to plead facts establishing personal jurisdiction…(p.4.)…without fully addressing the applicability of rule 4(k)(2), the plaintiff's demand for application in this instance would be inconsistent with the Constitution…" document 66

That is a conclusory argument that does not address the evidence of conspiracy.

Document 66 and other defense filings did not deny conspiracy to stop the Sieverdings from admitting evidence in 02-1950, that the 02-1950 defendants had substantial and repeated ex parte conferences, and that the 02-1950 litigation was managed from the D. of Columbia by the ABA and O'Brien Butler McConihie and Schaefer. The defense filings did not deny that in 02-1950 and 05-01672 there was defamation insurance that may pay or reimburse that was sold by Mutual Insurance of Bermuda and that Jerome C. Schaefer, the lead defense counsel is the president and CEO of Mutual Insurance. Apparently he is also the owner of Mutual Insurance. The defense filings do not deny that there is also attorney errors and omissions insurance that may have paid or reimbursed in both 02-1950 and 05-01672, that the insurance hired lawyers to manage the 02-1960 litigation, and that White and Case was involved, from D.C., with the

16

management of the 02-1950 litigation before 05-01283 was filed. White and Case advertises insurance defense management on its web site. The defense does not deny that they were obligated by statute in 02-1950 and 05-01672 to reveal the insurance policies and they did not do so. They don't deny that they misrepresented the true parties of interest in their certificates of appearance in the 10th Circuit, which would have also revealed the insurance policies.

05-01283 is an action for a declaratory judgment on the relationship of the parties. By statute, the Sieverdings were and are entitled to an evidentiary hearing, in fact a jury trial, on the relationship of the parties. By Supreme Court and D.C. Court of Appeals decisions, the Sieverdings were and are entitled to an evidentiary hearing on the subject of jurisdiction, if that is considered in dispute as the defendants alleged on 12/21. (see Second Amendment Foundation v. U.S. Conference of Mayors quoted below p. 9 and previously (document 65 p. 5)

The Sieverdings assert very substantial interests riding on 05-01283 and 05-01672. The undisputed claims in 05-01672 are valued at almost $19 million, a very substantial figure for a family. Furthermore, the Sieverdings allege that without relief they may go bankrupt, are unable to or inhibited from getting employment consistent with their education and skills, and are subject to unrelieved and constant defamation on the Internet. They feel so strongly about these matters that Mrs. Sieverding suffered through over 4 months of jail, just to be able to present her case. Thus they meet the standard to assert error under Rules of Evidence 203.

The Sieverdings' motions for reconsideration of the personal jurisdiction issue were all filed within the ten days allowed under Rule 59, as defined by local rules, quoted

17

above. The Sieverdings are entitled to a ruling on the personal jurisdiction issue that is based on facts and laws, since there has been no jury trial. (Rule 58.)

The Sieverdings offered verified affidavits and document evidence of conspiracy to avoid the admission of facts in 02-1950 and management and furtherance of that conspiracy from the D. of Columbia. The defense offered no affidavits or denials of either. The Sieverdings filed for summary judgment. The defense did not file replies that complied with Judge Urbina's local rules (i.e. stipulations of fact.). The Sieverdings objected to the exclusion of their evidence of conspiracy in 02-1950 and their evidence of acts and omissions to further that conspiracy from the D of Columbia. The Sieverdings also made offers of proof of both the conspiracy to stop 02-1950 from being based on admitted evidence, having a jury trial, having a summary judgment hearing, or having admitted facts. The Sieverdings also made offers of proof as to the acts and omissions from the D. of Columbia in managing the 02-1950 litigation so that it would not be according to the Rules of Civil Procedure. The Sieverdings also have additional document evidence such as emails with the ABA, advertisements by Mutual Insurance, additional defense bills for ex parte conferences in 02-1950 and related actions, letters from the defense showing or soliciting ex parte conference, an ABA publication on managing pro se litigation, etc. Some of these documents they attempted to file with the District of Columbia but their filings were refused. They have FEDEX, U.S. mail, and e-mail receipts to the D of Columbia for which there are no corresponding docket entries. Furthermore, they are entitled to discovery on the issues of conspiracy and jurisdiction.

For these reasons, the Sieverdings have suffered incontrovertible error based on exclusion of evidence if the 05-01283/05-01672 actions are dismissed on the basis of lack

of personal jurisdiction. The Court is required to address these issues with particularity in fact and law if it is maintained that lack of jurisdiction is a basis for dismissal.

The Sieverdings also assert jurisdiction over Routt County. Daniel Moore violated Rule 11 when she claimed that injunctive relief is barred against a state by the 11th Amendment. That is contrary to the Supreme Court's decision in Edelman. Ms. Moore pled that knowing that Mrs. Sieverding had no access to a law library. Ms. Moore was acting in conspiracy with the private defendants as shown by the fact that she used O'Brien Butler's ECF account and in July 2006 began an employment contract with defendant Hall and Evans. She even appeared in the D of Colorado against Mrs. Sieverding in capacity as a Hall and Evans employee.

<u>When the Sieverdings applied for injunctive relief against Routt County/Jane Bennett in 02-1950 the Magistrate denied them a hearing after having an ex parte conference with David Brougham, who was contracted to represent the State of Colorado defendants. Therefore, the State of Co participated in a conspiracy to exclude evidence with the other defendants bringing jurisdiction into the D of Columbia based on the pre-05-10283/05-01672 filing management of the defense strategy in 02-1950 by O'Brien Butler and, apparently, White and Case.</u>

I certify that these representations are correct under penalty of perjury under U.S. and Canadian law. Executed on 12/28/06 <u>12/29/06</u>

Kay Sieverding c/o David Sieverding 641 Basswood Ave., Verona, WI 53593, 608 848 5721  Service by ECF Service by ECF and email on 12/29/06

jschaefer@obmslaw.com (Jerome C. Schaefer representing Mutual Insurance of Bermuda)

clamm@whitecase.com and fpanopoulos@whitecase.com (Carolyn Beth Lamm and Frank Panopoulos at  White & Case representing Lloyd's of London, apparently) beth.mccann@state.co.us (Danielle Moore's former supervisor at CO attorney general's office)